IN CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

| | |
|---|---|
| **MARYLAND SHALL ISSUE, INC., et al.,** | **Case No.: 485899-V** |
| *Plaintiffs,* | |
| vs. | **PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| **MONTGOMERY COUNTY, MARYLAND,** | **EXPEDITED HEARING REQUESTED** |
| *Defendant.* | |

Pursuant to MD Rule 2-311, MD Rule 2-501 and MD Rule 2-602, plaintiffs respectfully move this Court for an order granting partial summary judgment on Counts I, II, and IV of the Verified Complaint and enter declaratory and injunctive relief on those Counts on the merits. On these three Counts, there is no genuine dispute as to any material fact and plaintiffs are entitled to judgment as a matter of law. This motion is supported by the declarations of each of the plaintiffs filed with the Verified Complaint, the supplemental declarations of each of the plaintiffs attached to this Motion and a short excerpt of a pleading filed by the Department of Justice *State of California v. BATF*, No. 20-cv-6761 (N.D. Cal.). Plaintiffs request that the Court take judicial notice of that federal litigation. See Supporting Memorandum at note 2.

Pursuant to MD Code, Courts and Judicial Proceedings, § 3-409(e), plaintiffs respectfully request "a speedy hearing" on the motion and that the Court "advance it on the calendar" to be heard and decided as soon as possible, preferably prior to July 16, 2021, the effective date of the County ordinance, Bill 4-21, challenged in this case. Partial summary judgment is appropriate because Bill 4-21: (1) is not a local law within the meaning of Article XI–E, § 3 of the Maryland Constitution, as alleged in Count I of the Complaint and is thus *ultra vires*; (2) violates the Express Powers Act, MD Code, Local Government, §10-206, in that it is inconsistent with and/or

FILED

JUN 16 2021

Clerk of the Circuit Court
Montgomery County, Md.

preempted by Maryland general law, as alleged in Count II; and (3) is so vague that it violates the

Due Process Clause of the Fourteenth Amendment and Article 24 of the Maryland Declaration of

Rights, as alleged in Count IV. Plaintiffs, at this time, do not seek summary judgment on the

Takings claim set forth in Count III. There are no disputed issues of fact concerning Counts I, II

and IV and plaintiffs are entitled to the requested relief as a matter of law. Plaintiffs respectfully

suggest that the Court apply MD Rule 2-602 and hold that there is no just reason for delay and

enter final judgment granting declaratory and equitable relief on Counts I and II and final judgment

as to liability on Count IV.

## CONCLUSION

For the foregoing reasons and for the reasons set forth in the accompanying supporting

memorandum of law, the motion for partial summary judgment should be granted. Plaintiffs

respectfully request an emergency hearing and a decision on this motion prior to July 16, 2021,

the effective date of Bill 4-21, or as soon thereafter as possible.

Respectfully submitted,

*Mark W. Pennak*

MARK W. PENNAK
Maryland Shall Issue, Inc.
9613 Harford Rd
Ste C #1015
Baltimore, MD 21234-21502
mpennak@marylandshallissue.org
Phone: (301) 873-3671
MD Atty No. 1905150005

*Counsel for Plaintiffs*

Dated: June 16, 2021

PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL SUMMARY JUDGMENT
EXPEDITED HEARING REQUESTED - 2

# EXHIBITS

1. Supplemental Declaration of Daniel Carlin Weber

2. Supplemental Declaration of Plaintiff Andrew Raymond

3. Supplemental Declaration of Plaintiff Carlos Rabanales

4. Supplemental Declaration of Plaintiff Brandon Ferrell

5. Supplemental Declaration of Plaintiff Joshua Edgar

6. Supplemental Declaration of Plaintiff Ronald David

7. Supplemental Declaration of Plaintiff Nancy David

8. Excerpts from Federal Defendants' Notice Of Motion And Motion To Dismiss Plaintiffs' Complaint For Declaratory And Injunctive Relief, filed in *State of California v. BATF*, No. 20-cv-6761 (N.D. Cal.) (Nov. 30, 2020).

IN CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

MARYLAND SHALL ISSUE, INC., ET AL,               Case No.: 485899-V

      Plaintiffs,

vs.                                              SUPPLEMENTAL DECLARATION OF
                                                 DANIEL CARLIN-WEBER
MONTGOMERY COUNTY, MARYLAND,

      Defendant.

      COMES NOW, the declarant, DANIEL CARLIN-WEBER, and hereby solemnly declares under penalties of perjury and upon personal knowledge that the contents of the following declaration are true:

      1. My name is DANIEL CARLIN-WEBER and I am the Chairman of the Board of Directors of MARYLAND SHALL ISSUE, INC., a named plaintiff in the above captioned matter.  I execute this declaration on behalf of MARYLAND SHALL ISSUE, INC. I am an adult over the age of 18, a Maryland resident and I am fully competent to give sworn testimony in this matter.

      2. I have read and otherwise reviewed the allegations of the Complaint in this matter.  I hereby adopt and declare that the factual allegations in the complaint that relate or refer to MARYLAND SHALL ISSUE, INC., are true.

      Dated this day of JUNE 13, 2021:

                _____
                DANIEL CARLIN-WEBER
                Chairman of the Board of Directors, Maryland Shall
                Issue, Inc.

**FILED**

JUN 1 6 2021

Clerk of the Circuit Court
Montgomery County, Md.

SUPPLEMENTAL DECLARATION OF DANIEL CARLIN-WEBER - 1

IN CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

| | |
|---|---|
| MARYLAND SHALL ISSUE, INC., ET AL, | Case No.: 485899-V |
| Plaintiffs, | |
| vs. | SUPPLEMENTAL DECLARATION OF PLAINTIFF ANDREW RAYMOND |
| MONTGOMERY COUNTY, MARYLAND, | |
| Defendant | |

COMES NOW, the declarant, ANDREW RAYMOND, and hereby solemnly declares under penalties of perjury and upon personal knowledge that the contents of the following declaration are true:

1. My name is ANDREW RAYMOND and I am a named plaintiff in the above captioned matter and the co-owner of ENGAGE ARMAMENT LLC, which is also a named plaintiff in this matter. I execute this declaration on behalf of myself and of ENGAGE ARMAMENT LLC. I am an adult over the age of 18, a Maryland resident and I am fully competent to give sworn testimony in this matter.

2. I I have read and otherwise reviewed the allegations of the Complaint in this matter. I solemnly affirm under the penalties of perjury that the contents of the complaint that relate or refer to myself and ENGAGE ARMAMENT LLC, are true.

Dated this day of JUNE 13, 2021:

_____
ANDREW RAYMOND

**FILED**

JUN 1 6 2021

Clerk of the Circuit Court
Montgomery County, Md.

SUPPLEMENTAL DECLARATION OF PLAINTIFF ANDREW RAYMOND - 1

IN CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

MARYLAND SHALL ISSUE, INC., ET AL,

    Plaintiffs,

vs.

MONTGOMERY COUNTY, MARYLAND,

    Defendant

Case No.:

SUPPLEMENTAL DECLARATION OF
PLAINTIFF CARLOS RABANALES

COMES NOW, the declarant, CARLOS RABANALES, and hereby solemnly declares under penalties of perjury and upon personal knowledge that the contents of the following declaration are true:

1. My name is CARLOS RABANALES and I am a named plaintiff in the above captioned matter and the co-owner of ENGAGE ARMAMENT LLC, which is also a named plaintiff in this matter. . I am an adult over the age of 18, a Maryland resident and I am fully competent to give sworn testimony in this matter. I execute this declaration on behalf of myself and of ENGAGE ARMAMENT LLC.

2. I have read and otherwise reviewed the allegations of the Complaint in this matter. I solemnly affirm under the penalties of perjury that the contents of the complaint that relate or refer to myself and ENGAGE ARMAMENT LLC, are true.. .

Dated this day of JUNE 13, 2021:

CARLOS RABANALES

**FILED**

JUN 1 6 2021

Clerk of the Circuit Court
Montgomery County, Md.

SUPPLEMENTAL DECLARATION OF PLAINTIFF CARLOS RABANALES - 1

IN CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

MARYLAND SHALL ISSUE, INC., ET AL,

       Plaintiffs,

vs.

MONTGOMERY COUNTY, MARYLAND,

       Defendant

Case No.: 485899-V

SUPPLEMENTAL DECLARATION OF PLAINTIFF BRANDON FERRELL

     COMES NOW, the declarant, BRANDON FERRELL, and hereby solemnly declares under penalties of perjury and upon personal knowledge that the contents of the following declaration are true:

     1. My name is BRANDON FERRELL and I am a named plaintiff in the above captioned matter. I am an adult over the age of 18, a Maryland resident and I am fully competent to give sworn testimony in this matter.

     2. I have read and otherwise reviewed the allegations of the Complaint in this matter. I solemnly affirm under the penalties of perjury that the contents of the complaint that relate or refer to myself are true.

     Dated this day of JUNE 13, 2021:

_____

BRANDON FERRELL

**FILED**

JUN 1 6 2021

Clerk of the Circuit Court
Montgomery County, Md.

SUPPLEMENTAL DECLARATION OF PLAINTIFF BRANDON FERRELL - 1

1
2
3          IN CIRCUIT COURT FOR MONTGOMERY COUNTY,
4                              MARYLAND
5
6    MARYLAND SHALL ISSUE, INC., ET AL,   Case No.: 485899-V
7        Plaintiffs,
8        vs.
9    MONTGOMERY COUNTY, MARYLAND,   SUPPLEMENTAL DECLARATION OF
                                     PLAINTIFF DERYCK WEAVER
10       Defendant
11
12
13   COMES NOW, the declarant, DERYCK WEAVER, and hereby
14   solemnly declares under penalties of perjury and upon personal
15   knowledge that the contents of the following declaration are
16   true:
17   1. My name is DERYCK WEAVER and I am a named plaintiff
18   in the above captioned matter. I am an adult over the age of 18, a
19   Maryland resident and I am fully competent to give sworn
20   testimony in this matter.
21   2. I have read and otherwise reviewed the allegations of the
22   Complaint in this matter. I solemnly affirm under the penalties
23   of perjury that the contents of the complaint that relate or refer
24   to myself are true.
25   Dated this day of JUNE 13, 2021:
26
27   DERYCK WEAVER
28
     SUPPLEMENTAL DECLARATION OF PLAINTIFF DERYCK
     WEAVER - 1

**FILED**

JUN 1 6 2021

Clerk of the Circuit Court
Montgomery County, Md.

IN CIRCUIT COURT FOR MONTGOMERY COUNTY,
MARYLAND

MARYLAND SHALL ISSUE, INC., ET AL.  Case No.: 485899-V

Plaintiffs.

vs.

MONTGOMERY COUNTY. MARYLAND,    SUPPLEMENTAL DECLARATION OF
                                 PLAINTIFF JOSHUA EDGAR

Defendant

COMES NOW, the declarant, JOSHUA EDGAR, and hereby solemnly declares under penalties of perjury and upon personal knowledge that the contents of the following declaration are true:

1. My name is JOSHUA EDGAR and I am a named plaintiff in the above captioned matter. I am an adult over the age of 18, a Maryland resident and I am fully competent to give sworn testimony in this matter.

2. I have read and otherwise reviewed the allegations of the Complaint in this matter.  I solemnly affirm under the penalties of perjury that the contents of the complaint that relate or refer to myself are true.

Dated this day of JUNE 13, 2021:

_JOSHUA EDGAR_

SUPPLEMENTAL DECLARATION OF PLAINTIFF JOSHUA
EDGAR - 1

**FILED**

JUN 1 6 2021

Clerk of the Circuit Court
Montgomery County, Md.

IN CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

| | |
|---|---|
| MARYLAND SHALL ISSUE, INC., ET AL, | Case No.: 485899-V |
| Plaintiffs, | |
| vs. | SUPPLEMENTAL DECLARATION OF |
| | PLAINTIFF RONALD DAVID |
| MONTGOMERY COUNTY, MARYLAND, | |
| Defendant | |

COMES NOW, the declarant, RONALD DAVID, and hereby solemnly declares under penalties of perjury and upon personal knowledge that the contents of the following declaration are true:

1. My name is RONALD DAVID and I am a named plaintiff in the above captioned matter, and the owner of I.C.E. FIREARMS & DEFENSIVE TRAINING, LLC, which is also a named plaintiff in this matter. I execute this declaration on behalf of myself and on behalf of I.C.E. FIREARMS & DEFENSIVE TRAINING, LLC. I am an adult over the age of 18, a Maryland resident and I am fully competent to give sworn testimony in this matter.

2. I have read and otherwise reviewed the allegations of the Complaint in this matter. I solemnly affirm under the penalties of perjury that the contents of the complaint that relate or refer to myself and to I.C.E. FIREARMS & DEFENSIVE TRAINING, LLC, are true.

Dated this day of JUNE 13, 2021:

RONALD DAVID

**FILED**

JUN 1 6 2021

Clerk of the Circuit Court
Montgomery County, Md.

SUPPLEMENTAL DECLARATION OF PLAINTIFF RONALD DAVID - 1

IN CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

MARYLAND SHALL ISSUE, INC., ET AL,            Case No.: 485899-V

    Plaintiffs,

vs.                                            SUPPLEMENTAL DECLARATION OF
                                               PLAINTIFF NANCY DAVID
MONTGOMERY COUNTY, MARYLAND,

    Defendant

COMES NOW, the declarant, NANCY DAVID, and hereby solemnly declares under penalties of perjury and upon personal knowledge that the contents of the following declaration are true:

    1. My name is NANCY DAVID and I am a named plaintiff in the above captioned matter. I am an adult over the age of 18, a Maryland resident and I am fully competent to give sworn testimony in this matter.

    2. I have read and otherwise reviewed the allegations of the Complaint in this matter. I solemnly affirm under the penalties of perjury that the contents of the complaint that relate or refer to myself are true.

Dated this day of JUNE 13, 2021:

_Nancy David_
NANCY DAVID

FILED

JUN 1 6 2021

Clerk of the Circuit Court
Montgomery County, Md.

SUPPLEMENTAL DECLARATION OF PLAINTIFF NANCY DAVID - 1

1   JEFFREY BOSSERT CLARK
    Acting Assistant Attorney General
2
    LESLEY FARBY
3   Assistant Branch Director

4   ERIC J. SOSKIN (PA Bar # 200663)
    Senior Trial Counsel
5   United States Department of Justice
    Civil Division
6   Federal Programs Branch

7        1100 L Street NW, Room 12002
         Washington, DC 20005
8        Telephone: (202) 353-0533
         FAX: (202) 616-8470
9        Eric.Soskin@usdoj.gov

10  Attorneys for Defendants

11              UNITED STATES DISTRICT COURT

12            NORTHERN DISTRICT OF CALIFORNIA

13                SAN FRANCISCO DIVISION

14
    STATE OF CALIFORNIA,                    )  Case No. 3:20-cv-06761-EMC
15                          *et al.*        )
            Plaintiffs,                     )  **FEDERAL DEFENDANTS' NOTICE OF**
16                                          )  **MOTION AND MOTION TO DISMISS**
         v.                                 )  **PLAINTIFFS' COMPLAINT FOR**
17                                          )  **DECLARATORY AND INJUNCTIVE RELIEF;**
    BUREAU OF ALCOHOL, TOBACCO,             )  **[PROPOSED] ORDER**
18  FIREARMS, and EXPLOSIVES ("ATF"),       )
                            *et al.*,       )  Noting Date: January 14, 2021
19                                          )  Time:  1:30 p.m.
            Defendants.                     )  Place:  Courtroom 5, 17th Floor
20  _____)

21

22

23

24

25

26

27

28

1  under the standard for an agency change-of-position as described in *State Farm*, 463 U.S. 56. As to the

2  merits, ATF does not agree that its position has changed (or that its position is flawed in any other way),

3  *see infra* Part V.D.1, but the Court need not reach this issue because the statute of limitations in Section

4  2401(a) bars this claim. Plaintiffs assert that "around 2006, ATF . . . chang[ed] course], without providing

5  any justification for the switch," and "concluded that 80% receivers with fire-control cavity area[s] [that

6  are] completely solid and unmachined do not qualify as firearms under the GCA." Compl. ¶ 66; *see id.*

7  ¶¶ 136-37 (challenging "post-2006 approach"). If the Court credits Plaintiffs' theory, nearly fifteen years

8  have passed since the agency established this purported policy, and thus, the allegation "plainly cannot

9  provide the foundation for an APA claim, because it occurred . . . years before" Plaintiffs filed their claims.

10  *Hage*, 810 F.3d 720.

### C. Plaintiffs' Claims Should Be Dismissed Because ATF's Interpretation Of The Statute And Classification Letters Satisfy The Standards Of The APA.

12  Congress has defined "firearm" with specificity as, *inter alia*, "(A) any weapon . . . which will or

13  is designed to or may readily be converted to expel a projectile by the action of an explosive," or "(B) the

14  frame or receiver of any such weapon." In doing so, Congress changed the prior definition to explicitly

15  exclude "'any part or parts' of a firearm," other than a receiver. *See* S. Rep. 89-1866 at 14; S. Rep. 90-

16  1097. A receiver blank may not "readily be converted to expel a projectile by the action of an explosive,"

17  is not "designed to . . . expel a projectile" in and of itself, and is not itself a "receiver." It is therefore not

18  a "firearm" within the meaning of the statute.

### 1. The Statute Unambiguously Excludes Receiver Blanks From Subparagraph (A) Of The Statutory Definition Of A Firearm.

21  "When confronted with an argument that an agency's interpretation of a statute that it administers

22  is wrong, we employ the familiar *Chevron* two-step test." *City and County of San Francisco v. USCIS*,

23  944 F.3d 773, 790 (9th Cir. 2019). "When a court reviews an agency's construction of the statute which

24  it administers," the first question is "whether Congress has directly spoken" to the interpretive issue at

25  hand. *Chevron, USA v. NRDC*, 467 U.S. 837, 842 (1984). "If the intent of Congress is clear, that is the

26  end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed

27  intent of Congress." *Id.* at 842-43. "[I]f the statute is silent or ambiguous . . ., the question . . . is whether

28  the agency's answer is based on a permissible construction of the statute." *Id.* at 843. At this step, the

1   agency's interpretation is "entitled to respect based on [ATF's] specialized expertise," *P.W. Arms, Inc. v.*

2   *United States*, 2016 WL 9526687 at *6 (W.D. Wash. 2016), as well as "whether the rationale given for

3   [ATF's] decision was persuasive." *Springfield, Inc. v. Buckles*, 116 F. Supp. 2d 85, 89 (D.D.C. 2000).

4       A statutory term bears "its commonly understood meaning at the time [Congress adopted the term],

5   as evidenced by contemporary sources" to that adoption. *S.F.*, 944 F.3d at 793. Courts and agencies carry

6   out this analysis particularly "with reference to its dictionary definition at the time the statute was

7   enacted." *United States v. Carona*, 660 F.3d 360, 367 (9th Cir. 2011); *see S.F.*, 944 F.3d at 793. The

8   statutory definition has two key terms, the first of which, "convert," means to "change from one form or

9   use to another." Webster's New World Dictionary of the American Language 311 (2d ed. 1970)

10  ("Webster's 1970"). There appears to be no dispute that a receiver blank must be "change[d] from one

11  form . . . to another" before it can "expel a projectile by the force of an explosive." 18 U.S.C. § 921(a)(3).

12      The plain meaning of the term "readily" in 1968 demonstrates that a receiver blank may not

13  "readily be converted" to expel a projectile by the force of an explosive. Dictionary definitions are

14  virtually unanimous in the definition of the word. "Readily" means something that can be done "without

15  delay" and "quickly," or "without difficulty." READILY, Webster's 1970 at 1182; *see also* READILY,

16  Funk & Wagnall's Standard College Dictionary 1121 (1973) ("In a ready manner, promptly, easily").

17  This definition is consistent with that found in a major unabridged dictionary issued in 1966, the same

18  year the new definition appeared in proposed amendments to the FFA: "promptly; quickly; easily."

19  READILY, Random House Dictionary of the English Language, Unabridged 1195 (1966). Although

20  leading legal dictionaries of the time do not separately define "readily," one such source defined "readily

21  accessible" as "available for immediate use," suggesting that the word "readily" did not bear a different

22  legal meaning than in ordinary usage. Ballentine's Law Dictionary 1058 (3d ed. 1969).[13]

23      A receiver blank cannot "readily" be "converted to expel a projectile by the action of an explosive"

24  within the meaning of these definitions. An unfinished receiver that has not yet had "machining of any

25  kind performed in the area of the trigger/hammer (fire-control) recess (or cavity)," *see* ATF Firearms

---

[13] The meaning of "readily" remained stable over time. The thirty-year-old, but then-current, version of
the Oxford English Dictionary ("OED") defined "readily" as "[p]romptly, in respect of the time of action;
quickly, without delay; also, without difficulty, with ease or facility." READILY, 2., 8 OED 195 (1933)
(1978 printing). Two hundred years earlier, Samuel Johnson defined "readily" likewise, as "Expeditely,
with little hinderance or delay." Johnson, A Dictionary of the English Language (1755).

1  Technology Branch Technical Bulletin 14-01 ("Bulletin 14-01"), filed in *Calif. Rifle and Pistol Ass'n v.*

2  *ATF*, Case No. 1:14-cv-01211, ECF No. 24 at 285 (E.D. Cal. Jan. 9, 2015),[14] requires that numerous steps

3  be performed simply to yield a receiver, that then in turn must be assembled with other parts into a device

4  that can expel a projectile by the action of an explosive. These milling and metalworking steps—each of

5  which require skills, tools, and time—include: 1) "milling out of fire-control cavity"; 2) "drilling of

6  selector-lever hole"; 3) "cutting of trigger slot"; 4) "drilling of trigger pin hole; and 5) "drilling of hammer

7  pin hole." Compl. Ex. 9. Importantly, ATF will treat any "indexing"—the inclusion, in the receiver blank,

8  of visual or physical indicators regarding the two-dimensional or three-dimensional parameters of the

9  machining that must be conducted—as rendering the receiver blank a firearm. *See* Compl. Ex. 12; Ex.

10  13; Shawn J. Nelson, *Unfinished Lower Receivers*, 63 U.S. Attorney's Bulletin No. 6 at 44-49 (Nov. 2015)

11  ("Nelson, *Unfinished Receivers*"), *available at*: https://go.usa.gov/x7pP3. This prevents the makers of

12  receiver blanks from annotating the blank to instruct the purchaser as to the precise measurements needed,

13  in three dimensions, to "excavate the fire control cavity and drill the holes for the selector pin, the trigger

14  pin, and the hammer pin." Nelson, *Unfinished Receivers*, at 47. The need to conduct these machining

15  steps from scratch, without indexing, and "carefully" means a working gun cannot be produced "without

16  difficulty." *Id.* And the work to excavate the cavities and drill holes in a solid, unmachined substrate

17  requires care rather than speed to avoid doing so raggedly or in the wrong area. *See id.* Therefore, the

18  receiver cannot be completed "without delay," even leaving aside the further assembly with many other

19  parts needed to have a weapon that can expel a bullet by explosive action. A receiver blank therefore may

20  not "readily be converted" into a firearm.[15]

21      Judicial constructions of the statute contemporaneous to 1968 reinforce the conclusion that

22  Congress has "directly spoken to the issue" of whether a receiver blank is a firearm. *Chevron*, 467 U.S.

23  842. "For example, shortly after Congress adopted the definition of "firearm," the Second Circuit rejected

24

25  ───────────────
[14] The Court may take judicial notice of this document, a guide that assists ATF Special Agents and others in analyzing receiver blanks, as a filed court record. *See Rupert*, 68 F. Supp. 3d at 1154.

26  [15] Nor is a receiver blank "designed to . . . expel a projectile by the action of an explosive." 18 U.S.C.

27  921(a)(3)(A). To the contrary, it is "designed to" be a receiver, which, although a key component of a firearm that expels a projectile through explosive action, is not itself the firearm. A receiver itself may

28  not permissibly be interpreted to satisfy subparagraph (A) of the statutory definition of "firearm" because that would "render an entire subparagraph meaningless," *i.e.*, subsection (B), Congress's specific inclusion of "receiver" as an alternative meaning of "firearm." *Nat'l Ass'n of Mfrs. v. DoD*, 138 S. Ct. 617, 632 (2018); *see Gorospe v. C.I.R.*, 451 F.3d 966, 970 (9th Cir. 2006) (applying canon of surplusage).

**CERTIFICATE OF SERVICE**

I hereby certify that on June 16, 2021, the foregoing **PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED** and **MEMORANDUM IN SUPPORT** of that motion, was served by hand on defendant Montgomery County by delivering a copy of these filings by hand to:

Marc P. Hansen, Esq.
County Attorney,
Montgomery County, MD
101 Monroe Street, 3rd floor
Rockville, Maryland 20850

MARK W. PENNAK
Maryland Shall Issue, Inc.
9613 Harford Rd, Ste, C #1015
Baltimore, MD 21234-21502
mpennak@marylandshallissue.org
Phone: (301) 873-3671

MD Atty No. 1905150005

Dated: June 16, 2021

IN CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

**MARYLAND SHALL ISSUE, INC., et al.,**    Case No.: 485899-V

*Plaintiffs,*

vs.

**MONTGOMERY COUNTY, MARYLAND,**

*Defendant.*

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED**

MARK W. PENNAK

Maryland Shall Issue, Inc.

9613 Harford Rd

Ste C #1015

Baltimore, MD 21234-21502

mpennak@marylandshallissue.org

Phone: (301) 873-3671

MD Atty No. 1905150005

*Counsel for Plaintiffs*

FILED

JUN 16 2021

Clerk of the Circuit Court
Montgomery County, Md.

# TABLE OF CONTENTS

STATEMENT OF THE CASE.................................................................................... 1

INTRODUCTION. ................................................................................................... 1

II.   STATEMENT OF FACTS. ............................................................................... 2

III.  BILL 4-21. ....................................................................................................... 4

ARGUMENT

   I. SUMMARY JUDGMENT STANDARDS. ......................................................... 4

   II. SO CALLED "GHOST GUNS," A PRIMER. .................................................. 5

   III. BILL 4-21 IS CONTRARY TO THE EXPRESS POWERS ACT ..................... 7

      A.  Bill 4-21 Is Expressly Preempted By Section 4-209(a). ................................. 9

      B.  Bill 4-21 Is Expressly And Impliedly Preempted Under Other Law. ........................ 14

      1. Express Preemption. ...................................................................... 14

      2. Implied preemption .......................................................................... 19

      C.  Bill 4-21 Is "Inconsistent" With Other Maryland Statutes. ........................................ 21

      D.  Bill 4-21's Regulation Of Minors Conflicts With
          State Law And Is Unconstitutionally Overbroad.................................................... 26

   IV.  BILL 4-21 IS NOT A "LOCAL LAW" AND THUS VIOLATES
        ARTICLE XI-A OF THE MARYLAND CONSTITUTION. ................................... 31

   V.  BILL 4-21 IS SO VAGUE THAT IT VIOLATES DUE PROCESS. .................... 36

      A.  The Due Process Clause of the Fourteenth Amendment And Article 24
          Of the Maryland Declaration of Rights Preclude Enactment Or  Enforcement
          Of Vague Penal Statutes. ................................................................................. 36

      B.  Bill 4-21 Is Unconstitutionally Vague. .............................................................. 38

   VI.  PLAINTIFFS HAVE STANDING TO OBTAIN THE RELIEF REQUESTED ................. 46

CONCLUSION.......................................................................................................... 51

CERTIFICATE OF SERVICE

i

## TABLE OF AUTHORITIES

**Cases:**

*Allied Vending v. Bowie*, 332 Md. 279, 631 A.2d 77 (1993)............................................................ 19

*Altadis U.S.A., Inc. v. Prince George's County*, 431 Md. 307, 65 A.3d 118 (2013).................... 19

*Ashton v. Brown*, 339 Md. 70,  660 A.2d 447 (1995 ............................................................... 38, 45

*Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289 (1979); ........................................... 46

*Beardsley v. Webb,* 30 F.3d 524 (4th Cir. 1994)......................................................................... 49

*Berry v. Queen*, 469 Md. 674, 233 A.3d 42 (2020) ...................................................................... 13

*Blue v. Prince George's County*, 434 Md. 681, 76 A.3d 1129 (2013)............................................. 13

*Boulden v. Mayor and Com'rs of Town of Elkton*, 311 Md. 411, 535 A.2d 477 (1988)................. 8

*Bowers v. State*, 283 Md. 115, 389 A.2d 341 (1978)). .................................................................. 38

*Caetano v. Massachusetts*, 577 U.S. 411 (2016) ......................................................................... 22

*Christ by Christ v. Md. Dept. of Nat. Res.*, 335 Md. 427, 644 A.2d 34 (1994) ............................. 48

*Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 162 (2012) ........................................ 10

*City of Baltimore v. Sitnick*, 254 Md. 303, 255 A.2d 376 (1969) ..................................................... 8

*City of Chicago v. Morales*, 527 U.S. 41 (1999) ..................................................................... 38, 39

*City of Los Angeles v. Patel*, 576 U.S. 409 (2015) ....................................................................... 39

*Cole v. Secretary of State*, 249 Md. 425, 240 A.2d 272 (1968)...................................................... 31

*Cremins v. County Com'rs of Washington County*, 164 Md.App. 426, 883 A.2d 966 (2005)..... 15

*CSX Transp., Inc. v. Alabama Dept. of Revenue*, 562 U.S. 277 (2011)......................................... 14

*Dasch v. Jackson*, 170 Md. 251, 183 A. 534 (1936)................................................................ 31, 35

*Defense Distributed v. Dept. of State*, 121 F.Supp.3d 680 (W.D. Tex. 2015), *aff'd.,*

838 F.3d 451 (5th Cir. 2016), *cert. denied,* 138 S.Ct. 638 (2018).................................................. 23

*Department of Natural Resources v. France*, 277 Md. 432, 357 A.2d 78 (1976) ........................ 15

*Department of Public Safety and Correctional Services v. Beard,*

142 Md.App. 283, 790 A.2d 57 (2002) .......................................................................... 15

*District of Columbia v. Heller*, 554 U.S. 570 (2008), .............................................. 22, 33

*Dombrowski v. Pfister*, 380 U.S. 479 (1965). ................................................................ 47

*El Bey v. Moorish Science Temple of America, Inc.*, 362 Md. 333, 765 A.2d 132 (2001). .......... 48

*Frase v. Barnhart*, 379 Md. 100, 840 A.2d 114 (2003) .................................................. 28

*Fraternal Order of Police v. Montgomery Cty.*, 446 Md. 490, 132 A.3d 311 (2016) ................. 46

*Galloway v. State*, 365 Md. 599, 781 A.2d 851 (2001) ......................................... *passim*

*Giant of Md. v. State's Attorney*, 274 Md. 158, 334 A.2d 107 (1975). ............................... 14

*Giovani Carandola, Ltd. v. Fox*, 470 F.3d 1074 (4th Cir. 2006) ..................................... 36

*Government Employees Ins. Co. and GEICO v. Insurance Com'r,*

332 Md. 124, 630 A.2d 713 (1993) ............................................................................. 18

*Grayned v. City of Rockford*, 408 U.S. 104, (1972) ................................................. 36, 45

*Grosvenor v. Supervisor of Assessments of Montgomery Co.,*

271 Md. 232, 315 A.2d 758 (1974) ............................................................................. 12

*Halliday v. Sturm, Ruger & Co., Inc.*, 368 Md. 186, 792 A.2d 1145 (2002); .......................... 20

*In Re Leroy T.*, 285 Md. 508, 403 A.2d 1226 (1979) .............................................. 38, 45

*In re Wallace W.,* 333 Md. 186, 634 A.2d 53 (1993) .................................................... 14

*Johnson v. United States*, 576 U.S. 591 (2015) ......................................................... 37

*Johnson v. Wright*, 92 Md.App. 179, 607 A.2d 103 (1992) ............................................. 50

*Kolender v. Lawson*, 461 U.S. 352 (1983). .............................................................. 36

*Koshko v. Haining*, 398 Md. 404, 921 A.2d 171 (2007). ....................................... 23, 28, 29

*Legend Night Club v. Miller,* 637 F.3d 291 (4th Cir. 2011) ........................................... 49

*Lovell Land, Inc. v. State Highway Admin*, 408 Md. 242, 969 A.2d 284 (2009) ......................... 48

*Maher v. Gagne,* 448 U.S. 122 (1980)..............................................................50

*Maryland Green Party v. State Board of Elections,*

165 Md.App. 113, 884 A.2d 789 (2005)..............................................................50

*Maryland–Nat'l Capital Park and Planning Comm'n v. Washington Nat'l Arena,*

282 Md. 588, 386 A.2d 1216 (1978) ..............................................................48

*McDonald v. Chicago,* 561 U.S. 742 (2010). ....................................22, 33, 38

*MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118 (2007)..........................47

*Montgomery County v. Atlantic Guns, Inc.,* 302 Md. 540, 489 A.2d 1114 (1985). ...............16, 25

*Mora v. City of Gaithersburg,* 462 F.Supp.2d 675 (2006), *modified on other grounds,*

519 F.3d 216 (4th Cir. 2008). ..............................................................9, 32

*Moore v. State,* 84 Md.App. 165, 578 A.2d 304 (1990 ..............................20

*NYSRPA v. Corlett,* --- S.Ct. ----, 2021 WL 1602643 (April 26, 2021).........................39

*Okwa v. Harper,* 360 Md. 161, 757 A.2d 118 (2000).......................................4

*Osterweil v. Bartlett,* 92 F.Supp 3d 14 (N.D.N.Y. 2015) ..............................50

*Pizza di Joey, LLC v. Mayor of Baltimore,* 470 Md. 308, 235 A.3d 873 (2020)........................47

*Post v. Bregman,* 349 Md. 142, 707 A.2d 806 (1998) ..................................48

*Prince George's County v. Fitzhugh,* 308 Md. 384, 519 A.2d 1285 (1987).................18

*Ramirez v. Commonwealth,* 479 Mass. 331 (2017) ......................................22

*Rehaif v. United States,* 139 S.Ct. 2191 (2019) ..........................................39

*Samantar v. Yousuf,* 560 U.S. 305 (2010) ................................................11

*Sessions v. Dimaya,* 138 S.Ct. 1204 (2018).....................................16, 36, 37

*Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care,*

968 F.3d 738 (9th Cir. 2020). ..............................................................46

*Smith v. Wade,* 461 U.S. 30 (1983),..............................................................49

iv

*Staples v. United States*, 511 U.S. 600 (1994) ................................................................. 39

*State v. 158 Gaming Devices*, 304 Md. 404, 499 A.2d 940 (1985). ........................................... 14

*State v. Sinclair*, 274 Md. 646, 337 A.2d 703 (1975). .................................................... 14

*Steimel v. Board*, 278 Md. 1, 357 A.2d 386, 388 (1976). ................................................ 31, 32, 35

*Talbot Cty. v. Skipper*, 329 Md. 481, 620 A.2d 880 (1993) ......................................... 8

*Troxel v. Granville*, 530 U.S. 57 (2000) ....................................................................... 28

*United States v. Davis*, 139 S. Ct. 2319 (2019). ...................................................... 36, 45

*United States v. Grace*, 461 U.S. 171 (1983)........................................................... 12

*United States v. Stevens*, 559 U.S. 460 (2010),.............................................................. 37

*Uzuegbunam v. Preczewski*, 141 S.Ct. 792 (2021). ........................................................ 49

*Voters Organized for the Integrity of City Elections v. Baltimore City Elections Bd.*,

451 Md. 377, 152 A.3d 827 (2017). ...................................................................................... 46, 47

*Welsh v. Boy Scouts of America,* 993 F.2d 1267 (7th Cir.),

*cert. denied*, 510 U.S. 1012 (1993) ................................................................................. 14

*Wheelabrator Baltimore, L.P. v. Mayor and City Council of Baltimore*,

449 F.Supp.3d 549, 560 (D. Md. 2020) ......................................................................... 8

*Wollschlaeger v. Governor, Fla.*, 848 F.3d 1293 (11th Cir. 2017) (en banc). ............................ 37

**Statutes and Constitutions:**

18 U.S.C. § 921(a)(3),................................................................................................ 5

18 U.S.C. § 923 ....................................................................................................... 19

18 U.S.C. § 923(i). ..................................................................................................... 5

1972 Sessions Laws of Maryland, ch. 13 ................................................................... 16

1988 Maryland Laws, ch. 533..................................................................................... 20

2003 Maryland Laws, ch. 5.......................................................................................... 18

2013 Maryland Laws ch. 427 ................................................................................. 20

2021 Maryland Laws, ch. 35 .......................................................................... 18, 21

Article 24 of the Maryland Declaration of Rights ............................................ 2, 36, 37

Article XI-A, Maryland Constitution ...................................................................... 31

Article XI–E, Maryland Constitution. ................................................................ 1, 31

California Penal Code §§ 29180-29184 .................................................................. 35

Due Process Clause of the Fourteenth Amendment ......................................... *passim*

MD Code, Courts and Judicial Proceedings, § 3-402 ............................................. 48

MD Code, Courts and Judicial Proceedings, § 3-409 ............................................. 45

MD Code, Criminal Law, § 4-104(b)(1), ........................................................... 27, 29

MD Code, Criminal Law, § 4-203(b)(5) ................................................................ 24

MD Code, Criminal Law, § 4-203(b)(6) ........................................................... 22, 23

MD Code, Criminal Law, § 4-203(b)(7) ................................................................ 24

MD Code, Criminal Law, § 4-209 ................................................................. *passim*

MD Code, Criminal Law, § 4-303 ......................................................................... 20

MD Code, Local Government, §10-206 ............................................................ 2, 7, 8

MD Code Nat. Resources §10-301.I. .................................................................... 27

MD Code, Public Safety, § 5-101(h)(1) ................................................................... 5

MD Code, Public Safety, § 5-101(r) ...................................................................... 15

MD Code, Public Safety, § 5-104 ........................................................... 15, 18, 19

MD Code, Public Safety, § 5-106 ......................................................................... 19

MD Code, Public Safety, § 5-107 ......................................................................... 19

MD Code, Public Safety, § 5-108 ......................................................................... 19

MD Code, Public Safety, § 5-111 ......................................................................... 20

MD Code, Public Safety, § 5-117 ................................................................. 20

MD Code, Public Safety, § 5-118 ................................................................. 20

MD Code, Public Safety, § 5-120 ................................................................. 20

MD Code, Public Safety, § 5-123 ................................................................. 20

MD Code, Public Safety, § 5-124 ................................................................. 20

MD Code, Public Safety, § 5-125 ................................................................. 20

MD Code, Public Safety, § 5-128 ................................................................. 20

MD Code, Public Safety, § 5-129 ................................................................. 20

MD Code, Public Safety, § 5-133(a) ....................................................... 15, 18

MD Code, Public Safety, § 5-133(d)(2)(i) ............................................... 26, 29

MD Code, Public Safety, § 5-134(a) ............................................................. 15

MD Code, Public Safety, § 5-201 ................................................................. 21

MD Code, Public Safety, § 5-204.1 .............................................................. 21

MD Code, Public Safety, § 5-207 ......................................................... 17, 18, 21

MD Code, Public Safety, § 5-404 ................................................................. 20

MD Code, Public Safety, §§ 5-201, 204.1, and 5-207 ................................. 21

**Other Authorities:**

67 Op.Att'y.Gen. 316, 319-20 (1982) ........................................................... 17

76 Op. Att'y 240, 247 (1991) ......................................................................... 28

Charles Winthrop Sawyer, FIREARMS IN AMERICAN HISTORY 145 (1910). ...................... 34

Journal of the Maryland Convention July 26 – August 14, 1775 .................. 34

Mark A. Tallman, GHOST GUNS, Hobbyists, Hackers, and the

Homemade Weapons Revolution, chapter 2 (2020) ...................................... 34

vii

**Regulations:**

27 C.F.R. § 478.11 ........................................................................................................... 5

27 C.F.R. § 479.102 ......................................................................................................... 5

86 Fed. Reg. 27720-01, 27730, 2021 WL 2012830 (May 21, 2021) .............................. 6

COMAR, §§ 29.03.01.42-.57 ......................................................................................... 20

**IN CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND**

| | |
|---|---|
| **MARYLAND SHALL ISSUE, INC., et al.,** | **Case No.: 485899-V** |
| *Plaintiffs,* | |
| vs. | **MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED** |
| **MONTGOMERY COUNTY, MARYLAND,** | |
| *Defendant.* | |

Pursuant to Rule 2-311, plaintiffs respectfully submit this memorandum in support of plaintiffs' emergency motion for partial summary judgment on Counts I, II and IV of the Complaint. Plaintiffs request that this Court grant declaratory and equitable relief on these Counts, enjoining defendant, Montgomery County ("County"), from enforcing Bill 4-21, the legality of which is challenged in the Verified Complaint filed by plaintiffs on May 28, 2021. For the reasons set forth below, plaintiffs' motion should be granted.

## STATEMENT OF THE CASE

### I.    INTRODUCTION.

On April 16, 2021, the County signed into law Bill 4-21, a copy of which is attached to the Verified Complaint as Exhibit A. Bill 4-21 becomes effective on July 16, 2021. Count I of the Verified Complaint alleges that through the enactment of County ordinance 4-21, the County has exceeded its powers and jurisdiction to criminally regulate the possession and transfer of lawfully owned firearms in a way that is in direct conflict with Article XI–E, § 3 of the Maryland Constitution. Count II of the Verified Complaint alleges that Bill 4-21 is inconsistent with multiple existing Maryland statutes, in violation of Maryland's Express Powers Act, MD Code, Local

MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 1

FILED

JUN 1 6 2021

Clerk of the Circuit Court
Montgomery County, Md.

1   Government, §10-206(a),(b). Count III of the Verified Complaint alleges that the restrictions

2   enacted by Bill 4-21 violate the Maryland Takings Clause, Article III § 40, and the Due Process

3   Clause of Article 24 of the Maryland Declaration of Rights by depriving plaintiffs of their vested

4   property rights in the personal property regulated by Bill 4-21. Count IV alleges that the hopelessly

5   vague language adopted by Bill 4-21 violates the Due Process Clause of the Fourteenth

6   Amendment and the Due Process Clause of Article 24 of the Maryland Declaration of Rights.

7   Plaintiffs seek declaratory and injunctive relief on their State Constitutional and statutory law

8   claims. Plaintiffs seek declaratory and equitable relief as well as compensatory damages, nominal

9   damages, and punitive damages under 42 U.S.C. 1983, under Count IV, their federal constitutional

10  claim. In this motion, plaintiffs seek summary judgment awarding declaratory and injunctive relief

11  on Counts I, II, and IV, leaving the Takings Claims of Count III, damages under Count IV and the

12  award of attorney's fees under 42 U.S.C. §1983, to further proceedings in this Court. See Part VI,

13  *infra.*

14  **II.    STATEMENT OF FACTS.**

15      The plaintiffs in this matter are Maryland Shall Issue, Inc. ("MSI"), two Montgomery

16  County businesses, ENGAGE ARMAMENT LLC ("Engage") and I.C.E. FIREARMS &

17  DEFENSIVE TRAINING, LLC ("ICE Firearms"). Engage is a Type I, Type VII, and Type X

18  Federal Firearms Licensee ("FFL") and is thus a federally licensed seller and manufacturer of

19  firearms and explosive devices. See Complaint ¶ 26; https://www.atf.gov/resource-center/types-

20  federal-firearms-licenses-ffls (listing the types of FFLs). Engage is also a registered Maryland

21  Firearms Dealer. (Id.). ICE Firearms provides firearm training to individuals with handguns, rifles

22  and shotguns. (Id. ¶ 32). The named plaintiffs also include the respective owners of these

23

    MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
    SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 2

1   businesses, two supervisory employees of Engage, a contractor at Engage, and the spouse of the

2   owner of ICE Firearms. With the exception of plaintiff Carlos Rabanales, who lives in Frederick

3   Maryland and commutes to work at Engage, all the individual plaintiffs are residents of

4   Montgomery County. These businesses and individuals are directly regulated by Bill 4-21 and are

5   all aggrieved by the enactment of Bill 4-21. Complaint ¶¶ 24-34. Attached to the Verified

6   Complaint are the sworn verification statements of each of the individual plaintiffs and the

7   authorized representatives of the corporate plaintiffs. The supplemental declarations of each of the

8   plaintiffs are attached to the Motion. The factual allegations concerning each of these plaintiffs

9   may thus be taken as evidence for purposes of this Motion for Summary Judgment.

10      All the individual plaintiffs are also members of MSI. MSI is a Section 501(c)(4), all-

11   volunteer, non-partisan, voluntary membership organization with approximately 2000 members

12   state-wide. Complaint ¶¶ 24-25. MSI is dedicated to the preservation and advancement of gun

13   owners' rights in Maryland. It seeks to educate the community about the right of self-protection,

14   the safe handling of firearms, and the responsibility that goes with carrying a firearm in public.

15   MSI has one or more members who live outside of Montgomery County, but who travel to and/or

16   work within Montgomery County. (Id.). One such member is plaintiff Carlos Rabanales, who lives

17   in Frederick County, Maryland. Complaint ¶ 28. Among the membership of MSI are "qualified

18   instructors" who engage in firearms training, including firearms instruction of minors. Plaintiffs

19   Ronald and Nancy David are such qualified instructors. Complaint ¶¶ 33, 34. MSI filed comments

20   in opposition to Bill 4-21, when it was initially proposed in February of 2021 and MSI and its

21   members are aggrieved by the enactment of Bill 4-21 into law. Complaint ¶ 25 and Exh.B to the

22   Complaint.

23

24   MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
     SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 3

1  **III.   BILL 4-21.**

2      Bill 4-21 embodies Montgomery County's latest attempt to regulate firearms. As detailed

3  in Complaint (¶¶ 4-7), Bill 4-21 extensively amends the County's "Weapons" ordinance County

4  Code Section 57, to regulate the possession, sale, transfer and transport of firearms, including, but

5  not limited to, so-called "ghost guns." The manner in which Bill 4-21 does so is detailed in the

6  Complaint. Id. ¶¶ 4-7. The legal framework of federal and State statutory law in which Bill 4-21

7  was enacted is likewise detailed in the Complaint. Id. ¶¶ 8-19. The Maryland Constitutional

8  provisions and State statutory and preemption provisions of Maryland law are set forth in the

9  Complaint. Id. ¶¶ 20-23. These provisions of the Complaint are incorporated herein by reference.

10                                **ARGUMENT**

11     Plaintiffs are entitled to partial summary judgment on Counts I, II and IV of the Verified

12  Complaint. The material facts are established by the declarations of each of the plaintiffs and are

13  attached to the Complaint and those basic facts cannot be reasonably disputed. On those facts,

14  plaintiffs are entitled to summary judgment as a matter of law on each of these Counts, as the

15  illegality of the County's actions on each Count appear on the face of the Complaint.

16  **I.   SUMMARY JUDGMENT STANDARDS.**

17     Plaintiffs seek partial summary judgment under Rule 2-501 on Counts I, II and IV. The

18  relevant material facts are established by the declaration of each of the plaintiffs attached to the

19  Verified Complaint and cannot be reasonably disputed. Plaintiffs are entitled to summary judgment

20  on each of these Counts as a matter of law. See, e.g., *Okwa v. Harper*, 360 Md. 161, 178, 757 A.2d

21  118 (2000) (summary judgment "is used to dispose of cases when there is no genuine dispute of

22  material fact and the moving party is entitled to judgment as a matter of law").

23

MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 4

1   II.   SO CALLED "GHOST GUNS," A PRIMER.

2          Bill 4-21 purports to address so-called "ghost guns," which are defined by Bill 4-21 as a

3   "a firearm, including an unfinished frame or receiver, that lacks a unique serial number engraved

4   or cased in metal alloy on the frame or receiver by a licensed manufacturer, maker or importer

5   under federal law or markings in accordance with 27 C.F.R. § 479.102." In other words, the term

6   "ghost gun" is merely a pejorative, scary name for firearms that are lawfully manufactured by an

7   individual for personal use and thus lack a serial number on the receiver that federally licensed

8   and regulated manufacturers would otherwise engrave pursuant to 18 U.S.C. § 923(i). Such

9   firearms built for personal use have been perfectly legal under federal and Maryland law for the

10  entire history of the United States and remain lawful to this day.

11         Under Federal law, a "firearm" is defined by 18 U.S.C. § 921(a)(3), to include not only a

12  weapon that will, is designed to, or may readily be converted to expel a projectile, but also the

13  "frame or receiver" of any such weapon. Complaint, ¶9.[1] Essentially the same definition is in MD

14  Code, Public Safety, § 5-101(h)(1). Complaint ¶10. As detailed in the Complaint (¶11), since 1968,

15  the Federal Bureau of Alcohol, Tobacco and Firearms ("ATF") has defined a "receiver" as "[t]hat

16  part of a firearm which provides housing for the hammer, bolt or breechblock, and firing

17  mechanism, and which is usually threaded at its forward portion to receive the barrel." See 27

18  C.F.R. § 478.11; 33 Fed. Reg. 18558 (1968). Under ATF Guidance, an unfinished receiver that

19

20  _____

21  [1] Through inadvertence, the paragraphs *numbers* 9, 10 and 11 on pages 7 and 8 of the Complaint

22  were duplicated on pages 9 and 10 in the final Compliant filed on May 28. For clarity, the second
    set of numbers 9, 10 and 11 will be referred to henceforth as paragraphs 9a, 10a and 11a, as

23  necessary.
    MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
    SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 5

1    has not yet had "machining of any kind performed in the area of the trigger/hammer (fire-control)

2    recess (or cavity)," is not considered to be a receiver and is thus not considered to be a firearm.

3    ATF Firearms Technology Branch Technical Bulletin 14-01.[2] Neither Maryland law nor Bill 4-21

4    defines a "receiver," much less purports an "unfinished receiver," as that term is used in Bill 4-21.

5    Under Federal and Maryland law, if the receiver is insufficiently "finished" it is simply not a

6    receiver at all and thus not a firearm, much less a firearm component. Complaint ¶¶ 8-11.

7         The Department of Justice and the ATF recently published a proposed rule in the Federal

8    Register that further defines a "receiver." See Definition of "Frame or Receiver" and Identification

9    of Firearms, 86 Fed. Reg. 27720-01, 27730, 2021 WL 2012830 (May 21, 2021) (refining the

10   definition of "receiver" by reference to a list of factors to be considered in determining whether an

11   object can be "readily converted" to a firearm within the meaning of Section 921(a)(3)). Nothing

12   in these proposed rules would regulate the possession or manufacture of privately manufactured

13   firearms for personal use. 86 Fed. Reg. at 27725 ("nothing in this rule would restrict persons not

14   otherwise prohibited from possessing firearms from making their own firearms at home without

15   markings solely for personal use (not for sale or distribution) in accordance with Federal, State

16

17   _____

18

19   [2] Technical Bulletin 14-01 is publically available at https://bit.ly/3vF5qE7. The brief of the ATF
     in the referenced California litigation is publically available through the federal PACER system
20   and the relevant portion of the ATF's brief is attached to this memorandum for the purpose of
     advising the Court of the position of an expert agency (the ATF) on matters relevant to this case.
21   That California litigation has been held in abeyance pending the rulemaking proceedings.
     Complaint ¶ 19, recently instigated by the ATF and the Department of Justice. See Order of May
22   26, 2021 (granting joint stipulation staying the case until ATF issues a final rule). This Court may
     take judicial notice of these official federal documents and court records pursuant to MD Rule 5-
23   201and plaintiffs specifically request that this Court do so.
     MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
24   SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 6

1   and local law"). The proposed Rule thus would regulate FFLs, but not regulate private individuals

2   who make their own firearms. See 86 Fed. Reg. at 27732.

3         Manufacturing an unfinished receiver into a "functional lower receiver" is not a trivial

4   process, as pointed out in court filings submitted by the ATF and the Department of Justice. For

5   example, in *State of California v. BATF*, No. 20-cv-6761 (N.D. Cal.), the Department of Justice

6   and the ATF explained:

7        An unfinished receiver that has not yet had "machining of any kind performed in the area
     of the trigger/hammer (fire-control) recess (or cavity)," see ATF Firearms Technology

8        Branch Technical Bulletin 14-01 ("Bulletin 14-01"), filed in Calif. Rifle and Pistol Ass'n
     v. ATF, Case No. 1:14-cv-01211, ECF No. 24 at 285 (E.D. Cal. Jan. 9, 2015), requires that

9        numerous steps be performed simply to yield a receiver, that then in turn must be assembled
     with other parts into a device that can expel a projectile by the action of an explosive. These

10       milling and metalworking steps—each of which require skills, tools, and time—include:
     1) "milling out of fire-control cavity"; 2) "drilling of selector-lever hole"; 3) "cutting of

11       trigger slot"; 4) "drilling of trigger pin hole; and 5) "drilling of hammer pin hole." Compl.
     Ex. 9.

12                       * * * *

13       The need to conduct these machining steps from scratch, without indexing, and "carefully"
     means a working gun cannot be produced "without difficulty." Id. And the work to

14       excavate the cavities and drill holes in a solid, unmachined substrate requires care rather
     than speed to avoid doing so raggedly or in the wrong area. See id. Therefore, the receiver

15       cannot be completed "without delay," even leaving aside the further assembly with many
     other parts needed to have a weapon that can expel a bullet by explosive action. A receiver

16       blank therefore may not "readily be converted" into a firearm.

17  Federal Defendants' Notice Of Motion And Motion To Dismiss Plaintiffs' Complaint For

18  Declaratory And Injunctive Relief, at 16-17 (filed Nov. 30, 2020) (attached to Motion).

19  **III.   BILL 4-21 IS CONTRARY TO THE EXPRESS POWERS ACT**

20        Summary judgment is appropriate on Count II of the Complaint. Complaint ¶¶ 40-50.

21  Under the Express Powers Act, MD Code, Local Government, §10-206, Montgomery County laws

22  must be "not inconsistent with State law" and the County is barred from enacting laws that are

23  MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 7

1   "preempted by or in conflict with public general law." As detailed in the Complaint and explained

2   further below, Bill 4-21 is in violation of these limitations for multiple reasons and thus must be

3   struck down. See *Boulden v. Mayor and Com'rs of Town of Elkton*, 311 Md. 411, 415, 535 A.2d

4   477 (1988) ("ordinances which assume directly or indirectly to permit acts or occupations which

5   the State statutes prohibit, or to prohibit acts permitted by statute or Constitution, are under the

6   familiar rule for validity of ordinances uniformly declared to be null and void"); *Talbot Cty. v.*

7   *Skipper*, 329 Md. 481, 487 n.4, 620 A.2d 880 (1993) (preemption by conflict exists if a local

8   ordinance "prohibits an activity which is intended to be permitted by state law, or permits an

9   activity which is intended to be prohibited by state law"); *City of Baltimore v. Sitnick*, 254 Md.

10  303, 317, 255 A.2d 376 (1969) ("a political subdivision may not prohibit what the State by general

11  public law has permitted"). See also *Wheelabrator Baltimore, L.P. v. Mayor and City Council of*

12  *Baltimore*, 449 F.Supp.3d 549, 560 (D. Md. 2020) (summarizing Maryland preemption law).

13          In this respect, the County cannot rely on the limited exceptions to preemption specified in

14  MD Code, Criminal Law, § 4-209(b), to override these provisions of the Express Powers Act.

15  Section 4-209(b) creates exceptions from the broad preemption imposed **by Section 4-209(a)**;

16  nothing in Section 4-209(b) purports to create an exception from limitations on localities imposed

17  by Section 10-206 of the Express Powers Act. Section 10-206 bars any local law that is inconsistent,

18  preempted by or in conflict with some other provision of State law. A locality may regulate under

19  the Section 4-209(b) exception **only** (at most) to the extent that the regulation is not "inconsistent

20  with" or "in conflict" or preempted by some other provisions of existing state law.

21          In enacting Bill 4-21, the County here failed to grasp that Section 4-209(b) is not a "get out

22  jail free" card; Section 4-209(b) does not give the County a free pass for the County to regulate in

23

24  MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
    SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 8

1   any way it wants. The County still must comply with the Express Powers Act. Here, as the United

2   States District Court for the District of Maryland has recognized, Maryland law, discussed below,

3   makes clear that "the Legislature" has "occup[ied] virtually the entire field of weapons and

4   ammunition regulation," holding further that there can be no doubt that "the exceptions to

5   otherwise blanket preemption [in Section 4-209] are narrow and strictly construable." *Mora v. City*

6   *of Gaithersburg*, 462 F.Supp.2d 675, 689 (2006), *modified on other grounds,* 519 F.3d 216 (4th

7   Cir. 2008). See also 76 Op. Md. Atty Gen. 240, 244-46 (December 17, 1991) (discussing the

8   history of Section 4-209).

9       A.      **Bill 4-21 Is Expressly Preempted By Section 4-209(a).**

10          The provisions of MD Code, Criminal Law, § 4-209, were originally enacted in 1985 by

11   the General Assembly. See 1985 Laws of Maryland, ch. 724. Section 4-209(a) broadly and

12   expressly "preempts the right of a county, municipal corporation, or special taxing district to

13   regulate the purchase, sale, taxation, transfer, manufacture, repair, ownership, possession, and

14   transportation of: (1) a handgun, rifle, or shotgun; and (2) ammunition for and components of a

15   handgun, rifle, or shotgun." Section 4-209(b) then provides a limited list of exceptions to that

16   facially all-encompassing preemption, stating that "[a] county, municipal corporation, or special

17   taxing district may regulate the purchase, sale, transfer, ownership, possession, and transportation

18   of the items listed in subsection (a) of this section: (i) with respect to minors; (ii) with respect to

19   law enforcement officials of the subdivision; and (iii) except as provided in paragraph (2) of this

20   subsection, within 100 yards of or in a park, church, school, public building, and other place of

21   public assembly. See Complaint ¶20 d. As explained below, the County has, by *ipse dixit*, sought

22   to expand its powers far beyond that even remotely permitted by Section 4-209(b).

23

MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 9

1    Bill 4-21 has effectively rewritten Section 4-209(b) to vastly expand its limited exceptions

2    to the broad preemptions otherwise imposed by Section 4-209(a). Under Bill 4-21:

3    A "place of public assembly" is *a place where the public may assemble, whether the place is publicly or privately owned, including* a [government owned] park [identified by the Maryland-National Capital Park and Planning Commission]; place of worship; [elementary or secondary] school; [public] library; [government-owned or -operated] recreational facility; *hospital; community health center; long-term facility;* or multipurpose exhibition facility, such as fairgrounds or a conference center. A place of public assembly includes all property associated with the place, such as a parking lot or grounds of a building.

4

5

6

7    (Brackets indicate those portions of existing Section 57 of the County Code that were deleted by

8    Bill 4-21. Italicized portions are those parts that were added to Section 57 by Bill 4-21). These

9    amendments to Section 57 of the County Code are breathtaking and leave no doubt that the County

10   has vastly overreached. See Complaint ¶¶ 59-61. Through the artifice of broadly defining the

11   statutory terms set out in Section 4-209(b), the County has effectively amended Section 4-209(b).

12   The County has no power to rewrite State law in this matter.

13       As is apparent, prior to the enactment of Bill 4-21, the scope of Section 57 of the County

14   Code was restricted to regulating firearms in a short list of very specific locations. Under Bill 4-

15   21, that list is gone and has been replaced with any location where people "may assemble"

16   regardless of "whether the place is publicly or privately owned." Such a place could include every

17   public or private sidewalk in the County. Under Bill 4-21, these locations where people may

18   assemble "includ[e]"[3] (but are not limited to) a vastly redefined and altered list of places. For

19

20

21

22   [3] See *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 162 (2012) (concluding that use of the word "includes" in a definition "is significant because it makes clear that the examples enumerated in the text are intended to be illustrative, not exhaustive"); *Samantar v. Yousuf*, 560

23

MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 10

24

1    example, Section 57 formerly listed as a location a "public library." Bill 4-21 strikes out "public"

2    and thus the Bill includes any "library," even a private home library. Similarly, Bill 4-21 now

3    regulates any "recreational facility;" it struck out Section 57's language that limited that reach to

4    a "government-owned or operated" recreational facility and thus Section 57 now arguably

5    regulates a private playground. Bill 4-21 covers any "park;" it deleted Section 57's prior limit on

6    that term as including only "government owned" park that was "identified by the Maryland-

7    National Capital Park and Planning Commission." Bill 4-21 covers a "school;" it deleted Section

8    57's former limitation to "elementary or secondary" school, thereby arguably regulating within

9    100 yards of any "school" of any type, private or public, where any sort of instruction may be

10   given, including instruction to adults. Bill 4-21 newly adds to the Section 57 list a "community

11   health center" and "long-term facility," but provides no definition for either type of facility. It is

12   difficult to imagine a broader sweep of a "place of public assembly" than that enacted by Bill 4-

13   21.

14           This structure of Section 57, as amended by Bill 4-21, is radically different than that present

15   in prior Section 57 and, obviously, vastly different than the language employed in Section 4-209(b).

16   The Bill's definition of a "place of public assembly" must be seen for what it is: an impermissible

17   attempt to evade the preemption provisions of Section 4-209(a) by defining the scope of the

18   exception so as to regulate County-wide. Bill 4-21's definition of a "place of public assembly" as

19   meaning any place where the public "may assemble" whether that be on private or public land,

20

21

22   U.S. 305, 317 n.10 (2010) ("The word 'includes' is usually a term of enlargement, and not of

23   limitation.").
     MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
24   SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 11

1   literally encompasses every sidewalk, every street, every restaurant, every coffee shop, and every

2   private business in the entire County as all such locales may be places where the public "may"

3   assemble either in the present or in the future. The term "may assemble" certainly includes all

4   public forums, as the term is used in the First Amendment context. See, e.g., *United States v. Grace*,

5   461 U.S. 171, 176 (1983) (noting that "streets, sidewalks, and parks" are traditional public forums).

6   The term even includes private homes in so far as such homes "may" be used by two or more of

7   the public from time to time in the present or in the future to "assemble." In stretching its reach to

8   every "place" within 100 yards of its vastly expanded "place of public assembly," Bill 4-21 literally

9   regulates the totality of Montgomery County, including untold tens of thousands of homes and

10   businesses throughout the County. Indeed, it is difficult to think of any location within the County

11   that is **not** within 100 yards of a sidewalk or street, or other location where people "may assemble."

12         The County's attempt to evade the Section 4-209(a) preemption provisions must be

13   rejected. The limited exceptions to the preemption provisions of Section 4-209(b) must be

14   construed narrowly in light of the underlying broad preemption otherwise imposed by Section 4-

15   209(a). As implemented by the County in Bill 4-21, the exceptions of Section 4-209(b) literally

16   reach County-wide and thus swallow the broad preemption provisions of Section 4-209(a). That

17   result is contrary to general principles of statutory construction. See, e.g., *Grosvenor v. Supervisor*

18   *of Assessments of Montgomery Co.*, 271 Md. 232, 242, 315 A.2d 758 (1974) ("A construction of

19   a statute which produces an unreasonable or illogical result should be avoided wherever it is

20   possible to do so consistent with the statutory language."); *Perdue, Inc. v. State Dept. of*

21   *Assessments and Taxation*, 264 Md. 228, 286 A.2d 165 (1972) ("A court cannot extend the scope

22

23

MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 12

24

1   of an exemption by giving to the language creating it a forced, strained, and unnatural

2   construction.").

3          Nothing in the actual language of Section 4-209 can be read to allow a County to expand

4   and redefine the exception provisions in the manner it has done here. The proviso in Section 4-

5   209(b) that allows the County to regulate firearms in within a 100 yards of "another place of public

6   assembly" must be read in context. See, e.g., *Berry v. Queen*, 469 Md. 674, 690, 233 A.3d 42

7   (2020) ("In order to interpret a word's specific meaning in a particular statute we look to the

8   context in which the word is used.") (citation omitted); *Blue v. Prince George's County*, 434 Md.

9   681, 689, 76 A.3d 1129 (2013) (same). By its very reference to "100 yards," Section 4-209(b)

10  demonstrates a legislative intent to limit the geographic reach of Section 4-209(b). In context, the

11  exceptions are limited; they do not allow the County to regulate places where people "may"

12  assemble, County-wide. Rather, Section 4-209(b) allows regulation "within 100 yards of or in a

13  park, church, school, public building, and other place of public assembly," thus covering 100 yards

14  of specific, existing locations where people **typically already** assemble in a manner akin to an

15  assembly at a park, church, school or public building. Similarly, Section 4-209's reference to a

16  "public" building strongly indicates that Section 4-209(b) does not allow the County to regulate

17  all property, "whether the place is publicly or privately owned." Nothing in Section 4-209(b)

18  suggests that it authorizes County-wide regulations over public and private property in the manner

19  imposed by Bill 4-21.

20         The rule is that "'when general words in a statute follow the designation of particular things

21  or classes of subjects or persons, the general words will usually be construed to include only those

22  things or persons of the same class or general nature as those specifically mentioned.'" *In re*

23

MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 13

1   *Wallace W.,* 333 Md. 186, 190, 634 A.2d 53 (1993), quoting *Giant of Md. v. State's Attorney,* 274

2   Md. 158, 167, 334 A.2d 107 (1975). This is simply an application of the canon of *ejusdem generis*

3   which is based on "the supposition that if the legislature had intended the general words to be

4   construed in an unrestricted sense, it would not have enumerated the specific things." *State v. 158*

5   *Gaming Devices,* 304 Md. 404, 429 n.12, 499 A.2d 940 (1985). See also *State v. Sinclair,* 274 Md.

6   646, 650, 659, 337 A.2d 703 (1975). The canon of *ejusdem generis* "limits general terms [that]

7   follow specific ones to matters similar to those specified." *CSX Transp., Inc. v. Alabama Dept. of*

8   *Revenue,* 562 U.S. 277, 294 (2011). See also *Welsh v. Boy Scouts of America,* 993 F.2d 1267, 1269

9   (7th Cir.), *cert. denied,* 510 U.S. 1012 (1993) ("The statute in listing several specific physical

10  facilities, sheds light on the meaning of 'other place of exhibition or entertainment.'"). By using

11  the term "and other place of public assembly," Section 4-209 was obviously intended to include

12  "other" places which are akin or similar to the places expressly mentioned in the same statutory

13  sentence, *viz.* a public "park," a "church," a public "school" or a "public building." That

14  understanding of Section 4-209(b) was incorporated in Section 57 of the County Code prior to the

15  enactment of Bill 4-21. The vast reach of Bill 4-21 to all places where the public "may" assemble

16  and the Bill's new, vastly expanded, laundry list of such places are obviously incompatible with

17  these principles.

18       **B.      Bill 4-21 Is Expressly And Impliedly Preempted Under Other Law.**

19            **1.      Express preemption**

20       Under Maryland law, in cases where two statutes arguably conflict in coverage, the more

21  specific statute controls. See, e.g., *Harvey v. Marshall,* 158 Md.App. 355, 365, 857 A.2d 529

22  (2004) ("'where two enactments—one general, the other specific—appear to cover the same

23

MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 14

1   subject, the specific enactment applies'"), quoting *Department of Public Safety and Correctional*

2   *Services v. Beard*, 142 Md.App. 283, 302, 790 A.2d 57 (2002). See also *Department of Natural*

3   *Resources v. France*, 277 Md. 432, 461, 357 A.2d 78 (1976) (the "general enactment must be taken

4   to affect only such cases within its general language as are not within the provisions of the

5   particular enactment"); *Cremins v. County Com'rs of Washington County*, 164 Md.App. 426, 448,

6   883 A.2d 966 (2005) (same).

7        Such circumstances are present here. Section 4-209(a) broadly preempts county regulation

8   of the "purchase, sale, taxation, transfer, manufacture, repair, ownership, possession, and

9   transportation of: (1) a handgun, rifle, or shotgun; and (2) ammunition for and components of a

10  handgun, rifle, or shotgun," but then, in Section 4-209(b), allows the counties to regulate all these

11  items in narrow circumstances. Yet, allowing the counties to broadly regulate all firearms under

12  Section 4-209(b) would conflict with numerous other, very specific preemption statutes regulating

13  firearms, all of which have been utterly ignored by the County in enacting Bill 4-21.

14       For example, Bill 4-21 purports to ban the possession or transfer or sale of any firearm

15  within 100 yards of its illegally redefined "place of public assembly." Yet, MD Code, Public Safety,

16  § 5-133(a) expressly preempts the County from regulating "the possession of a regulated firearm."

17  Similarly, MD Code, Public Safety, § 5-134(a), preempts a County from regulating "the transfer

18  of a regulated firearm," and MD Code, Public Safety, § 5-104, preempts the County from

19  regulating the "sale of a regulated firearm." There are no exceptions to these specific preemption

20  provisions which, on their face, would preempt county regulation of any "regulated firearm." The

21  term "regulated firearm" is broadly defined in State law, MD Code, Public Safety, § 5-101(r), to

22  include *any* "handgun" as well as other types of weapons.

23

    MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
    SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 15

1    The County also bans the "transport" of any firearm or a "major component" of a firearm

2    within 100 yards of its illegally redefined place of public assembly. A "major component" is

3    defined by Bill 4-21 as "the slide or cylinder or the frame or receiver," a definition that obviously

4    includes parts of handguns. Yet, Section 6 of Chapter 13, of the 1972 Sessions Laws of Maryland,

5    preempts County regulation of "wearing, carrying, or transporting of handguns."[4] That preemption

6    includes the "the slide or cylinder or the frame or receiver" of a handgun as they are parts of

7    handguns. Indeed, a "receiver" is considered to be a "firearm" under both Federal and State law

8    and thus Section 6 preempts County regulation of "receivers" as well. This preemption provision

9    is more specific than Section 4-209 as it addresses a very specific type of regulation, *viz.,* the

10   "wearing, carrying, or transporting of handguns."

11   The Court of Appeals broadly enforced those 1972 preemption provisions in *Montgomery*

12   *County v. Atlantic Guns, Inc.*; 302 Md. 540, 489 A.2d 1114 (1985). There, the Court struck down

13   Montgomery County's attempt to regulate the sale of ammunition. Relying on an opinion by the

14   Maryland Attorney General, the Court of Appeals had no difficulty in ruling that "'[i]t is obvious

15   that the local legislative proposals in question would be preempted if they directly restricted

16   possession or sale of handguns. In our view, State law mandates the same result with respect to

17

18   _____

19

20   [4] Section 6 provides:

21         *Be it further enacted,* That all restrictions imposed by the law, ordinances, or regulations
         of the political subdivisions on the wearing, carrying, or transporting of handguns are
         superseded by this Act, and the State of Maryland hereby preempts the right of the political

22         subdivisions to regulate said matters."

23   The text is available at the Maryland State Archives, https://bit.ly/3ix81MV.

24

1    restrictions on handgun ammunition.'" (302 Md. at 548-49, quoting 67 Op.Att'y.Gen. 316, 319-20

2    (1982)).

3        The same logic applies here with respect to Bill 4-21's ban on possession, sale and transport

4    of handguns within 100 yards of a "place of public assembly," as illegally defined by Bill 4-21.

5    Bill 4-21 expressly and directly regulates the possession, sale and transport of handguns, the very

6    subject matter specifically addressed in the 1972 preemption provisions, as construed in *Atlantic*

7    *Guns*. Bill 4-21 broadly abrogates that specific preemption provision throughout the County by

8    expansively defining the "place of public assembly" to include any location in which people "may

9    assemble" and including within that definition vastly expanded locations that are deemed, *ipse*

10   *dixit*, to be places of "public assembly," including places located on private property. In effect,

11   Bill 4-21 is no less County-wide than the ammunition regulation at issue in *Atlantic Guns* and it is

12   no less preempted by the 1972 preemption statute.

13       Express preemption is also not limited to regulated firearms. In 2021, the General

14   Assembly enacted, over the Governor's veto, MD Code, Public Safety, § 5-207(a), which preempts

15   county regulation of "the transfer of a rifle or shotgun," a category that covers **non**-regulated

16   firearms. Again, that preemption is more specific as it is directed to a particular type of regulation

17   over a particular type of firearm, *viz.*, the "transfer" of a "rifle or shotgun." Taken together, these

18   statutes comprehensively regulate virtually all firearms in Maryland. For example, by preempting

19   regulation of "transfers" of ordinary long guns, Section 5-207(a) necessarily preempts regulation

20   of the sale of long guns, as a "sale" is a type of "transfer."

21       With enactment of Bill 4-21, the County has effectively nullified the operation of all these

22   preemption provisions throughout the entirety of Montgomery County. At a minimum, the

23

MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 17

1    presence of these other preemption provisions strongly indicates that the exception to preemption

2    contained in Section 4-209(b) must be very narrowly construed. Otherwise, a county could

3    effectively override all these preemption provisions by expansively defining its powers under the

4    exceptions provisions of Section 4-209(b). That is, of course, precisely what the County has done

5    in this case with its enactment of Bill 4-21. The Express Powers Act bars such conduct.

6         Maryland law also makes clear that the courts are to presume that the General Assembly is

7    aware of existing Maryland statutes when it enacts or amends legislation. Thus, "[i]t is an

8    established canon of statutory construction that where the legislature enacts a specific provision

9    subsequent to a general provision, the former controls." *Prince George's County v. Fitzhugh*, 308

10   Md. 384, 390 n.4, 519 A.2d 1285 (1987) (collecting cases). See also *Government Employees Ins.*

11   *Co. and GEICO v. Insurance Com'r.,* 332 Md. 124, 133, 630 A.2d 713 (1993). Here, Section 4-

12   209 was originally enacted in 1985 and amended, in pertinent part, in 2002. MD Acts of 2002

13   ch.26 §2. In contrast, the preemption provisions concerning rifles and shotguns in MD Code,

14   Public Safety, § 5-207(a), were enacted in 2021. The preemption provisions of MD Code, Public

15   Safety, § 5-133(a) (preempting regulation of "the possession of a regulated firearm"), were

16   amended and reenacted in 2003. See 2003 Maryland Laws, ch. 5 §2. MD Code, Public Safety, §

17   5-104 (preempting regulation of a sale of a regulated firearm), and MD Code, Public Safety, § 5-

18   134 (preempting regulation of a transfer of a regulated firearm) were likewise amended and

19   reenacted in 2003 in the same legislation. (Id.). These later amended, specific preemption laws

20   limit the scope of the exception provisions of Section 4-209(b) and are controlling.

21

22

23

MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 18

1

### 2.   Implied preemption

2      Bill 4-21's bans on sale, transfer, transport and mere possession within 100 yards of the

3   County's vastly expanded definition of a "place of public assembly" are also impliedly preempted

4   because it interferes with the comprehensive regulation of firearms otherwise imposed by State

5   law. These comprehensive state law provisions impliedly "occupy the field" and thus preempt

6   County regulation that has the effect of regulating the sale, possession, transfer and transport of

7   firearms, County-wide. See, e.g., *Altadis U.S.A., Inc. v. Prince George's County*, 431 Md. 307,

8   311-12, 65 A.3d 118 (2013) (collecting cases) (holding that county regulation of the sale of cigars

9   was impliedly preempted by state statutory provisions that regulated the sale of tobacco); *Allied*

10  *Vending v. Bowie*, 332 Md. 279, 631 A.2d 77 (1993) (holding that local ordinances regulating

11  cigarette vending machines were preempted by a state licensing system for such machines).

12      First, Bill 4-21's regulations would effectively regulate the operation of many if not all

13  FFLs and licensed Maryland firearms dealers, such as plaintiff Engage. Complaint ¶ 26 ("The

14  business location of Engage is arguably within 100 yards of a 'place of public assembly' as defined

15  by Bill 4-21"). Such regulation is both expressly and impliedly preempted. As noted, MD Code,

16  Public Safety, § 5-104, expressly preempts the right of any local jurisdiction to regulate the sale

17  of a regulated firearm. Dealers are also comprehensively regulated by Federal and State law. See

18  18 U.S.C. § 923 (establishing a comprehensive regulatory and licensing system for FFLs); MD

19  Code, Public Safety, § 5-106 (requiring a dealer's license issued by the State Police before a person

20  may engage "in the business of selling, renting, or transferring regulated firearms"); MD Code,

21  Public Safety, § 5-107 (specifying the contents of an application for a dealer's license); MD Code,

22  Public Safety, § 5-108 (requiring a background check for a dealer's license); MD Code, Public

23

1    Safety, § 5-111 (establishing the terms of a dealer's license). Dealers were further extensively

2    regulated in 2013 with the enactment of the Firearms Safety Act of 2013, 2013 Maryland Laws ch.

3    427 (amending MD Code, Public Safety, §§ 5-110, 5-114, 5-115, 5-146). Dealers are also subject

4    to extensive regulation by the Maryland State Police, including regulations controlling what

5    firearms dealers may sell and where dealers may conduct business. See COMAR, §§

6    29.03.01.42-.57.

7          Second, sales and purchases of firearms by individuals are also heavily regulated. Persons

8    seeking to purchase a regulated firearm must submit an application. MD Code, Public Safety, § 5-

9    117. The contents of that application are controlled by State law. MD Code, Public Safety, § 5-

10   118. State law controls the fees and retention of for such sales, MD Code, Public Safety, § 5-120,

11   and specifies the times and manner in which such sales are completed. MD Code, Public Safety, §

12   5-123. Secondary transactions are heavily regulated, MD Code, Public Safety, § 5-124, as is the

13   identity of the firearm being sold. MD Code, Public Safety, § 5-125. Maryland law controls when

14   the purchase may take place, MD Code, Public Safety, § 5-128, and the number of firearms that

15   may be purchased. MD Code, Public Safety, § 5-129. State law controls the types of weapons that

16   an individual may purchase, possess, transport, transfer or sell. MD Code, Criminal Law, § 4-303.

17   And Maryland law tightly regulates the types of handguns that may be sold by subjecting such

18   sales to regulations published by the Maryland Handgun Roster Board. 1988 Maryland Laws, ch.

19   533, MD Code, Public Safety, § 5-404. See *Halliday v. Sturm, Ruger & Co., Inc.*, 368 Md. 186,

20   204, 792 A.2d 1145 (2002); *Moore v. State*, 84 Md.App. 165, 174, 578 A.2d 304 (1990).

21         Most recently, with the enactment of House Bill 4 over the Governor veto, the General

22   Assembly has also strictly regulated the sales, rentals and transfers of ordinary long guns. See 2021

23

MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 20

1    Maryland Laws, ch. 35. As noted, that 2021 legislation enacted MD Code, Public Safety, § 5-

2    207(a), which "preempts the right of any local jurisdiction to regulate the transfer of a rifle or

3    shotgun." That legislation established extensive regulation over the private sales, rentals and

4    transfers of long guns, including amendments to MD Code, Public Safety, §§ 5-201, 204.1, and 5-

5    207. It also enacted a provision, in Section 2, that made clear that the regulation of transfers

6    imposed by the legislation "does not include the temporary gratuitous exchange of a rifle or

7    shotgun," and expressly exempted sales, rentals, or transfers between "immediate family members"

8    and any sale, rental or transfer involving a FFL or a Maryland firearms dealer.[5] MD Code, Public

9    Safety, § 5-204.1(a)(1)(i),(ii). These express exclusions were for the purpose of leaving such

10   transactions unregulated. In short, the County's attempt to impose County-wide regulation over

11   the sale, transfer, possession and transport of all firearms has been impliedly preempted by this

12   complex and comprehensive system of State law.

13         **C.     Bill 4-21 Is "Inconsistent" With Other Maryland Statutes.**

14         Even apart from express and implied preemption, the Complaint (¶40) details the multitude

15   of ways in which Bill 4-21 is inconsistent or in conflict with general law. That discussion is

16   incorporated herein by reference. Perhaps the most egregious conflict is the Bill's attempt to ban

17   the mere possession of unserialized firearms manufactured for personal use and otherwise lawfully

18

19   _____

20

21   [5] "Immediate family members is broadly defined to include "a spouse, a parent, a stepparent, a
     grandparent, a stepgrandparent, an aunt, an uncle, a sibling, a stepsibling, a child, a stepchild, a
22   grandchild, a stepgrandchild, a niece, or a nephew, as related by blood or marriage" and "licensee"
     is defined to mean "a person who holds a dealer's license." MD Code, Public Safety, § 5-201(c),
23   (d).
     MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
     SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 21

1   possessed **in the home**. As noted, Bill 4-21 bans possession of a firearm (any firearm) within 100

2   yards of the County's illegally expanded "place of public assembly." As thus defined, this ban

3   literally extends to literally tens of thousands of homes within 100 yards of Bill 4-21's newly

4   defined and illegally expanded "place of public assembly."

5         That broad coverage of the home was specifically intended by the County. Bill 4-21 retains

6   the prior law's exception from this ban for "possession of a firearm or ammunition" in the home,

7   but then **amends** that prior law to specifically ban possession of "a ghost gun" in the home. This

8   ban on otherwise lawfully possessed firearms in the home is "inconsistent with" MD Code,

9   Criminal Law, § 4-203(b)(6), which expressly permits "the wearing, carrying, or transporting of a

10  handgun by a person on real estate that the person owns or leases or where the person resides...."

11  See Complaint ¶40 j. That provision in Section 4-203(b)(6) is not in any way limited and thus

12  includes unserialized firearms otherwise lawfully possessed by the homeowner. Quite

13  intentionally, State law likewise does not regulate the possession of long guns in the home.

14        The County's ban on the possession of a type of otherwise lawful firearm in the home also

15  raises profound Second Amendment questions under *District of Columbia v. Heller*, 554 U.S. 570

16  (2008), and *McDonald v. Chicago*, 561 U.S. 742, 750 (2010). The Second Amendment "elevates

17  above all other interests the right of law-abiding, responsible citizens to use arms in defense of

18  hearth and home." *Heller*, 554 U.S. at 635. See also *Caetano v. Massachusetts*, 577 U.S. 411

19  (2016) (summarily reversing Massachusetts' highest court for failing to follow the reasoning of

20  *Heller* in sustaining a state ban on stun guns); *Ramirez v. Commonwealth*, 479 Mass. 331, 332,

21  352 (2017) (on remand from *Caetano*, holding that "the absolute prohibition against civilian

22  possession of stun guns under § 131J is in violation of the Second Amendment" and declaring the

23

MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
24  SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 22

1  State's absolute ban to be "facially invalid"); *Defense Distributed v. Dept. of State*, 121 F.Supp.3d

2  680, 699 (W.D. Tex. 2015), *aff'd.*, 838 F.3d 451 (5th Cir. 2016), *cert. denied*, 138 S.Ct. 638 (2018)

3  (sustaining a regulation of 3-D printed guns under the Second Amendment because plaintiffs were

4  "not prohibited from manufacturing their own firearms"). Nothing in the Section 4-209(b)

5  exception provisions permits County regulation of firearm possession in the home. The exception

6  provisions of Section 4-209(b) should be construed narrowly so to avoid these constitutional issues.

7  See, e.g., *Koshko v. Haining*, 398 Md. 404, 425-27, 921 A.2d 171 (2007) (a statute is construed to

8  avoid conflict with the Constitution wherever it is possible to do so, even to the extent of applying

9  a judicial gloss to interpretation that skirts a constitutional confrontation).

10          Another egregious example of overreach is the Bill's regulation of businesses, such as

11  operated by plaintiffs Engage and ICE Firearms. As with homes, the vastly redefined "place of

12  public assembly" extends the County's regulation to literally most, if not all, businesses through

13  the entire County, *viz.,* either they **are** such places or they are **within** 100 yards of such places. Bill

14  4-21 provides that the bans it otherwise imposes do not "apply to the possession of one firearm,

15  and ammunition for the firearm, at a business by either the owner who has a permit to carry the

16  firearm, or one authorized employee of the business who has a permit to carry the firearm." This

17  exception would permit the business owner to possess of **one** firearm, but **only if** the owner has a

18  carry permit. Yet, Bill 4-21's requirement that the owner must have "a permit to carry the firearm"

19  is inconsistent with MD Code, Criminal Law, § 4-203(b)(6), which expressly allows "the wearing,

20  carrying, or transporting of a handgun by a person . . . within the confines of a business

21  establishment that the person owns or leases." Such persons are **not** required to possess or obtain

22  a Maryland carry permit. Bill 4-21's limitation to possession of "one" firearm by the owner is

23

MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 23

1   likewise inconsistent with Section 4-203(b)(6), as that section imposes no limitation on the number

2   of handguns that may be possessed, worn, carried or transported under this provision of Section 4-

3   203(b)(6). See Complaint ¶40 k.

4          Similarly, Bill 4-21 imposes the same, "one gun" and carry permit requirements on

5   authorized employees of a business, providing that the bans it otherwise imposes do not "apply to

6   the possession of one firearm, and ammunition for the firearm, at a business by ... one authorized

7   employee of the business who has a permit to carry the firearm." Yet, MD Code, Criminal Law, §

8   4-203(b)(7), expressly permits "the wearing, carrying, or transporting of a handgun by a

9   supervisory employee: (i) in the course of employment; (ii) within the confines of the business

10  establishment in which the supervisory employee is employed; and (iii) when so authorized by the

11  owner or manager of the business establishment." Such authorized employees covered by Section

12  4-203(b)(7) are **not** required to possess or obtain a Maryland carry permit to carry within the

13  business confines of the employer's business. Bill 4-21's limitation to possession of "one" firearm

14  by "one" authorized employee is likewise inconsistent with Section 4-203(b)(7), as that section

15  imposes no limitation on the number of employees or on the number of handguns or ammunition

16  that may be possessed, worn, carried or transported.

17         Bill 4-21's total ban on the "transport" of a "ghost gun" is also inconsistent with MD Code,

18  Criminal Law, § 4-203(b)(5), which expressly permits "the moving by a bona fide gun collector

19  of part or all of the collector's gun collection from place to place for public or private exhibition

20  if each handgun is unloaded and carried in an enclosed case or an enclosed holster." Such transport

21  and carriage of unloaded rifles and shotguns, including unserialized rifles and shotguns, are

22  permitted under Maryland law without restriction. Not by coincidence, all these provisions of

23

MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
24  SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 24

1    Section 4-203 were enacted in 1972 as part of the legislation that included the preemption

2    provisions applied in *Atlantic Guns*. See *Atlantic Guns*, 302 Md. at 544-45 (discussing these

3    provisions).

4          Indeed, because Bill 4-21 effectively bans (through its vast definition of a "place of public

5    assembly") the sale, transfer, possession or transport of any and all firearms and major components

6    throughout the entire County, the only place that a resident of the County could even possess

7    firearms (any firearm) would be in the home or in one of the other very limited places or

8    circumstances that fall within the other exceptions set forth in Section 57-11(b) of the County Code.

9    One such exception allows the possession of "separate ammunition or an unloaded firearm," but

10   the list of exceptions does not mention or allow the possession of a loaded firearm outside the

11   home, including such possession at a range or while engaging in otherwise lawful hunting. Such a

12   broad ban on loaded firearms is flatly contrary to Section 4-209(d)(2), which provides that "[a]

13   county, municipal corporation, or special taxing district may not prohibit the discharge of firearms

14   at established ranges." Montgomery County has several such ranges, including the Gilbert Indoor

15   Range in Rockville, Maryland, https://bit.ly/3zqfqn1, and the Izaak Walton League-Rockville

16   Chapter range in Germantown, Maryland. https://bit.ly/2Sokwjg. Another such range can be found

17   at the Bethesda-Chevy Chase Chapter of the Izaak Walton League in Poolesville, Maryland.

18   http://bcciwla.org/. And nothing in the text or structure of Section 4-209 suggests that Section 4-

19   209(b) was intended to allow the County to ban hunting with firearms, County-wide.

20

21

22

23

24   MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
     SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 25

1

2

   **D.    Bill 4-21's Regulation Of Minors Conflicts With
          State Law And Is Unconstitutionally Overbroad.**

3

   The State also closely regulates the access to firearms by minors in ways that are

4

inconsistent with Bill 4-21. Specifically, Bill 4-21 provides that a person "must not give, sell, rent,

5

lend or otherwise transfer to a minor" (defined as a person under the age of 18), "a ghost gun or a

6

major component of a ghost gun," providing further that a person may not even "purchase, sell,

7

transfer, possess, or transfer[6] a ghost gun . . . **in the presence of a minor**." (Emphasis added).

8

These matters are regulated by State law. Under MD Code, Public Safety, § 5-133(d)(2)(i), a

9

person under the age of 21 may possess and transfer a regulated firearm if he or she is under the

10

supervision of a parent, or another person at least 21 years old, or if participating in marksmanship

11

training under the supervision of a qualified instructors. Such qualified instructors would include

12

plaintiffs Ronald and Nancy David, Complaint ¶¶ 33, 34, and many MSI members, Complaint ¶

13

24. Bill 4-21 also extends its bans to a "slide" or "cylinder" or "barrel" of an unserialized firearm.

14

Under Bill 4-21, parents, instructors and others are criminalized if they give instruction using an

15

unserialized firearm, or merely possess, sell, purchase or transfer such a firearm, or the components

16

of such a firearm, in the mere "presence" of the person under the age of 18. These provisions of

17

18

_____

19

20

[6] As it apparent, the language of Bill 4-21 bans "transfer" twice over. Perhaps the County meant

21

to ban "transport" as well as "transfer," but such a ban on "transport" is not found in this section
of Bill 4-21. Even assuming that this dual reference to "transfer" is a "scrivener's error," basic
principles of notice and due process mean that such an error in a *criminal statute* can only be

22

corrected by the legislature itself, and not by a reviewing court. See, e.g, *United States v. X-
Citement Video, Inc.,* 513 U.S. 64, 82 (1994) (Scalia, J., concurring). In any event, the error makes

23

no difference to the result sought here.

MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 26

1    Bill 4-21 are "inconsistent" with Section 5-133(d)(2)(i) within the meaning of the Express Powers

2    Act, as they prohibit conduct that is expressly permitted by State law.

3          Similarly, MD Code, Criminal Law, § 4-104(b)(1), expressly permits a minor child under

4    the age of 16 to have access to any firearm if that access "is supervised by an individual at least 18

5    years old" or if the minor child under the age of 16 has a certificate of firearm and hunter safety

6    issued under § 10-301.1 of the Natural Resources Article. See Complaint ¶ 17. In conflict with

7    these provisions, County law, as amended by Bill 4-21, provides that a person must not store or

8    leave "a ghost gun . . . or a major component of a ghost gun in a location that the person knows or

9    should know is accessible to a minor." No exception is made for access supervised by a parent or

10   for access by a minor who possesses a hunter safety certificate. Indeed, under the County's law,

11   no person under the age of 18 may have **any** access to **any** firearm, or a "major component" of a

12   firearm, unless it is under the supervision of a parent, guardian or an instructor over 18. Such a ban

13   effectively kills youth hunting expressly promoted by State law. Maryland law accords "a 1-year

14   gratis hunting license to a Maryland resident under the age of 16 years who has successfully

15   completed a hunter safety course," MD Code Nat. Resources §10-301.l(f)(l). Once again, County

16   law prohibits conduct expressly permitted by State law.

17         The County's ban on the "purchase, sell, transfer, possess, or transfer a ghost gun . . . in

18   the presence of a minor" also goes too far under the text of Section 4-209. Subsection 4-209(b)

19   allows a locality to "regulate the purchase, sale, transfer, ownership, possession, and transportation

20   of the items listed in subsection (a) of this section: (i) with respect to minors." That language

21   cannot be reasonably read to permit the County to regulate activities **of adults** (including parents)

22   in the mere "**presence**" of a minor. Rather, these "minor" provisions of Section 4-209(b) are best

23

MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 27

1   understood to allow localities regulate **unsupervised** access **by minors.** The Attorney General has

2   construed Section 4-209(b) in precisely this manner. See 76 Op. Att'y 240, 247 (1991) (opining

3   that Section 4-209(b) allows local regulation "dealing with minors' *access* to firearms")

4   (Emphasis added). As the Attorney General also notes, the legislative history of Section 4-209(b)

5   is consistent with that limited reading. See id. at 245 (noting that the Governor Hughes wanted to

6   preserve local regulations that made it unlawful for "a person under 21 *to* purchase, trade, acquire

7   or possess certain weapons except under certain circumstances," as well as a county law that

8   related to "the *transfer* of weapons *to* minors"). (Emphasis added). In regulating adult activities in

9   the mere **presence** of minors, Bill 4-21 once again goes too far and is thus contrary to the

10  preemption provisions of Section 4-209(a).

11          Indeed, by regulating what an adult parent may do in the "presence" of his or her child,

12  Bill 4-21 imposes an unconstitutional restraint on the rights of parents to parent their children. In

13  *Troxel v. Granville*, 530 U.S. 57, 64 (2000), Justice O'Connor, speaking for a plurality of the

14  Supreme Court, summarized a long line of holdings, stating that parents have fundamental liberty

15  interest protected by the Constitution "in the care, custody, and control of their children." In *Frase*

16  *v. Barnhart*, 379 Md. 100, 124, 840 A.2d 114 (2003), the Court of Appeals applied *Toxel* broadly,

17  stating "[a]lthough *Troxel* happened to involve a visitation dispute, there is nothing in any of the

18  Opinions announcing or concurring in the judgment to suggest that the Constitutional proscription

19  against State interference with a fit parent's right to make basic decisions for his/her child is limited

20  to issues of visitation, and, indeed, the cases relied on by the various Justices involved other areas

21  of interference as well." In *Koshko v. Haining*, 398 Md. 404, 422-27, 921 A.2d 171 (2007), the

22  Court of Appeals applied *Troxel* and construed a Maryland statute in such a way as "to save the

23

MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 28

1   statute from invalidation" facially, but then invalidated the statute on an as-applied basis on the

2   particular facts presented in that case. As *Koshko* states, parents "are invested with the fundamental

3   right . . . to direct and control the upbringing of their children." *Koshko*, 398 Md. at 422-23.

4        These constitutional considerations apply here. Parents of minor children, such as plaintiffs

5   Raymond and Weaver (Complaint ¶¶ 27, 30), have a constitutional right, recognized in *Troxel,*

6   *Frase* and *Koshko*, to direct and control the upbringing of their children. That right includes the

7   right to teach their children about firearms, including the right to instruct in the assembly of firearm

8   components and otherwise possess firearms in the presence of their children. Under *Troxel, Frase*

9   and *Koshko*, the County simply may not constitutionally bar a minor's access to firearms or to

10  "major components" of firearms when such access is supervised by a parent or by another person

11  authorized by a parent. Parents have every right, recognized by MD Code, Criminal Law, § 4-

12  104(b)(1), to give their children access if "the child's access to a firearm is supervised by an

13  individual at least 18 years old." Similarly, parents have every right, recognized by MD Code,

14  Public Safety, § 5-133(d)(2)(i), to allow instructors, such as plaintiffs Edgar, ICE Firearms, and

15  Ronald and Nancy David (Complaint ¶¶ 30-34), to instruct children in the use of firearms. The

16  constitutional rights of parents "to direct and control the upbringing of their children," *Koshko,*

17  398 Md. at 422-23, mandate a narrow interpretation of the County's authority to enact ordinances

18  under Section 4-209(b). As in *Koshko*, this Court should construe the scope of Section 4-209(b) to

19  save it from facial invalidity and invalidate its application in Bill 4-21.

20        The County's unconstitutional overreach is especially evident with respect to "major

21  components," which Bill 4-21 defines to include a slide, a cylinder or a barrel of ordinary firearms.

22  Bill 4-21 provides that a "person must not give, sell, rent, lend, or otherwise transfer to a minor" a

23

24

"major component of a ghost gun." Yet, the slide, cylinder and a barrel are not firearms and are not required to be serialized under Federal law. Such components are also common both to unserialized "ghost guns" and ordinary serialized guns, including firearms legally manufactured by federally licensed manufacturer and lawfully purchased from a FFL and a licensed Maryland firearms dealer. For these specific items, the Bill's special treatment of ghost gun "components" is nonsensical, as it wrongly assumes that "ghost gun" components are somehow different than **non**-ghost gun components. That is only true with respect to actual **receivers**, as only receivers are firearms under Federal and State law, Complaint ¶¶ 9, 10, and only receivers are required to be serialized under Federal and State law. Complaint ¶ 11.

Similarly nonsensical and unconstitutional is Bill 4-21's regulation of "unfinished receivers," which Bill 4-21 includes within its definition of a "ghost gun." While Section 4-209(b) allows the County to regulate "components" of firearms with respect to minors, it does not allow the County to regulate **non**-components of firearms, such as "unfinished receivers." Certainly, nothing in Section 4-209(b) allows the County to regulate access to components when access is supervised by a parent. As explained, to the extent that an "unfinished receiver" is not yet an actual "receiver," is not a firearm or even a "component" of a firearm. It is simply a chunk of metal or plastic. Bill 4-21 would thus criminalize adult possession of, and minor access to, pieces of metal or plastic. The total bans imposed by Bill 4-21 on such "unfinished receivers" with respect to minors thus is both legal nonsense and unconstitutional under *Troxel*. As discussed *infra*, for these same reasons, Bill 4-21's ban on "unfinished receivers" is also both an oxymoron and hopelessly vague.

IV.   **BILL 4-21 IS NOT A "LOCAL LAW" AND THUS VIOLATES ARTICLE XI-A OF THE MARYLAND CONSTITUTION.**

Summary judgment is also appropriate under Count I of the Complaint. Complaint ¶¶ 36-39. Montgomery County has chartered home rule under Article XI-A of the Maryland Constitution and, under that provision, the County is only empowered to enact "local laws." Section 4 of Article XI-A of the Maryland Constitution states that "[a]ny law so drawn as to apply to two or more of the geographical subdivisions of this State shall not be deemed a Local Law, within the meaning of this Act." See also Article XI–E, § 6, of the Maryland Constitution provides that "[a]ll charter provisions, or amendments thereto, adopted under the provisions of this Article, shall be subject to all applicable laws enacted by the General Assembly."

Under Maryland law, a general law "deals with the general public welfare, a subject which is of significant interest not just to any one county, but rather to more than one geographical subdivision, or even to the entire state." *Steimel v. Board*, 278 Md. 1, 5, 357 A.2d 386 (1976). Thus, "some statutes, local in form, have been held to be general laws, since they affect the interest of the whole state." *Cole v. Secretary of State*, 249 Md. 425, 434, 240 A.2d 272 (1968). Similarly, "[a] law may be local in the sense that it operates only within a limited area, but general in so far as it affects the rights of persons without the area to carry on a business or to do the work incident to a trade, profession, or other calling within the area." *Dasch v. Jackson*, 170 Md. 251, 261, 183 A. 534 (1936).

Bill 4-21 is not a "local law" under these principles. Bill 4-21 was touted as a "ghost gun" bill, but this Bill obviously regulates **all firearms** with its requirement that "a person must not sell, transfer, possess, or transport a ghost gun, undetectable gun, handgun, rifle, or shotgun, or ammunition or major component for these firearms" anywhere within 100 yards of the Bill's vast

1   and unlawful definition of a "place of public assembly." As the discussion above demonstrates,

2   the reach of this Bill is breathtakingly broad for all these firearms, not just for so-called "ghost

3   guns."

4       It is equally beyond obvious that the regulation of firearms in Maryland is a matter of

5   "significant interest . . . to more than one geographical subdivision, or even to the entire state."

6   *Steimel*, 278 Md. at 5. The numerous preemption provisions and comprehensive State regulatory

7   schemes detailed above cannot be read in any way other than as an embodiment of the General

8   Assembly's recognition that localities should not be enacting regulations that broadly affect the

9   possession, sale, transport or transfer of firearms. As the federal district court in *Mora* stated, "there

10  can be no doubt that the exceptions to otherwise blanket preemption [in Section 4-209] are narrow

11  and strictly construable" and that "State law has so thoroughly and pervasively covered the subject

12  of firearms regulation and the subject so demands uniform state treatment, that any non-specified

13  regulation by local governments is clearly preempted." *Mora*, 462 F. Supp.2d at 690. Stated simply,

14  firearm regulations "affect the interest of the whole state." *Cole*, 249 Md. at 434.

15      A simple example suffices to illustrate the point. As noted, Bill 4-21 bans the "transport,"

16  the sale, the possession and the "transfer" of a "major component" of **any** firearm and defines

17  "major component" to mean "(1) the slide or cylinder or the frame or receiver; and (2) in the case

18  of a rifle or shotgun, the barrel." However, as discussed above, both federal law and Maryland law

19  regulate as firearms only the "receiver" of a firearm. Complaint ¶¶ 9, 10. The other "components"

20  banned by Bill 4-21 are not required to be serialized under either State or Federal law and are not

21  "firearms." Complaint ¶11. The "slide" or "cylinder" or "barrel" of a firearm are unregulated and

22  thus may be (and currently are) possessed, transported, transferred and sold freely within all parts

23

1   of Maryland, including Montgomery County, in interstate and intrastate commerce. Yet, Bill 4-21

2   would criminalize all this interstate and intrastate commerce in these items. The only persons who

3   would be allowed even to **possess** these components in Montgomery County would be those few

4   individuals who are excepted under Section 57-11(b) of the County Code, as amended by Bill 4-

5   21, *viz.,* police, security guards and carry permit holders. Under Bill 4-21, not even Federal

6   Firearms Licensees and State firearms dealers (such as Engage) are allowed to possess these

7   components. A typical resident of Montgomery County would be prohibited from purchasing a

8   new or replacement "slide," "cylinder" or "barrel" outside the County and transporting or

9   possessing any of these components in the County.

10         Bill 4-21 also bans the mere possession **in the home** of these otherwise non-regulated

11   components. Section 57-11 of the County Code generally exempts from its regulatory reach the

12   mere possession of an actual "firearm" in "the person's own home." But, as explained, the "slide"

13   or "cylinder" or "barrel" are not "firearms" under State and Federal law. Accordingly, if the

14   homeowner were to disassemble his or her firearm into these "components" or obtain replacement

15   "components" for his firearm, that homeowner would then be guilty of a crime under Bill 4-21 by

16   virtue of the mere possession of these components. Such disassembly is exceedingly common as

17   it is necessary in order to clean an ordinary, lawfully owned pistol that every otherwise qualified

18   American has a Second Amendment right to possess in the home under *Heller* and *McDonald.*

19   Replacement or substitution of parts, including barrels and slides, is likewise common.

20   Criminalizing possession of components is thus legally indefensible, but that result is compelled

21   by the literal language of Bill 4-21. This example demonstrates why the General Assembly is

22   correct in preempting counties from regulating firearms: Localities, perhaps acting out of

23

MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 33

1   misplaced zeal or ideology, simply lack the detailed knowledge of firearms and the understanding

2   of complex Federal and State firearms law necessary to regulate intelligently.

3         Even if Bill 4-21 could somehow be viewed as limited to "ghost guns," it still would not

4   be a "local law" under the Maryland Constitution. As the foregoing discussion demonstrates, this

5   subject matter is rife with complexity and competing values. Law-abiding citizens have been

6   building their own firearms for personal use for centuries and doing so completely lawfully.

7   Complaint ¶¶ 8, 11a.[7] The Maryland General Assembly has thus struggled repeatedly with

8   competing considerations over the last three legislative sessions, seeking to formulate a state-wide

9   approach to "ghost guns." See Complaint ¶18.

10        There is no doubt that these efforts by the General Assembly will continue and may well

11   change in light of the rulemaking proceedings currently underway by the Department of Justice

12   and the ATF. Id. ¶19. That DOJ/ATF proposal would define "receivers" differently and regulate

13   manufacturers and FFLs, but it also recognizes the right of individuals to build home-made guns

14

15   ────────────────

16

17   [7] See Mark A. Tallman, GHOST GUNS, Hobbyists, Hackers, and the Homemade Weapons
     Revolution, chapter 2 (2020). As historian Charles Winthrop Sawyer explained, "in the smaller
18   shops which formed the great majority—mere cabins on the outskirts of the wilderness—one man
     with or without an apprentice did every part of the work." 1 Charles Winthrop Sawyer,
19   FIREARMS IN AMERICAN HISTORY 145 (1910). Moreover, many gunsmiths worked
     primarily in other trades and built or repaired firearms as a hobby. See James Whisker, THE
20   GUNSMITH'S TRADE 145–63 (1992). During the Revolutionary War, many colonies relied on
     and incentivized people outside of the firearms industry to produce firearms. For example, on
21   August 2, 1775, a Committee appointed by Maryland's Provincial Convention "to enquire into the
     practicability of establishing a manufactory of Arms within this Province" determined that "Arms
22   may be furnished sooner, and at less expense by engaging immediately all Gun Smiths, and others
     concerned in carrying on that business." Journal of the Maryland Convention July 26 – August 14,
23   1775, at 64–65 (William Hand Browne ed. 1892).
     MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
24   SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 34

1   and thus does not seek to regulate individuals in their possession or manufacture of firearms for

2   personal use. The DOJ/ATF proposal does not ban or regulate the continued possession by

3   individuals of previously lawfully constructed firearms in any way. (Id.). If, as seems likely, some

4   version of the DOJ/ATF proposed rule goes into effect, that rule could dramatically affect the

5   availability of "ghost guns" in the marketplace. Such a rule could easily affect the regulatory

6   approaches that the General Assembly might take. Bill 4-21 will undoubtedly conflict with such

7   State-wide legislative approaches.

8          In particular, the Maryland legislature has looked to California, which has developed a

9   system allowing owners to engrave serial numbers on their firearms made for personal use without

10  banning possession or criminalizing owners. See California Penal Code §§ 29180-29184. In 2019,

11  the Maryland House of Delegates ordered research on this approach in a bill (House Bill 740) that

12  passed the House of Delegates. See Complaint ¶¶ 18, 37. Similarly, and most recently, in the 2021

13  legislative session, the House Judiciary Committee reported a bill to the floor that would have

14  accorded existing owners of unserialized firearms a path to retention of these firearms in a manner

15  akin to that adopted by California. Complaint ¶ 18. In stark contrast, Bill 4-21 attempts to broadly

16  criminalize everything about "ghost guns," including their owners. If Montgomery County is

17  allowed to enact Bill 4-21 with impunity, then other counties and other localities may well follow

18  suit, with still different approaches. The result will be a conflicting hodgepodge of local regulations

19  that would ensnare otherwise law-abiding citizens traveling through the State. See *Dasch*, 170 Md.

20  at 261. In light of this history and these practical realities, there can be no doubt that "ghost guns"

21  are a matter of state-wide and national interest. No more is required to invalidate Bill 4-21. *Steimel*,

22  278 Md. at 5; *Cole*, 249 Md. at 434.

23

MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 35

**V.    BILL 4-21 IS SO VAGUE THAT IT VIOLATES DUE PROCESS.**

Partial summary judgment as to liability is also appropriate on Count IV of the Complaint. See Complaint ¶¶ 51-66. As Count IV details, Bill 4-21 is so impossibly vague in imposing criminal penalties that it violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Article 24 of the Maryland Declaration of Rights. While plaintiffs also seek compensatory, nominal and punitive damages and attorney's fees under Count IV, declaratory and injunctive relief is appropriate now. Such relief will likely limit the amount of damages that plaintiffs will otherwise suffer if Bill 4-21 goes into effect.

**A.    The Due Process Clause of the Fourteenth Amendment And Article 24 Of the Maryland Declaration of Rights Preclude Enactment Or Enforcement Of Vague Penal Statutes.**

The Due Process Clause of the Fourteenth Amendment prohibits the enactment or enforcement of vague legislation. *Sessions v. Dimaya*, 138 S.Ct. 1204, 1212 (2018) ("the prohibition of vagueness in criminal statutes…is an 'essential' of due process, required by both 'ordinary notions of fair play and the settled rules of law"). A penal statute must "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). "[A] vague law is no law at all." *United States v. Davis*, 139 S. Ct. 2319, 2323 (2019). See also *Grayned v. City of Rockford*, 408 U.S. 104, 108-109 (1972) ("A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis"): *Giovani Carandola, Ltd. v. Fox*, 470 F.3d 1074, 1079 (4th Cir. 2006) (recognizing that "[a] statute is impermissibly vague if it either (1) fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it

1   prohibits or (2) authorizes or even encourages arbitrary and discriminatory enforcement" (internal

2   quotations omitted)).

3        Such a statute need not be vague in all possible applications in order to be void for

4   vagueness under the Due Process Clause. *Johnson v. United States*, 576 U.S. 591, 602 (2015) ("our

5   holdings squarely contradict the theory that a vague provision is constitutional merely because

6   there is some conduct that clearly falls within the provision's grasp"). "*Johnson* made clear that

7   our decisions 'squarely contradict the theory that a vague provision is constitutional merely

8   because there is some conduct that clearly falls within the provision's grasp.'" *Dimaya*, 138 S.Ct.

9   at 1214 n.3. A court also "cannot construe a criminal statute on the assumption that the Government

10  will use it responsibly," *United States v. Stevens*, 559 U.S. 460, 480 (2010), and "cannot find clarity

11  in a wholly ambiguous statute simply by relying on the benevolence or good faith of those

12  enforcing it." *Wollschlaeger v. Governor, Fla.*, 848 F.3d 1293, 1322 (11th Cir. 2017) (en banc).

13       Article 24 of the Maryland Declaration of Rights likewise prohibits the enactment or

14  enforcement of vague legislation. *Galloway v. State*, 365 Md. 599, 614, 781 A.2d 851 (2001) ("The

15  void-for-vagueness doctrine as applied to the analysis of penal statutes requires that the statute be

16  'sufficiently explicit to inform those who are subject to it what conduct on their part will render

17  them liable to its penalties.'") (citation omitted). Under Article 24, a statute must provide "legally

18  fixed standards and adequate guidelines for police ... and others whose obligation it is to enforce,

19  apply, and administer [it]" and "must eschew arbitrary enforcement in addition to being intelligible

20  to the reasonable person." (Id. at 615). Under this test, a statute must be struck down if it is "'so

21  broad as to be susceptible to irrational and selective patterns of enforcement.'" (Id. at 616, quoting

22

23  MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
    SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 37

1  *Bowers v. State*, 283 Md. 115, 122, 389 A.2d 341 (1978)). See also *Ashton v. Brown*, 339 Md. 70,

2  89, 660 A.2d 447 (1995); *In Re Leroy T.*, 285 Md. 508, 403 A.2d 1226 (1979).

3        Bill 4-21 is a penal statute. A violation of Bill 4-21 is a Class A violation that can result in

4  a criminal fine and up to six months imprisonment for each day in which the violation continues.

5  Complaint ¶7. Bill 4-21 contains no *mens rea* requirement of any type and thus these punishments

6  may be imposed without regard to a defendant's intent or knowledge. Such a law is particularly

7  open to facial attack. For example, in the *City of Chicago v. Morales*, 527 U.S. 41, 54 (1999), the

8  Supreme Court invalidated on vagueness grounds a Chicago ordinance that banned loitering,

9  noting that "the freedom to loiter for innocent purposes is part of the 'liberty' protected by the Due

10  Process Clause." *Morales*, 527 U.S. at 53. The Court found highly significant that the ordinance

11  was a "criminal law that contains no *mens rea* requirement" and concluded "[w]hen vagueness

12  permeates the text of such a law, it is subject to facial attack." Id. at 55.

13        **B.**    **Bill 4-21 Is Unconstitutionally Vague.**

14        Bill 4-21's vague, strict liability provisions are facially invalid for the same reasons

15  Chicago's law was found facially invalid in *Morales*. As explained above, Bill 4-21 affects and

16  chills plaintiffs' Second Amendment right to possess firearms in the home. Under *McDonald*, that

17  Second Amendment right is "fundamental" and thus incorporated against the State under the Due

18  Process Clause of the Fourteenth Amendment. *McDonald*, 561 U.S. at 778 ("the Framers and

19  ratifiers of the Fourteenth Amendment counted the right to keep and bear arms among those

20  fundamental rights necessary to our system of ordered liberty"). See *Galloway*, 365 Md. at 616

21  ("If the challenged statute . . . encroaches upon fundamental constitutional rights . . . then the

22

23

MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 38

statute should be scrutinized for vagueness on its face.").[8] Bill 4-21 also is contrary to plaintiffs'

fundamental Maryland constitutional right to be free of general laws enacted by the County. The

Bill encroaches on plaintiffs' right to control the upbringing of their minor children, a fundamental

right protected by the Due Process Clause. In a multitude of ways, Bill 4-21 also chills plaintiffs'

ability to otherwise enjoy their statutory rights to lawfully possess, transfer, sell and transport

firearms in a manner expressly preserved and protected by State law. See also *City of Los Angeles*

*v. Patel*, 576 U.S. 409, 415 (2015) (noting that "the Court has allowed such [facial] challenges to

proceed under a diverse array of constitutional provisions," including the Due Process Clause, the

First Amendment and the Second Amendment and, in *Patel,* allowing a facial challenge to be

brought under the Fourth Amendment). At minimum, Bill 4-21 must be struck down as applied to

these plaintiffs.

As *Morales* stresses, a *mens rea* requirement is especially critical to the question of facial

validity under the Due Process Clause. See also *Hill v. Colorado*, 530 U.S. 703, 732 (2000)

(stressing the importance of "a scienter requirement" in a vagueness challenge). The Supreme

Court has repeatedly stressed the importance of *mens rea* in addressing federal firearms law. See,

e.g., *Rehaif v. United States*, 139 S.Ct. 2191, 2196 (2019) (noting "a basic principle that underlies

the criminal law, namely, the importance of showing what Blackstone called 'a vicious will'");

*Staples v. United States*, 511 U.S. 600, 610-11 (1994) (imposing a *mens rea* requirement for the

---

[8] The Supreme Court recently agreed to decide whether the Second Amendment right to keep and bear arms extends outside the home. See *NYSRPA v. Corlett*, --- S.Ct. ----, 2021 WL 1602643 (April 26, 2021). Numerous aspects of Bill 4-21 apply outside the home.

1   illegal possession of a machine gun, noting that "there is a long tradition of widespread lawful gun

2   ownership by private individuals in this country," and explaining that "despite their potential for

3   harm, guns generally can be owned in perfect innocence"). Bill 4-21 has no such *mens rea* or

4   scienter requirement and thus criminalizes conduct and activities regardless of intent or knowledge

5   of a person. Bill 4-21's vagueness, coupled with the total absence of any *mens rea* requirement,

6   renders Bill 4-21 facially invalid.

7   Vagueness permeates nearly all aspects of Bill 4-21. Again, the Bill criminally punishes

8   conduct that takes place within 100 yards of "a place of public assembly," which is defined as "a

9   place where the public may assemble, whether the place is publicly or privately owned." Such

10   places include, but are not limited to, "a park; place of worship; school; library; recreational

11   facility; hospital; community health center; long-term facility; or multipurpose exhibition facility,

12   such as a fairgrounds or conference center." Bill 4-21 includes within these places "all property

13   associated with the place, such as a parking lot or grounds of a building." Virtually all of these

14   provisions are fatally vague.

15   Bill 4-21 does not define "public," and that term could be read to include any person who

16   may be present in Montgomery County for any reason. See https://bit.ly/3iuzjDD (defining "public"

17   to mean "of or relating to people in general"). Most critically, Bill 4-21 does not define "may

18   assemble," but the text of Bill 4-21 makes clear that the term broadly extends to places regardless

19   of "whether the place is publicly or privately owned." The dictionary definition for "assemble"

20   includes "to bring together (as in a particular place or for a particular purpose)" and simply "to

21   meet together." https://bit.ly/3pFvFbm. The primary dictionary definition of "may" is that the term

22   is "used to indicate possibility or probability." https://bit.ly/3iBwyjF. Thus, the term "may

23

MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 40

1   assemble" could be read to include the mere possibility of a meeting of two or more people in any

2   place for any reason, presently or in the future, including for every-day activities such as lunch.

3   By enlarging the ordinance to reach into places where the public "may assemble" and reaching

4   into private property, Bill 4-21 could be read to encompass every public sidewalk, street, Starbucks,

5   restaurant and virtually any private building open to the public in any way in the entire County.

6   Bill 4-21 fails to provide any notice of the actual location of such places and it is impossible to

7   predict or know where two or more members of the "public" "may" possibly meet. These locations

8   could even change in their application from day to day. Plaintiffs are thus left to guess at where

9   two or more members of the "public" "may assemble" on any given day. Fundamentally, the term

10  "may assemble" is "so broad as to be susceptible to irrational and selective patterns of enforcement."

11  *Galloway*, 365 Md. at 616.

12      Other locales specified in Bill 4-21 are likewise hopelessly vague. Bill 4-21 bans conduct

13  taking place at or within 100 yards of a "library," but includes no definition of "library." Instead,

14  Bill 4-21 made "library" extremely broad by deleting the statute's former definition of "library"

15  as limited to a "public" library and then extending the reach of "library" even further so as to

16  encompass places regardless of "whether the place is publicly or privately owned." The dictionary

17  definition for a "library" includes not only "a place in which literary, musical, artistic, or reference

18  materials (such as books, manuscripts, recordings, or films) are kept for use but not for sale." but

19  also includes "a collection resembling or suggesting a library" and "a series of related books issued

20  by a publisher" and "a collection of publications on the same subject." https://bit.ly/2U1Z6cd. The

21  term could thus be arguably read to include any collections of publications of any type or size

22  regardless of whether the collection is in the home or private building. Plaintiffs are left to guess

23

    MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
24  SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 41

1    as to meaning of "library" and to further guess at present or future locations of any such "libraries."

2    Again, the term "'library" is "so broad as to be susceptible to irrational and selective patterns of

3    enforcement.'" *Galloway*, 365 Md. at 616.

4            Bill 4-21 bans conduct at or within 100 yards of a "recreational facility" but does not define

5    the term. The bill does, however, make the term extremely broad by deleting the statute's former

6    limitation to a "government-owned or operated" recreational facility and then extending that reach

7    even further to encompass private property. The term "recreational facility" is not found in

8    commonly used dictionaries, see, e.g., https://bit.ly/3vbR90W, and thus it could be arguably read

9    to include a backyard swing set or private playground or other "facility" where "recreation" may

10   take place. In this respect, "facility" simply could mean "something that makes an action, operation,

11   or course of conduct easier" or "something . . . that is built, installed, or established to serve a

12   particular purpose." https://bit.ly/2Telezw. Similarly, Bill 4-21 adds to the statute's preexisting

13   scope to include a "community health center" and "long-term facility," but provides no definition

14   for either type of facility and there are no dictionary definitions for these terms. The term

15   "community health center" might be understood to include a hospital or clinic, but it could just as

16   well might include a private doctor's office. The term "long-term facility" is even vaguer as it does

17   not even inform the reader of nature of the "long-term facility," *viz.,* long-term for what? It could

18   include, for example, a "long term" storage facility. Plaintiffs can only guess as to meaning of

19   these terms and their locations. Again, all these terms are "so broad as to be susceptible to irrational

20   and selective patterns of enforcement.'" *Galloway*, 365 Md. at 616.

21          Bill 4-21 includes within its bans conduct and possession within 100 yards of a "school."

22   Bill 4-21 does not define "school" but it does delete the statute's former limitation to "elementary

23

     MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
24   SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 42

1    or secondary" school and then extends this term's reach even further to encompass public and

2    private property. The dictionary definition of a "school" includes "an establishment offering

3    specialized instruction" such as "a secretarial school" or "driving schools." https://bit.ly/3ziLj12.

4    As thus redefined, Bill 4-21 arguably regulates at or within 100 yards of any "school" of any size

5    and of any type, private or public, including locations where any organization, of any type, may

6    present instruction of any kind, including instruction to adults. The term "school" could even

7    extend to the specialized firearms instruction offered by plaintiffs ICE Firearms and Ronald and

8    Nancy David, Complaint ¶¶ 32-34, as well as to any instruction offered by plaintiff Engage

9    (Complaint ¶ 26), or by plaintiff Weaver (Complaint ¶ 30), or by MSI instructors (Complaint ¶

10   24). Plaintiffs are left to guess as to the meaning of the term and further guess at the locations

11   encompassed by the term. Once again, the term is "so broad as to be susceptible to irrational and

12   selective patterns of enforcement.'" *Galloway*, 365 Md. at 616.

13           Bill 4-21 bans conduct at and within 100 yards of a "park," but the Bill does not define

14   "park." Bill 4-21 deliberately deleted the ordinance's former definition of "park" as including only

15   a "government owned" park that was "identified by the Maryland-National Capital Park and

16   Planning Commission." The Bill extends this term's reach even further to encompass public and

17   private property. The dictionary definition for "park" includes a wide variety of areas, including

18   "a tract of land that often includes lawns, woodland, and pasture attached to a country house and

19   is used as a game preserve and for recreation" or "a space occupied by military vehicles, materials,

20   or animals." https://bit.ly/355pBQa. Plaintiffs are left to guess as to the meaning and locations

21   encompassed within the Bill's new and vague use of "park." Once again, the term is "so broad as

22   to be susceptible to irrational and selective patterns of enforcement.'" *Galloway*, 365 Md. at 616.

23

     MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
     SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 43

1      The actual items subject to regulation under Bill 4-21 are likewise hopelessly vague. Bill

2    4-21 defines "ghost gun" to include "an unfinished receiver." Bill 4-21 then purports to ban the

3    sale, rental, lending or the giving of a ghost gun (defined to include an "unfinished receiver") to a

4    minor or affording access to an "unfinished receiver" to a minor. Bill 4-21 also bans the sale,

5    transfer, manufacture, assembly, possession or transport of a ghost gun (again, defined to include

6    an "unfinished receiver"), including banning the mere possession of an unfinished receiver in the

7    home. Yet, Bill 4-21 does not define "unfinished receiver." As noted above, under Federal and

8    Maryland firearms law, an object is either a receiver or not a receiver – there is no such thing in

9    the law as an "unfinished receiver." See ATF Firearms Technology Branch Technical Bulletin 14-

10   01.[9] The term is an oxymoron. Unsurprisingly, there is no dictionary definition for the term.

11   Conceivably, an "unfinished receiver" could even include a "zero percent" receiver, which is just

12   a solid block of aluminum, steel or polymer. Nothing in Federal law, even as proposed in the

13   recently published Department of Justice and ATF rulemaking proceeding, remotely goes that far.

14   Complaint ¶ 19. Plaintiffs can only guess as to the meaning of "unfinished receiver" as used in

15   Bill 4-21.

16     Bill 4-21 broadly bans a "major component" of a firearm and defines the term "major

17   component" to include "the slide or cylinder" and, in the case of a rifle or shotgun, the "barrel."

18   As explained above, none of these "major components" of a firearm (other than a receiver) is

19   actually a "firearm" under Federal or Maryland law. A "slide or cylinder" of a handgun and the

20

21   _____

22

23   [9] See note 2, *supra*.

MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 44

1   "barrel" of a "rifle or shotgun" are lawfully obtained, possessed, transferred and transported in

2   interstate and intrastate commerce without restrictions under Federal and Maryland law. Such

3   "major components," as thus defined by Bill 4-21, can be lawfully used to build a fully serialized

4   firearm for personal use, as only the receiver is required to be serialized under Federal and

5   Maryland law. Complaint ¶ 11. Thus, in defining a "ghost gun" to include these defined

6   "components" and then banning "ghost guns," Bill 4-21 could be applied to criminalize mere

7   possession of a fully serialized firearm because banned "components" were used to build it. Again,

8   Bill 4-21 contains no *mens rea* requirement. Plaintiffs are left to guess as to whether law

9   enforcement would consider such firearms to be illegal under Bill 4-21. Arbitrary or discriminatory

10   selective enforcement is virtually guaranteed.

11        In sum, Bill 4-21 is so vague that it fails "to inform those who are subject to it what conduct

12   on their part will render them liable to its penalties" and "is so broad as to be susceptible to

13   irrational and selective patterns of enforcement." *Galloway*, 356 Md. at 614-16. Bill 4-21

14   "impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on

15   an ad hoc and subjective basis." *Grayned,* 408 U.S. at 108-109. See also *Ashton*, 339 Md. at 89

16   (striking down a city ordinance that failed to define "bona fide"); *In Re Leroy T.*, 285 Md. at 512-

17   13 (striking down a city ordinance that failed to define "commonly used"). Faced with such

18   vagueness "the role of courts under our Constitution is not to fashion a new, clearer law to take its

19   place, but to treat the law as a nullity and invite [the legislature] to try again." *Davis*, 139 S.Ct. at

20   2323. Bill 4-21 must be struck down for vagueness.

21

22

23

        MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
24      SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 45

1    **VI.    PLAINTIFFS HAVE STANDING TO OBTAIN THE RELIEF REQUESTED.**

2        There can be no doubt that plaintiffs have standing to bring this suit. Under Maryland law,

3    standing to seek a declaratory judgment requires only that the plaintiffs satisfy the elements of MD

4    Code, Courts and Judicial Proceedings, § 3-409(a): "(1) An actual controversy exists between

5    contending parties; (2) Antagonistic claims are present between the parties involved which indicate

6    imminent and inevitable litigation; *or* (3) A party asserts a legal relation, status, right, or privilege

7    and this is challenged or denied by an adversary party, who also has or asserts a concrete interest

8    in it." (Emphasis added). Any one of these three categories of harm are sufficient. The Court of

9    Appeals has thus interpreted this language to mean that a plaintiff need only establish that he or

10   she has suffered "some kind of special damage from such wrong differing in character and kind

11   from that suffered by the general public." *Voters Organized for the Integrity of City Elections v.*

12   *Baltimore City Elections Bd.*, 451 Md. 377, 396, 152 A.3d 827 (2017). See also *Fraternal Order*

13   *of Police v. Montgomery Cty.*, 446 Md. 490, 506-07, 132 A.3d 311 (2016) (holding that a police

14   union had standing to challenge the County's use of public funds to defeat a referendum

15   concerning statute on collective bargaining because statute affected the scope of bargaining by the

16   union on behalf of its members).

17       All those elements are easily satisfied here. As detailed in the Complaint (¶¶ 24-34), each

18   of the individual plaintiffs and businesses face "a realistic danger of sustaining a direct injury as a

19   result of the [law's] operation or enforcement." *Babbitt v. United Farm Workers Nat'l Union*, 442

20   U.S. 289, 298 (1979); *Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*, 968 F.3d

21   738, 747-48 (9th Cir. 2020). Each of the individual plaintiffs, including the two businesses, has

22   engaged and intends to engage in conduct arguably regulated by the provisions of Bill 4-21.

23

including the actual or constructive possession of firearms, major components and "unfinished receivers." At least one of the plaintiffs has a minor child in the household, engages in conduct arguably prohibited by Bill 4-21 in the presence of minors, or may engage in firearm instruction of minors. Complaint ¶¶ 24, 26, 27, 30, 31. MSI in particular is harmed by Bill 4-21 in a way different from the general public as it submitted comments in opposition to Bill 4-21 and those comments were ignored by the County. Indeed, the County even went so far as to exclude those comments a part of the legislative packet made public by the County. Complaint ¶ 25 and Exh. B to the Complaint. That conduct is suggestive of bad faith on the part of the County.

Each of the individual plaintiffs and businesses is and will be chilled in the actions they may take by the prospect of enforcement of Bill 4-21's provisions. Each of the individual plaintiffs is hindered or chilled in his or her right to live or work in Montgomery County or to otherwise travel through Montgomery County by the threat of enforcement of the provisions of Bill 4-21. Each of the plaintiffs' businesses likewise is and will be adversely affected in the manner in which they conduct their businesses. Each of the individual plaintiffs and businesses has been harmed and is imminently threatened with future harm by the prospect of enforcement of the unconstitutionally vague provisions of Bill 4-21. Complaint ¶ 65. A declaratory judgment is appropriate if even "one plaintiff" has standing. *Voters Organized for the Integrity of City Elections*, 451 Md. at 398.

It is also clear that plaintiffs may bring a pre-enforcement action challenging Bill 4-21 as they are not required "to risk criminal prosecution to determine the proper scope of regulation." *Dombrowski v. Pfister*, 380 U.S. 479, 487 (1965). See also *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128-29 (2007) (standing does "not require a plaintiff to expose himself to liability

1   before bringing suit to challenge the basis for the threat—for example, the constitutionality of a

2   law threatened to be enforced"). Maryland law is in full accord. *Pizza di Joey, LLC v. Mayor of*

3   *Baltimore*, 470 Md. 308, 343-44, 235 A.3d 873 (2020) (collecting cases). As Justice Marshall once

4   explained, the inchoate threat of prosecution is like the sword of Damocles in that the value of

5   such a threat "is that it hangs -- not that it drops." *Arnett v. Kennedy*, 416 U.S. 134, 231 (1974)

6   (Marshall, J., dissenting). See *Reno v. ACLU*, 521 U.S. 844, 882 (1997) (same).

7          The purpose of Maryland's Declaratory Judgment Act is "to settle and afford relief from

8   uncertainty and insecurity with respect to rights, status, and other legal relations." MD Code,

9   Courts and Judicial Proceedings, § 3-402. That purpose fits this case perfectly. As a general rule,

10  a declaratory judgment is mandatory, when otherwise properly requested. See, e.g., *Post v.*

11  *Bregman*, 349 Md. 142, 159-60, 707 A.2d 806 (1998) ("when an action for declaratory judgment

12  does clearly lie, as it did in this case, it is ordinarily not permissible for a court to avoid declaring

13  the rights of the parties by entering judgment on another pending count" and "[t]he existence of

14  another remedy, at law or in equity, does not ordinarily defeat a party's right to seek and obtain a

15  declaratory judgment"); *Christ by Christ v. Md. Dept. of Nat. Res.*, 335 Md. 427, 435, 644 A.2d

16  34 (1994) ("Where a controversy is appropriate for resolution by declaratory judgment, however,

17  the trial court must render a declaratory judgment."); *Lovell Land, Inc. v. State Highway Admin.*,

18  408 Md. 242, 256, 969 A.2d 284 (2009) (same).

19          Permanent injunctive relief is also appropriate as plaintiffs are substantially and irreparably

20  harmed by Bill 4-21 in ways that at not compensable through an award of damages. *El Bey v.*

21  *Moorish Science Temple of America, Inc.*, 362 Md. 333, 355, 765 A.2d 132 (2001). As explained

22  above, the prospect of enforcement of the penal provisions of Bill 4-21, with its extremely vague

23

MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 48

1    and otherwise illegal provisions, will chill the lawful activities of plaintiffs, impair their

2    constitutional right to control the upbringing of their children, and to travel and conduct business

3    in Montgomery County. *Maryland–Nat'l Capital Park and Planning Comm'n v. Washington Nat'l*

4    *Arena*, 282 Md. 588, 615, 386 A.2d 1216 (1978) ("irreparable injury is suffered whenever

5    monetary damages are difficult to ascertain or are otherwise inadequate"). See also *Ademiluyi v.*

6    *Egbuonu*, 466 Md. 80, 133-34, 215 A.3d 329 (2019). The public interest is served, as a matter of

7    law, by enjoining the unconstitutional and *ultra vires* actions of the County. See, e.g., *Legend Night*

8    *Club v. Miller,* 637 F.3d 291, 303 (4th Cir. 2011) ("upholding constitutional rights is in the public

9    interest").

10          Plaintiffs expressly reserve the right to seek compensatory damages and equitable relief

11   under Count III (Takings claim). Pursuant to 42 U.S.C. § 1983, plaintiffs likewise reserve the right

12   to seek compensatory, nominal and punitive damages under Count IV, in addition to the

13   declaratory and equitable relief sought in this motion. However, it is unnecessary for this Court to

14   reach damages claims at this juncture. Since Bill 4-21 will not take effect until July 16, 2021,

15   declaratory and equitable relief on Counts I, II, and IV will bear directly on the amount and nature

16   of the damages available under Counts III and IV. If Bill 4-21 is enjoined prior to its effective date,

17   or promptly thereafter, the amount of damages under these Counts will likely be lessened. Swift

18   resolution of this motion thus serves the interests of plaintiffs and the County alike. Plaintiffs have

19   pled a jury and plaintiffs' entitlement to damages under these claims are jury questions that can be

20   resolved at trial, should trial be necessary. As stated in *Smith v. Wade*, 461 U.S. 30, 56 (1983), "a

21   jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's

22   conduct is shown to be motivated by evil motive or intent, *or when it involves reckless or callous*

23
24   MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
     SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 49

1  *indifference to the federally protected rights of others.*" (Emphasis added). See also *Beardsley v.*

2  *Webb,* 30 F.3d 524, 531 (4th Cir. 1994) (same). The County has been recklessly and callously

3  indifferent to the Due Process rights of plaintiffs, including the constitutional right of plaintiffs to

4  parent their children. At the least, plaintiffs are entitled to nominal damages on a successful Section

5  1983 claim. *Uzuegbunam v. Preczewski,* 141 S.Ct. 792 (2021). Complaint ¶ 66.

6        Finally, the availability and amount of attorney's fees under 42 U.S.C. § 1988, are collateral

7  matters that likewise can be addressed at a later stage. See, e.g., *Maher v. Gagne,* 448 U.S. 122,

8  132 (1980) (an award of Section 1988 fees is permitted where "the plaintiff prevails on a wholly

9  statutory, non-civil-rights claim pendent to a substantial constitutional claim"); *Osterweil v.*

10 *Bartlett,* 92 F.Supp 3d 14, 23 (N.D.N.Y. 2015) (awarding Section 1988 fees even though the

11 plaintiff prevailed only on question of state statutory interpretation); *Maryland Green Party v.*

12 *State Board of Elections,* 165 Md.App. 113, 125-26, 884 A.2d 789 (2005) (awarding Section 1988

13 fees); *Johnson v. Wright,* 92 Md.App. 179, 181, 607 A.2d 103 (1992) (holding that fees are

14 collateral). Given the potentially dispositive nature of the declaratory and equitable relief sought

15 under Counts I, II and IV, the Court should apply MD Rule 2-602 and hold that there is no just

16 reason for delay and enter final judgment granting declaratory and injunctive relief on Counts I, II

17 and IV. See *Waters v. U.S. Fidelity & Guar. Co.* 328 Md. 700, 616 A.2d 884 (1992).

18

19

20

21

22

23

24

MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 50

1

**CONCLUSION**

2          For the foregoing reasons, the motion for partial summary judgment should be granted.

3   Plaintiffs respectfully request an emergency hearing and a decision on this motion prior to July 16,

4   2021, the effective date of Bill 4-21.

5                                                          Respectfully submitted,

6

7                                                          MARK W. PENNAK
                                                            Maryland Shall Issue, Inc.
8                                                          9613 Harford Rd
                                                            Ste C #1015
9                                                          Baltimore, MD 21234-21502
                                                            mpennak@marylandshallissue.org
10                                                         Phone: (301) 873-3671
                                                            MD Atty No. 1905150005
11
                                                            *Counsel for Plaintiffs*
12

13

14

15

16

17

18

19

20

21

22

23
     MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL
24   SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED - 51

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2021, the foregoing **PLAINTIFFS' EMERGENCY MOTION FOR PARTIAL SUMMARY JUDGMENT – EXPEDITED HEARING REQUESTED** and **MEMORANDUM IN SUPPORT** of that motion, was served by hand on defendant Montgomery County by delivering a copy of these filings by hand to:

> Marc P. Hansen, Esq.
> County Attorney,
> Montgomery County, MD
> 101 Monroe Street, 3rd floor
> Rockville, Maryland 20850

_Mark W. Pennak_

MARK W. PENNAK
Maryland Shall Issue, Inc.
9613 Harford Rd, Ste, C #1015
Baltimore, MD 21234-21502
mpennak@marylandshallissue.org
Phone: (301) 873-3671

MD Atty No. 1905150005

Dated: June 16, 2021