IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MARYLAND SHALL ISSUE, INC., *et al.*, ) | |
| ) | |
| *Plaintiffs*, ) | |
| ) | |
| v. ) | Case No. 8:21-cv-01736-TDC |
| ) | |
| MONTGOMERY COUNTY, MD., ) | |
| ) | |
| *Defendant*. ) | |

**PLAINTIFFS' MOTION TO SEVER AND TO REMAND ALL STATE LAW CLAIMS REMOVED BY THE DEFENDANT AND TO HOLD IN ABEYANCE THE SOLE REMAINING FEDERAL CLAIM UNTIL COMPLETION OF STATE COURT PROCEEDINGS**

This case presents four State law claims and one federal claim and was filed on May 28, 2021, in Circuit Court for Montgomery County, Maryland. On July 12, 2021, at the last moment, Defendant, Montgomery County, Maryland ("the County"), removed the entire case to this Court pursuant to 28 U.S.C. § 1441(a). Plaintiffs respectfully move this Court for an order severing all the State law claims presented in the case and remanding those State law claims back to the Circuit Court for Montgomery County. Plaintiffs further request that this Court hold the sole remaining federal claim (the Due Process Clause of the Fourteenth Amendment Claim set out in Count IV) in abeyance pending completion of the State law proceedings in State Court. This motion should be granted for the reasons set forth below and in plaintiffs' request for a conference, filed July 21, 2021.

**STATEMENT OF THE CASE**

The nature of the case is set forth in detail in the Emergency Motion for Partial Summary Judgment filed with the State Court on June 16, 2021. That Motion was pending before the State Court when this case was removed by the County on July 12, 2021. The County's removal

effectively aborted the hearing on that motion that was scheduled on July 15, 2021, in State Court. That emergency motion sought summary judgment on Counts I, II and IV of the Complaint and declaratory and equitable relief on these Counts, enjoining defendant, Montgomery County ("County"), from enforcing Bill 4-21, the legality of which is challenged in the Verified Complaint filed by plaintiffs on May 28, 2021. That Motion left the Takings Claims of Count III, damages under Count IV and the award of attorney's fees under 42 U.S.C. §1988, to future proceedings.

On April 16, 2021, the County signed into law Bill 4-21, a copy of which is attached to the Verified Complaint as Exhibit A. Bill 4-21 became effective on July 16, 2021. Count I of the Verified Complaint alleges that through the enactment of County ordinance 4-21, the County has exceeded its powers and jurisdiction to criminally regulate the possession and transfer of lawfully owned firearms in a way that is in direct conflict with Article XI–E, § 3 of the Maryland Constitution. Count II of the Verified Complaint alleges that Bill 4-21 is inconsistent with multiple existing Maryland statutes, in violation of Maryland's Express Powers Act, MD Code, Local Government, §10-206(a),(b). Count III of the Verified Complaint alleges that the restrictions enacted by Bill 4-21 violate the Maryland Takings Clause, Article III § 40, and the Due Process Clause of Article 24 of the Maryland Declaration of Rights by depriving plaintiffs of their vested property rights in the personal property regulated by Bill 4-21.

Count IV alleges that the hopelessly vague language adopted by Bill 4-21 violates the Due Process Clause of Article 24 of the Maryland Declaration of Rights and the Due Process Clause of the Fourteenth Amendment. Plaintiffs seek declaratory and injunctive relief on their State Constitutional and statutory law claims. Under the federal vagueness claim set out in Count IV, plaintiffs seek declaratory and equitable relief as well as compensatory damages, and nominal damages under 42 U.S.C. 1983. While the Complaint originally requested punitive damages

against the County, that claim for punitive damages was withdrawn in the July 21, 2021 Letter to this Court requesting a conference. Plaintiffs hereby confirm that withdrawal of any claim for punitive damages. The merits of Counts I, II and IV are addressed in detail in the Emergency Motion for Partial Summary Judgment and that discussion is incorporated herein by reference.

## ARGUMENT

**I.   THIS COURT SHOULD SEVER AND REMAND THE STATE LAW CLAIMS AS THESE CLAIMS PREDOMINATE AND COULD RESOLVE THE CASE WITHOUT REGARD TO THE SOLE FEDERAL CLAIM**

This case was removed solely on the basis of 28 U.S.C. § 1441(a). Under Section 1441(a), an action brought in State court may be removed to federal district court if the federal court would have had original jurisdiction over the action if it had been filed in district court. See *Home Depot U.S.A, Inc. v. Jackson,* 139 S.Ct. 174 (2019). However, as amended in 2011, Section 1441(c) specifically addresses cases, like this case, where a federal claim is joined with state claims that are not otherwise within the original jurisdiction of the district court. In such cases, subsection (c)(1) instructs that "the entire action may be removed," but then provides, in subsection (c)(2), that "the district court shall sever from the action all claims" over which the court would not otherwise have original jurisdiction (State law claims), and further provides that the district court "shall remand the severed claims to the State court from which the action was removed." As the verb "shall" indicates, such severance and remand is mandatory. *See Prolite Bldg. Supply, LLC v. MW Manufacturers, Inc*., 891 F.3d 256, 259 (7th Cir. 2018) ("The federal claim would make the whole suit removable, and § 1441(c)(2) would require the immediate remand of any state-law claim not within the supplemental jurisdiction.").

In this case, this Court has original federal question jurisdiction only over the Fourteenth Amendment, Due Process Clause vagueness claim set forth in Count IV of the Complaint. At most, this Court has supplemental jurisdiction over the four other State claims set forth in Counts I, II, III, and IV only under 28 U.S.C. § 1367(a), which provides that a district court has "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

Assuming *arguendo* that the provisions of Section 1367(a) permit this Court to exercise jurisdiction over all the claims in this case, the fact remains that this Court still possesses discretion to remand the state law claims in this case. Specifically, the supplemental jurisdiction statute also provides in 28 U.S.C. § 1367(c), that:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if-- (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."

Any one ground set forth in Section 1367(c) is sufficient. Plaintiffs request that this Court apply Section 1367(c) and remand all the state law claims to State Court.

In *Hinson v. Norwest Financial South Carolina, Inc.,* 239 F.3d 611 (4th Cir. 2001), the Fourth Circuit held that the discretion accorded by these provisions of Section 1367(c) should be exercised by reference to the principles articulated by the Supreme Court in the pre-Section 1367 decision in *Carnegie-Mellon University v. Cohill*, 484 U.S. 343 (1988), stating that "the principles inherent in supplemental jurisdiction, or pendant jurisdiction, as articulated by *Carnegie-Mellon* continue to apply." *Hinson*, 239 F.3d at 615. *Carnegie-Mellon*, in turn, states that "a remand may

best promote the values of economy, convenience, fairness, and comity," and that "litigants and States have an interest in the prompt and efficient resolution of controversies based on state law." 484 U.S. at 353. Under *Cohill*, as applied in *Hinson*, this Court must therefore determine whether the values of "economy, convenience, fairness and comity" suggest that a remand of the state claim is appropriate. See also *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) (explaining that "[t]he doctrine of supplemental jurisdiction 'thus is a doctrine of flexibility designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values'" (quoting *Cohill*, 484 U.S. at 350). As explained below, all these "values" heavily favor a remand of the state claims.

The first two items in the list of considerations set out in Section 1367(c) are especially relevant here. First, the Counts I and II present novel and complex state law claims that predominate all other claims. As detailed in the Supporting Memorandum In Support of Partial Summary Judgment ("Supporting Mem.") (at 7), under Article XI-A of the Maryland Constitution the County is empowered to enact only "local laws." Article XI–E, § 6, of the Maryland Constitution similarly provides that "[a]ll charter provisions, or amendments thereto, adopted under the provisions of this Article, shall be subject to all applicable laws enacted by the General Assembly. Under Maryland law, a general law "deals with the general public welfare, a subject which is of significant interest not just to any one county, but rather to more than one geographical subdivision, or even to the entire state." *Steimel v. Board*, 278 Md. 1, 5, 357 A.2d 386 (1976). Thus, "some statutes, local in form, have been held to be general laws, since they affect the interest of the whole state." *Cole v. Secretary of State*, 249 Md. 425, 434, 240 A.2d 272 (1968). Similarly, "[a] law may be local in the sense that it operates only within a limited area, but general in so far as it affects the rights of persons without the area to carry on a business or to do the work incident

to a trade, profession, or other calling within the area." *Dasch v. Jackson*, 170 Md. 251, 261, 183 A. 534 (1936). For the reasons set out in the Supporting Memorandum, Bill 4-21 easily qualifies as a "general law" and is thus *ultra vires* in its totality. See Supporting Mem. at 31-35.

Similarly, as alleged in Count II, under the Maryland Express Powers Act, MD Code, Local Government, §10-206, Montgomery County laws must be "not inconsistent with State law" and the County is barred from enacting laws that are "preempted by or in conflict with public general law." The Supporting Memorandum details the numerous ways in which Bill 4-21 conflicts with Maryland law, including conflicting with no fewer than *five* express firearms preemption statutes, one of which was enacted into law as recently as March of 2021 by the Maryland General Assembly. See MD Code, Public Safety, § 5-207(a) (enacted in 2021 and expressly preempting a County from regulating "the transfer of a rifle or shotgun"); MD Code, Public Safety, § 5-133(a) (amended in 2003 and expressly preempting a County from regulating "the possession of a regulated firearm"); MD Code, Public Safety, § 5-134(a) (amended in 2003 and expressly preempting a County from regulating "the transfer of a regulated firearm"); MD Code, Public Safety, § 5-104 (amended in 2003 and expressly preempting a County from regulating the "sale of a regulated firearm"); 1972 Session Laws of Maryland, ch. 13, § 6 (expressly preempting "the right of political subdivisions" to regulate "the wearing, carrying, or transporting of handguns") (available at https://bit.ly/3ix81MV).

There are no exceptions to these specific preemption provisions. Maryland law makes clear that these specific provisions are controlling. See, e.g., *Harvey v. Marshall*, 158 Md.App. 355, 365, 857 A.2d 529 (2004) ("'where two enactments—one general, the other specific—appear to cover the same subject, the specific enactment applies'"), quoting *Department of Public Safety and Correctional Services v. Beard*, 142 Md.App. 283, 302, 790 A.2d 57 (2002). See Supporting

Mem. at 14-18. Yet, as stated in its July 19, 2021 Letter to this Court, the County's position is that none of these other statutory provisions matter because MD Code, Criminal Law 4-209(b) (enacted in 1985 and amended in 2002) gives the County authorization to enact Bill 4-21 without regard to these other, more specific and later enacted or amended provisions of State law.[1] In short, according to the County, Section 4-209(b) trumps all these other express preemption provisions, even though Section 4-209 is not even mentioned in any of these statutes.

The issue thus squarely presented by Counts I and II is whether Section 4-209(b) should be interpreted broadly so as to negate all other provisions of State law. In plaintiffs' view, such an interpretation would literally swallow the broad preemption provisions of Section 4-209(a) and render nugatory the General Assembly's enactment of specific preemption provisions as well as numerous other firearm regulatory provisions that comprehensively regulate the possession, transport, sale and transfer of firearms throughout Maryland, including among Maryland and Federal Firearms Licensed dealers, such as plaintiff Engage. See Supporting Mem. at 8-9.

---

[1] Section 4-209 provides in relevant part:

> a) Except as otherwise provided in this section, the State preempts the right of a county, municipal corporation, or special taxing district to regulate the purchase, sale, taxation, transfer, manufacture, repair, ownership, possession, and transportation of:
> (1) a handgun, rifle, or shotgun; and
> (2) ammunition for and components of a handgun, rifle, or shotgun.
> Exceptions
> (b)(1) A county, municipal corporation, or special taxing district may regulate the purchase, sale, transfer, ownership, possession, and transportation of the items listed in subsection (a) of this section:
> (i) with respect to minors;
> (ii) with respect to law enforcement officials of the subdivision; and
> (iii) except as provided in paragraph (2) of this subsection, within 100 yards of or in a park, church, school, public building, and other place of public assembly.

By any measure, this question presents a novel and very important issue of State law. As far as we know, no County has ever asserted such a breathtakingly broad interpretation of Section 4-209(b). In our view, the County's position is little more than an unprecedented power grab. As this Court has previously stated, Maryland law makes clear that "the Legislature" has "occup[ied] virtually the entire field of weapons and ammunition regulation," holding further that there can be no doubt that "the exceptions to otherwise blanket preemption [in Section 4-209(a)] are narrow and strictly construable." *Mora v. City of Gaithersburg*, 462 F.Supp.2d 675, 689 (D.Md. 2006), *modified on other grounds*, 519 F.3d 216 (4th Cir. 2008). See also 76 Op. Md. Atty Gen. 240, 244-46 (December 17, 1991) (discussing the history of Section 4-209). But, in the final analysis, only Maryland State Courts can resolve this issue definitively. The importance of the issue and the need for controlling precedent is apparent.

Count I and Count II are the principal focus of the Complaint. Either one of these two claims is enough to resolve this case. These claims predominate over all other claims, including the vagueness claims in Count IV. Count III raises a State constitutional "Takings" claim, but that claim will obviously not resolve the case. All these State claims are analytically distinct from the vagueness challenge. For example, the vagueness claim centers on the Bill 4-21's amendment to Chapter 57 of the County Code so to provide that: "In or within 100 yards of a place of public assembly, a person must not: (1) sell, transfer, possess, or transport a ghost gun, undetectable gun, handgun, rifle or shotgun, or ammunition or major component for these firearms." Bill 4-21 then defines a "place of public assembly" to include "a place where the public may assemble, whether the place is publicly or privately owned." Plaintiffs argue that, as thus defined, a place of public assembly literally may include every sidewalk and every business and tens of thousands of homes in the County as such locales are either a place of public assembly or are within 100 yards of such

a place (*viz*., a public sidewalk). Basically, as defined by the County, a "place of public assembly," is not only hopelessly vague, but also so broad as to invite arbitrary and discrimination enforcement at the whim and caprice of law enforcement personnel. See Supporting Mem. at 39-40.

Yet, the vagueness challenge will not resolve this case as other provisions of Bill 4-21 are not vague in the slightest, but nonetheless regulate conduct in a manner directly contrary to State law and thus are invalid under Count II. For example, Bill 4-21 now quite clearly requires a business owner, such as the owners of plaintiff Engage and plaintiff ICE Firearms, and their authorized employees, to procure a carry permit from the Maryland State Police in order to possess a handgun within the confines of the business. Yet, as noted, Maryland law expressly preempts County regulation of the wear, transport and carry of handguns, see *Montgomery County v. Atlantic Guns, Inc.*, 302 Md. 540, 489 A.2d 1114 (1985), and State law, MD Code, Criminal Law, 4-203(b)(6),(7), expressly permits a business owner and authorized employees to carry a handgun within the confines of the business *without* possessing a carry permit.

Similarly, Bill 4-21 expressly bans the mere possession of a unserialized receiver, or a "ghost gun" in the home, where the constitutional rights of the plaintiffs under the Second Amendment are at their zenith under *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. Chicago*, 561 U.S. 742, 750 (2010). Bill 4-21 is so extreme that it bans the mere possession of components of a "ghost gun," including an ordinary barrel of a long gun or slide of handgun, components which are not serialized under federal or state law and which are parts of serialized firearms available for purchase from any Federal Firearms Licensee dealer, such as plaintiff Engage. See Supporting Mem. at 33. Yet, existing Maryland law, MD Code, Criminal Law, 4-203(b)(6), expressly protects the right of otherwise qualified persons to possess handguns in the home and purposefully does not regulate possession of long guns, including components of

these firearms. Other examples of such express conflicts or inconsistencies abound. See Supporting Mem. at 21-30. A ruling on Count II of the Complaint would dispose of all these claims. A ruling on the vagueness claims could not. This Court lacks any expertise on these State law claims. Retaining jurisdiction by this Court would effectively deny the State Courts of Maryland of an opportunity to provide clarity on these fundamentally important issues of State and County regulation of firearms. A remand is required for comity reasons alone.

Allowing the State Courts to decide the Article 24 vagueness claim separately from the Fourteenth Amendment claim would also accord recognition to the reality that Maryland's Due Process Clause is not necessarily identical in scope to the Due Process Clause of the Fourteenth Amendment. See, e.g., *Dua v. Comcast Cable of Md., Inc.*, 370 Md. 604, 621, 805 A.2d 1061 (2002) ("[C]ases interpreting and applying a federal constitutional provision are only persuasive authority [for Maryland courts] with respect to the similar Maryland provision."); *Murphy v. Edmonds*, 325 Md. 342, 354–55, 601 A.2d 102 (1992) (stating that state and federal provisions *in pari materia* are "obviously independent and capable of divergent application."). As this Court has recognized "a Maryland court has 'greater latitude' than this Court to decline to follow the Supreme Court's interpretation of the Maryland Declaration of Rights." *Jones v. Prince George's County,* 2005 WL 1074353 at *8-9 (D.Md. 2005), quoting *Green v. Zendrian*, 916 F.Supp. 493, 498 n.4 (D.Md. 1996).

Indeed, there are subtle but important differences between the approach adopted by the Maryland courts in addressing vagueness claims under Article 24 of the Maryland Declaration of Rights and the general approach to vagueness challenges under federal law. Under the Due Process Clause of the Fifth and the Fourteenth Amendments, a penal statute must "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited

and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). Under Article 24, the Maryland Court of Appeals has not only embraced the rule that "[t]he void-for vagueness doctrine as applied to the analysis of penal statutes requires that the statute be 'sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties,'" the Court of Appeals has gone further to hold that "[u]nder Article 24, a statute must provide "legally fixed standards and adequate guidelines for police ... and others whose obligation it is to enforce, apply, and administer [it]" and "must eschew arbitrary enforcement in addition to being intelligible to the reasonable person." *Galloway v. State*, 365 Md. 599, 614-15, 781 A.2d 851 (2001).

Under Maryland's vagueness test, a statute must be struck down if it is "'so broad as to be susceptible to irrational and selective patterns of enforcement.'" (Id. at 616, quoting *Bowers v. State*, 283 Md. 115, 122, 389 A.2d 341 (1978)). Here, plaintiffs argue that Bill 4-21 is unconstitutional under Article 24 both because it fails to give notice of what is prohibited but also because it is so "broad" as to be "susceptible" to "selective enforcement," including selective enforcement against plaintiffs who have had the audacity to challenge Bill 4-21. In its July 19, 2021 Letter, the County relies on federal case law in asserting that plaintiffs may not bring a pre-enforcement suit to challenge such a broad statute. Yet, Maryland law fully endorses pre-enforcement challenges to vague statutes. See *Pizza di Joey, LLC v. Mayor of Baltimore*, 470 Md. 308, 343-44, 235 A.3d 873 (2020) (collecting cases). All a plaintiff need show in order to mount a pre-enforcement challenge on a vagueness claim is that he or she is "'aggrieved, which means whether a plaintiff has an interest such that he or she is personally and specifically affected in a way different from the public generally.'" Id. at 343, quoting *Kendall v. Howard Cty.*, 431 Md. 590, 603, 66 A.3d 684 (2013). Plaintiffs here easily satisfy that requirement. In contrast, the

County asserts that plaintiffs must show an active threat of enforcement in order to mount a pre-enforcement challenge. As *Pizza di Joey* makes clear, no such showing is remotely necessary under Maryland law.

This Court's decision in *Jones* is illustrative of these principles in the remand context. The Court in *Jones* ordered a remand of an Article 24 claim alleging that "the minor child and parents state constitutional rights were violated" by a County in that case. *Jones*, 2005 WL 1074353 at *8. Here, plaintiffs have similarly argued that Bill 4-21's implementation of Section 4-209(b) to regulate the conduct of adults in the mere *presence* of minors violates "the fundamental right" of parents to direct and control the upbringing of their children, a right strongly recognized by Maryland under Article 24. See *Frase v. Barnhart*, 379 Md. 100, 124, 840 A.2d 114 (2003); Supporting Mem. at 28-29. While federal law also recognizes the rights of parents, see *Troxel v. Granville*, 530 U.S. 57, 64 (2000) (plurality opinion), the Maryland Court of Appeals applied Article 24 in *Koshko v. Haining,* 398 Md. 404, 422-27, 921 A.2d 171 (2007), to strike down a County's actions and hold that the underlying statute must be narrowly construed so as to avoid this constitutional issue. Relying on *Koshko*, plaintiffs here argue that Section 4-209(b) must be narrowly construed to protect the rights of parents to direct and the control the upbringing of their children. See Supporting Mem. at 28-29. The *Jones* Court concluded that "notions of comity support allowing novel and complex issues of state constitutional law to be decided by Maryland state courts." (2005 WL 1074353 at *9). The same conclusion applies here to the Article 24 arguments made by plaintiffs with respect to their right to control the upbringing of their children.

Standing is likewise a vastly different inquiry under State law than it is under Article III in federal courts. Again, in order to have standing under Maryland law, a plaintiff need only establish that he or she has suffered "some kind of special damage from such wrong differing in character

and kind from that suffered by the general public." *Voters Organized for the Integrity of City Elections v. Baltimore City Elections Bd.*, 451 Md. 377, 396, 152 A.3d 827 (2017). That inquiry is not controlled by Article III considerations. Here, the County has announced, in its July 19, 2021 letter to the Court, that it wishes to challenge the Article III standing of the plaintiffs. Effectively, the County removed the case so that it could raise a standing argument not available to it in State Court. Yet, it would be a serious miscarriage of justice to throw plaintiffs out of court under Article III when plaintiffs did not bring this case in federal court and where plaintiffs would undoubtedly have standing to pursue the merits of their state law claims in State Court where the suit was originally brought. Under *Hinson* and *Cohill*, there is nothing remotely "fair" about that result. *Cohill*, 484 U.S. at 353. A remand of the state law claims would thus avoid needless litigation over standing questions.

As also stressed in *Jones*, "the Supreme Court has cautioned federal courts that 'needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer footed reading of applicable law.'" 2005 WL 1074353 at *9, quoting *United States v. Gibbs*, 383 U.S. 715, 726 (1966). See also *Knick v. Township of Scott*, 139 S.Ct. 2162, 2188 (2019) (Kagan, J., dissenting) ("federal courts should refrain whenever possible from deciding novel or difficult state-law questions"); *Elkins v. Moreno*, 435 U.S. 647 (1978) (*sua sponte* certifying a state law question to the Maryland Court of Appeals, stating "it is obviously desirable that questions of law which . . . are both intensely local and immensely important to a wide spectrum of state government activities be decided in the first instance by state courts"). The *Jones* court concluded that "[b]ecause a complex and novel issue of state law is involved in interpreting the Maryland Declaration of Rights, notions of comity restrain this Court

from needlessly deciding issues of state law that are rightfully in the province of state courts." (Id.). The same result should obtain here.

Indeed, any decision by this Court would not establish any binding precedent and thus would not serve plaintiffs' objective of establishing strong State precedent on the fundamental State law questions presented. *Pope v. State,* 284 Md. 309, 320 n.10, 396 A.2d 1054 (1979). A central objective of this suit is to establish binding precedent, which the removal has made impossible. See *Mullaney v. Wilbur*, 421 U.S. 684, 691(1975) (noting that State courts are the "ultimate expositors of state law"). As a matter of comity, this Court should respect the right of the Maryland courts to consider and decide these important issues. Thus in *Joyner v. A.C. & R. Insulation Co*., 2013 WL 877125, at *10 (D. Md. 2013), *aff'd sub nom. Wood v. Crane Co.*, 764 F.3d 316 (4th Cir. 2014), *cert. denied,* 574 U.S. 1156 (2015), this Court found that although the federal government had a strong interest in litigating federal claims in federal courts, "[b]y the same token, though, states have a strong interest in adjudicating issues of state law in *their* own courts." 2013 WL 877125 at *10 (emphasis in original), citing *Levin v. Commerce Energy, Inc*., 560 U.S. 413, 422 (2010) ("The comity doctrine counsels lower federal courts to resist engagement in certain cases falling within their jurisdiction."). Applying these principles, the Court in *Joyner* severed the federal claims from the state law claims and remanded the state law claims, ruling that "[t]his court must respect Maryland's prerogative to apply its own laws, as well as [the plaintiff's] desire to litigate issues of Maryland law in the Maryland state courts." The Court in *Joyner* retained jurisdiction over the federal claims. See also *Thomas-Fish v. Ford Motor Co*., 2017 WL 11451237 at *3 (D.Md. 2017) (following *Joyner*).

In sum, severance and remand is required because Counts I and II present novel and important state law claims that predominate over the Fourteenth Amendment vagueness claim set

out in Count IV. Again, Count I alleges that Bill 4-21 is not a "local law" within the meaning of Maryland's Constitution and Count II alleges that Bill 4-21is contrary to the Maryland Express Powers Act. A decision by a State Court on either one of these state claims would decide the entire case as a favorable decision would invalidate Bill 4-21 *in toto.* See Supporting Mem. at 7-35. The County has no federal defenses to either of these claims, or for that matter, to any of the State law claims. As the County's July 19, 2021 Letter indicates, the County merely disagrees with the arguments advanced in the Supporting Memorandum. Here, there is no doubt that the State claims in Counts I and II predominate and that is, alone, sufficient reason for a remand under Section 1367(c). See, e.g., *Oliver v. Cambell McCormick, Inc.*, 2016 WL 3878492 at 3 (D.Md. 2016), *appeal dismissed,* 874 F.3d 390 (4th Cir. 2017) ("Severance and remand is appropriate here because the state law claims substantially predominate over the federal contractor defense that gives this court original jurisdiction.").

## II.     THIS COURT SHOULD HOLD IN ABEYANCE THE SOLE REMAINING FEDERAL CLAIM

Plaintiffs respectfully suggest that the appropriate approach is to hold the federal claim in abeyance while remanding all the state law claims under Section 1367(c). If plaintiffs prevail in their State law claims and achieve complete relief in State Court, there is a likelihood that plaintiffs would simply voluntarily dismiss the federal claim without further ado, thereby eliminating the need for this Court to decide the claim altogether. Cf. *Walsh v. Mitchell,* 427 F. App'x 282, 283 (4th Cir. 2011) (affirming remand because "[i]n the interest of avoiding '[n]eedless decisions of state law,' the Supreme Court has stated that, when 'federal claims are dismissed before trial ... state claims should be dismissed as well'") (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). At a minimum, a resolution of the state law claims will assist in the resolution of the federal claim remaining before this Court as the Court will have the benefit of an

authoritative State Court decision construing and applying the complex web of State statutes at issue in this case.

There is no doubt that this Court has the inherent power to control its own docket and thus may hold a case in abeyance indefinitely pending proceedings in other forums. As the Supreme Court has stated, "'[t]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Air Line Pilots Ass'n v. Miller*, 523 U.S. 866, 879 n.6 (1998), quoting *Landis v. North American Co.*, 299 U.S. 248, 254–55 (1936). See also *Sherman v. United States*, 801 F.2d 1133, 1135 (9th Cir. 1986) ("district courts have "broad inherent powers to manage their own affairs so as to achieve the orderly and expeditious disposition of cases"). Indeed, such authority is found in the All Writs Act, 28 U.S.C. 1651(a), under which federal courts have the authority "to issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." *Nken v. Holder*, 556 U.S. 418, 426 (2009). See *Rice v. Astrue*, 2010 WL 367474 (D.S.C. 2010) ("This Court possesses the authority to hold a motion in abeyance if resolution of a pending matter will help clarify the current issues or make currently disputed issues moot."), citing *Rhines v. Weber*, 544 U.S. 269, 274 (2005) (noting that "the doctrine of comity" dictates that "one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter") (internal quotes and citation omitted).

*Oliver v. Cambell McCormick, Inc.*, 2016 WL 3878492 (D.Md. 2016), *appeal dismissed*, 874 F.3d 390 (4th Cir. 2017), is on point. There, this Court (the Honorable Judge Blake, presiding) applied Section 1367(c) to sever and remand state law claims that had been removed to federal

court under 28 U.S.C. § 1442 (the federal officer removal statute), finding that "[s]everance and remand is appropriate here because the state law claims substantially predominate over the federal contractor defense that gives this court original jurisdiction." 2016 WL 3878492 at *3. The court nonetheless "retained jurisdiction over and stayed [] third-party claims" involving a federal contractor defense pending a resolution of the remanded state law claims in state court. (874 F.3d at 393). This same approach of severing and remanding state law claims but retaining jurisdiction over the claims involving a federal claim was also followed by Judge Blake in *Joyner v. A.C. & R. Insulation Co.*, 2013 WL 877125, at *10 (D. Md. 2013), *aff'd sub nom. Wood v. Crane Co.*, 764 F.3d 316 (4th Cir. 2014), *cert. denied*, 574 U.S. 1156 (2015). See *Wood*, 764 F.3d at 319 ("the court remanded the claims against the other defendants back to Maryland state court, but retained both claims" against the one party who had asserted a federal contractor defense).

There is no principled difference between *Oliver* and *Joyner* and this case in terms of the scope of the Court's discretion to remand state law claims and retain jurisdiction over claims involving federal questions that would otherwise fall within the Court's original jurisdiction. As in *Oliver* and *Joyner*, the state law claims predominate in this case. In *Oliver* and *Joyner*, the district court retained jurisdiction over the sole claim that gave rise to removal jurisdiction while severing and remanding the state law claims. In *Joyner*, the Fourth Circuit affirmed Judge Blake's decision in all respects. Plaintiffs here are seeking exactly the same approach. This Court should follow Judge Blake's lead in this case. Principles of comity, fairness to plaintiffs and respect for plaintiffs' desire to litigate these state law claims in State Court require nothing less.

## CONCLUSION

For the foregoing reasons, the motion to remand all the State law claims and to hold the federal claim in abeyance should be granted. Plaintiffs respectfully request a speedy resolution of this motion.

Respectfully submitted,

*/s/ Mark W. Pennak*

MARK W. PENNAK
Maryland Shall Issue, Inc.
9613 Harford Rd.
Ste C #1015
Baltimore, MD 21234-21502
mpennak@marylandshallissue.org
Phone: (301) 873-3671
MD Atty No. 1905150005

*Counsel for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MARYLAND SHALL ISSUE, INC., *et al.*, | ) |
| *Plaintiffs*, | ) ) ) |
| v. | ) Case No. 8:21-cv-01736-TDC ) |
| MONTGOMERY COUNTY, MD., | ) ) |
| *Defendant*. | ) |

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on August 4, 2021, the forgoing "PLAINTIFFS' MOTION TO SEVER AND TO REMAND ALL STATE LAW CLAIMS REMOVED BY THE DEFENDANT AND TO HOLD IN ABEYANCE THE SOLE REMAINING FEDERAL CLAIM UNTIL COMPLETION OF STATE COURT PROCEEDINGS" was served on opposing counsel listed below via ECF service:

Edward B. Lattner
101 Monroe St.
Rockville, MD 20850

Patricia L. Kane
101 Monroe St.
Rockville, MD 20850

Sean C. O'Hara
101 Monroe St.
Rockville, MD 20850

*/s/ Mark W. Pennak*
_____
MARK W. PENNAK
Maryland Shall Issue, Inc.
9613 Harford Rd, Ste, C #1015
Baltimore, MD 21234-21502
mpennak@marylandshallissue.org
Phone: (301) 873-3671
MD Atty No. 1905150005

Dated: August 4, 2021