IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MARYLAND SHALL ISSUE, INC., *et al.*, | ) |
| *Plaintiffs*, | ) |
| v. | ) Case No. 8:21-cv-01736-TDC (Lead) |
| | ) Case No. 8:22-cv-01967-DLB |
| MONTGOMERY COUNTY, MD., | ) |
| *Defendant*. | ) |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO REMAND
COUNTS I, II & III TO STATE COURT AND HOLD THE FEDERAL CLAIMS IN
ABEYANCE**

Plaintiffs respectfully submit this Opposition To Defendant's Motion To Remand Counts I, II & III of the First Amended Complaint To State Court, filed August 8, 2022. Plaintiffs likewise oppose defendant's motion to hold the federal claims in abeyance, while State court proceedings are adjudicated in State court. Defendant's remand and abeyance motion should be denied.

**ARGUMENT**

**I.    BACKGROUND**

As defendant Montgomery County ("the County") notes, this case has been before this Court before on the County's prior removal, in July 2021, of all the claims in the first Complaint filed in this case. By subsequent order and opinion entered February 7, 2022 ("Remand Op."), and on plaintiffs' motion for a remand, this Court remanded Counts I, II, and III of the Complaint and severed and held in abeyance the state and federal vagueness claims in Count IV of the Complaint.[1]

---

[1] Count I alleged that Bill 4-21 was not a "local law" and thus barred by the Maryland Constitution. Count II alleged that Bill 4-21 violated Express Powers Act, MD Code Local Gov't § 10-206.

The Court reasoned that the State law claims in Counts I, II, and III "substantially predominate" over the federal and State vagueness challenge in Count IV, involved novel or complex issues of State law, and that principles of economy, fairness and comity required a remand of these State law Counts, as sought by plaintiffs. In contrast, the Court held that the federal vagueness claim in Count IV "is limited in scope," (Remand Op. at 6), and that the scope of relief under Count IV would be more limited. Id. at 7-8. The parties on remand then proceeded to file cross-motions for summary judgment in State court on Counts I, II and III and those motions were heard orally on July 19, 2022. Shortly after argument, and in response to contentions raised by the County at argument, plaintiffs filed an Amended Complaint expressly raising a Second Amendment claim in a new Count V. The County then removed the entire Amended Complaint to this Court. The State court denied the cross-motions for summary judgment as moot in light of the Amended Complaint.

## II. *BRUEN* CHANGED THE LANDSCAPE

### A. The Decision In *Bruen*

What changed since this Court's February 7, 2022 removal decision was the June 23, 2022, decision of the Supreme Court in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). There, the Court held that Second Amendment right of armed self-defense fully extends outside the home and struck down as unconstitutional New York's statute that conditioned the issuance of carry permits on a showing of "good cause." *Bruen* held that the Second Amendment right to bear arms means "a State may not prevent law-abiding citizens from publicly

---

Count III alleged that Bill 4-21 was a "taking" under the Maryland Constitution and Count IV alleged that Bill 4-21 was unconstitutionally vague under the federal and State Constitutions.

carrying handguns because they have not demonstrated a special need for self-defense." (142 S.Ct. at 2135 n.8).

In so holding, the Supreme Court also expressly abrogated means-ends, intermediate scrutiny previously used by the lower courts in adjudicating Second Amendment claims and established a broad analytical framework for the adjudication of such claims. *Bruen*, 142 S.Ct. at 2126-27 & n.4. Under that framework, where a statute regulates conduct falling within the text of the Second Amendment, then "the government may not simply posit that the regulation promotes an important interest," but rather "the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 142 S.Ct. at 2126. *Bruen* has thus abrogated the 2011 decision of the Maryland Court of Appeals which held that the Second Amendment did not even apply outside the home. *Williams v. State*, 417 Md. 479, 496, 10 A.3d 1167 (2011). County Code Section 57-11(a), as amended by Bill 4-21, is almost exclusively concerned with possession, transport, transfer and sales of all types of firearms (including components) taking place outside the home.

      B.      ***Bruen* Counsels Against Removal And Abeyance**

           1.      **The Plaintiffs will likely prevail on the Second Amendment claim**

*Bruen* holds that governments may regulate the public possession of firearms at "legislative assemblies, polling places, and courthouses" and notes that governments may also regulate firearms "in" schools and government buildings. *Bruen*, 142 S.Ct. at 2133, citing *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008). *Bruen* then states that, in certain limited circumstances, "courts can use analogies to those historical regulations of 'sensitive places' to determine that modern regulations prohibiting the carry of firearms in new and analogous sensitive

places are constitutionally permissible." (Id.). That inquiry is controlled by "two metrics, how and why the regulations burden a law-abiding citizen's right to armed self-defense." (Id.). Applying that approach, the Court rejected New York's "attempt to characterize New York's proper-cause requirement for carry permits as "a 'sensitive-place' law," ruling that "expanding the category of 'sensitive places' simply to all places of public congregation that are not isolated from law enforcement defines the category of 'sensitive places' far too broadly." *Bruen*, 142 S.Ct. at 2134. As the Court explained, such a rule "would eviscerate the general right to publically carry arms for self-defense." (Id.). "Put simply, there is no historical basis for New York to effectively declare the island of Manhattan a 'sensitive place' simply because it is crowded and protected generally by the New York City Police Department." (Id.).

Here, the County admits that its authority to enact Bill 4-21 is completely dependent on limited exceptions, found in MD Code, Criminal Law, § 4-209(b)(1), to the absolute preemption of local regulation of all things firearms-related otherwise found in subsection 4-209(a). Subsection 4-209(b)(1)(ii) purports to allow the County to regulate with respect to minors and subsection 4-209(b)(1)(iii) purports to allow the County to regulate "within 100 yards of or in a park, church, school, public building, and other place of public assembly." Counts I and II of the Complaint allege that the County's implementation of Section 4-209(b)(1) is contrary to Maryland's Constitution and inconsistent and in conflict with State law and is thus unauthorized.

Those State law questions are effectively rendered irrelevant by the decision in *Bruen* because, regardless of the scope of the authorization accorded by Section 4-209(b)(1), State and local law must yield to the Second Amendment. *District of Columbia v. Heller,* 554 U.S. 570, 636 (2008) ("the enshrinement of constitutional rights necessarily takes certain policy choices off the table"). Under *Bruen*, the County presumptively may regulate firearms *only* in the five, very

specific "sensitive areas" expressly identified in *Bruen*, *viz.,* courthouses, schools, legislative assemblies, government buildings and polling places. *Bruen*, 142 S.Ct. at 2133. Regulations banning firearms beyond those five areas are presumptively unconstitutional. (Id.). Under *Bruen*, the burden of proof shifts to the County to show "a well-established and representative historical *analogue,*" circa 1791, if it seeks to justify banning firearms in other locations. Id. Again, that "analogue" determination is controlled by the "two metrics" identified by the Court, *viz*., "how and why the regulations burden a law-abiding citizen's right to armed self-defense." Id.

While the vagueness of the County's law challenged here makes it difficult to precisely identify *every* location Section 57-11(a) regulates (Count IV), there can be no reasonable dispute that the County law facially sweeps far more broadly than the very limited places identified in *Bruen*. As amended by Bill 4-21, County Code § 57-11(a) provides: "In or within 100 yards of *a place of public assembly*, a person must not: (1) *sell, transfer, possess, or transport a ghost gun, undetectable gun, handgun, rifle, or shotgun, or ammunition or major component for these firearms*." (Emphasis added). Section 57-1 of the Code defines "place of public assembly" to mean: "*a place where the public may assemble,* whether the place is *publicly or privately owned*, including a park; place of worship; school; library; recreational facility; hospital; community health center; long-term facility; or multipurpose exhibition facility, such as a fairgrounds or conference center. A place of public assembly includes all property associated with the place, such as a parking lot or grounds of a building." (Emphasis added). Given that vast sweep of that definition of "place of public assembly," it is hard to imagine **any** place in Montgomery County that is **not** at or within a 100-yards of a "place of public assembly" and thus subject to the bans imposed by Section 57-11(a). The conflict with *Bruen* could hardly be more direct. See *Bruen*, 142 S.Ct. at 2134 (rejecting New York's "attempt to characterize New York's proper-cause

requirement as a 'sensitive-place' law," ruling that "expanding the category of 'sensitive places' simply to all places of public congregation that are not isolated from law enforcement defines the category of 'sensitive places' far too broadly").

These portions of *Bruen* addressing "sensitive places" may not be dismissed as mere dicta, as suggested by the County during the Case Management Conference. See Bryan A. Garner, et al., *The Law of Judicial Precedent* 46 (2016) (a statement is dictum if it is "unnecessary to the decision in the case"). As noted above, the "sensitive places" reasoning in *Bruen* was central to the Court's rejection of New York's contention that the challenged statute was merely a permissible "sensitive place" regulation. The Court's reasoning thus cannot be dicta. See *Carter v. Bogan,* 900 F.3d 754, 774 n.9 (6th Cir. 2018) ("we find no basis in the case law for Carter's assertion that the Supreme Court's holdings are limited to the issues on which certiorari is granted."). In any event, Supreme Court "dicta" is effectively controlling in the lower courts. See *Hengle v. Treppa*, 19 F.4 324, 347 (4th Cir. 2021) (a court is "obliged" to give "great weight to Supreme Court dicta," that the court affords "substantial, if not controlling deference" to Supreme Court dicta, and that "we cannot simply override a legal pronouncement endorsed . . . by a majority of the Supreme Court") (citations and internal quotes omitted). The County cannot wiggle out of *Bruen*.

### 2. The Second Amendment claim predominates

As should be apparent, the Second Amendment, as construed in *Bruen*, requires the facial invalidation of Section 57-11(a). Such an order would encompass all of the relief available under the State law claims in Counts I and II of the Amended Complaint. What would remain would be (1) that part of Bill 4-21 amending County Code Section 57-7, with respect to minors and "ghost guns," (2) the claim for damages and equitable relief under Count III (alleging a Taking under

State law), (3) and the vagueness challenges under the federal and State Constitutions in Count IV. As this Court has already recognized in its prior remand order, these limited aspects do not "substantially predominate." Remand Op. at 5-8.

The term "ghost gun" as used in Section 57-7 is defined by County Code Section 57-1 to include any "unfinished frame or receiver," and that term is fatally vague under Count IV. Amended Complaint ¶ 69. *See Polymer80, Inc. v. Sisolak*, No. 21-CV-00690 (3d Jud. District for Co. of Lyon, December 10, 2021), *appeal dismissed sub nom.*, *Sisolak v. Polymer80, Inc.,* 502 P.3d 184 (Nev. 2022) (invalidating Nevada's "ghost gun" law on vagueness grounds because it failed to define "unfinished" frame or receiver). Plaintiffs will thus likely prevail on that claim. See *Kolender v. Lawson*, 461 U.S. 352, 357 (1983) (a penal statute must "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement"); *Galloway v. State*, 365 Md. 599, 614-15, 781 A.2d 851 (2001) (same). See also *United States v. Hasson*, 26 F.4th 610, 617-18 (4th Cir. 2022) (noting Supreme Court precedent stating that "our holdings squarely contradict the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp.'"), quoting *Johnson v. United States*, 576 U.S. 591, 602 (2015); *id*., 26 F.4th at 618 discussing *Sessions v. Dimaya*, 138 S.Ct. 1204, 1214 n.3 (2018) (same).

We noted that the County's lack of a definition of the term "unfinished frame or receiver" is in stark contrast to the definition supplied by the "ghost gun" State law enacted by the Maryland General Assembly this last Session. See Plaintiffs' Supplemental Memorandum at 5 (filed April 14, 2022). That legislation (HB 425 and SB 387) is codified at subtitle 7 of Title 5 of the Public Safety Article of the Maryland Code and went into effect June 1, 2022. Unlike Bill 4-21, that

legislation actually defines an "unfinished frame or receiver," MD Code, Public Safety, § 5-701(h), and then further provides that its provisions are to be "construed in a manner that is consistent" with new federal ATF regulations that further define "frame or receiver." 2022 Maryland Laws Ch. 18 § 3 (HB 425); 2022 Maryland Laws, Ch. 19, § 3 (SB 387).

Bill 4-21's regulation of "ghost guns" is in direct conflict with SB 387 and HB 425 and would fail under Counts I and II. See P. Supp. Memo. on SB 387 and HB 425 (filed April 14, 2022), and P. Memo. in Opposition to Defendant's Submission (filed May 16, 2022). But again, the relief available under these Counts is encompassed within the relief available under the Second Amendment claim. That is because Section 57-11(a) is the sole enforcement mechanism for the County's bans (including its bans on "ghost guns") with respect to everyone but minors, who are separately regulated by Section 57-7. As noted, the "ghost gun" provisions in Section 57-7 fail as unconstitutionally vague under Count IV. In short, relief under the two federal claims could encompass all the relief available in this case, except for the Takings claim in Count III.

### 3. Principles of economy, convenience, fairness, and comity preclude the remand and abeyance demanded by the County

As this Court noted in its prior order, remands are governed in part by "principles of economy, convenience, fairness, and comity and whether the party seeking remand is engaged in a manipulative tactic." (Remand Op. at 10). Here, no decision in State court on any of the State law claims can change the reality that the bans imposed by Section 57-11(a) are unconstitutional under *Bruen* and that "ghost gun" provisions of Section 57-7 are unconstitutionally vague under the federal and State Constitutions.

"Fairness" demands immediate resolution of the federal claims in this Court. The County has undeniably manipulated removal to avoid and delay resolution of the Second Amendment

claim. In State court, the County did not deign to respond to plaintiffs' memorandum concerning the impact of *Bruen* on this case (filed July 10, 2022). In that memorandum, plaintiffs argued that *Bruen* meant that Section 4-209(b)(1)(iii) "must be very narrowly construed [effectively rewritten] to save it from being unconstitutional." (Mem. at 2). That "narrow construction" argument had been advanced by plaintiffs throughout this litigation, even prior to *Bruen*. Id. at 3.

In response, the County asserted that the State court should not even consider *Bruen* because there was no Second Amendment claim in the Complaint at that time. See Exh. A (July 19, 2022 Hearing Tr. at 17-18). When plaintiffs responded to that argument by filing the Amended Complaint, the County choose to remove the case to this Court and thus strip the State court of jurisdiction. The County now argues that **this** Court should hold the claim in abeyance and thus indefinitely delay consideration of *Bruen*. Plainly, the County does not want **any** court to address the Second Amendment. The County's attempt to run from the Second Amendment may be understandable, but it is hardly a tactic that this Court should permit. See *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 357 (1988) (a party's manipulative tactics are a factor the district court should consider). The County certainly should not be heard to whine (Def. Motion at 7) about the effort it put into litigating the case in State court after remand. No one forced the County to remove the case or play ostrich with respect to *Bruen*.

More fundamentally, holding Counts IV and V in abeyance over plaintiffs' objection would be an abuse of discretion. The adjudication of federal constitutional rights in federal court cannot be held captive to State court litigation of State law claims, as the County seeks here. The Court has no discretion to refuse to adjudicate a federal claim. See *Mata v. Lynch,* 576 U.S. 143, 150 (2015) ("And when a federal court has jurisdiction, it also has a 'virtually unflagging obligation ... to exercise' that authority.") (citation omitted). Similarly, the Court may not "'surrender

jurisdiction of a federal suit to a state court.'" *Quackenbush v. Allstate Insurance Co*., 517 U.S. 706, 713 (1996), quoting *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 11 n.11 (1983) ("There is an obvious difference between a case in which the plaintiff himself *may choose* not to proceed, and a case in which the district court *refuses to allow* the plaintiff to litigate his claim in federal court.").

Likewise, the Court has no discretion to enter an indefinite stay on a federal claim over a plaintiff's objections in the absence of extraordinary circumstances. In *Landis v. North American Co.,* 299 U.S. 248, 255 (1936), the Supreme Court rejected the same type of arguments advanced by the County here, ruling "the suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward," noting further that the court's discretion would be "abused by a stay of indefinite duration in the absence of a pressing need." In *Williford v. Armstrong World Industries, Inc.*, 715 F.2d 124, 127 (4th Cir. 1983), the court of appeals applied *Landis*, holding "[t]he party seeking a stay must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative." See also *Dependable H'way Exp., Inc. v. Navigators Ins. Co*., 498 F.3d 1059, 1066 (9th Cir. 2007).

Here, the County has made no showing that moving forward on the federal claims would result in any "hardship or inequity" to it (the notion is risible) or asserted that there is some "pressing need" to stay the federal claims. Nor has the County demonstrated that its desperate desire to dodge the Second Amendment "outweighs" the interests of plaintiffs in having the claims promptly adjudicated. "The constitutional right to bear arms in public for self-defense is not 'a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees.'" *Bruen*, 142 S.Ct. at 2156, quoting *McDonald v. City of Chicago*, 561 U.S. 742, 780 (2010) (plurality opinion). The County has no legitimate interest in indefinitely delaying resolution

of plaintiffs' Second Amendment challenge. Holding the federal claims in abeyance would mean that the County's continuing violations of plaintiffs' constitutional rights would likely drag on for years, all to the obvious and severe prejudice of plaintiffs. "The basic guarantees of our Constitution are warrants for the here and now and, unless there is an overwhelmingly compelling reason, they are to be promptly fulfilled." *Watson v. City of Memphis*, 373 U.S. 526, 533 (1963).

Relatedly, this Court would never abstain from deciding a suit alleging a continuing violation of a federal constitutional right where (as here) the resolution of the federal claim would not actually interfere with any then-ongoing State court proceeding. See *Baggett v. Bullitt*, 377 U.S. 360, 375-76 (1964) (holding abstention inappropriate where "[w]e doubt, in the first place, that a construction of the oath provisions, in light of the vagueness challenge, would avoid or fundamentally alter the constitutional issue raised in this litigation."); *United States v. South Carolina*, 720 F.3d 518, 527 (4th Cir. 2013) (*Younger* abstention cannot be justified where doing so "'would leave a party's constitutional rights in limbo while an agency contemplates enforcement but does not undertake it'"), quoting *Telco Commc'ns, Inc. v. Carbaugh*, 885 F.2d 1225, 1229 (4th Cir. 1989), *cert. denied*, 495 U.S. 904 (1990); *Courthouse News Service v. Schaefer*, 2 F.4th 318, 324-25 (4th Cir. 2021) ("The Supreme Court has been explicit that *Younger* abstention is impermissible '[a]bsent any pending proceeding in state tribunals.'"), quoting *Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992). A Second Amendment claim may not be left "in limbo."

Finally, unlike the situation presented in the prior remand, the State court proceedings on State law claims will **not** "obviate the need to litigate the federal claim to completion." Remand Op. at 11. That is because the Second Amendment precludes the types of bans imposed by Section 57-11(a) in the very places in which local laws are authorized by the text of subsection 4-

209(b)(1)(iii), *viz.,* parks, churches and places of public assembly and within 100 yards of specified locations. The scope of the authority granted by subsection 4-209(b)(1), at issue in Counts I and II, thus could not moot the Second Amendment claim.

As noted, *Bruen* lists five "sensitive places" (schools, government buildings, legislative assemblies, polling places and courthouses) where regulation is historically justified and holds that any regulation of firearms outside of those five locales is presumptively unconstitutional. *Bruen*, 142 S.Ct. at 2133-34. The Supreme Court specifically rejected New York's attempt to ban the exercise of Second Amendment rights at "all places of public congregation," holding that such a regulation "would eviscerate the general right to publicly carry arms for self-defense." *Bruen*, 142 S.Ct. at 2134. In imposing bans on possession, transport, sales and transfers of all types of firearms and on components anywhere at or within 100 yards of the broadly and vaguely defined "place of public assembly," Section 57-11(a) was plainly intended to reach "all places of public congregation" (including on private land) and "would eviscerate the general right to publicly carry arms for self-defense" no less than New York's statute struck down in *Bruen*.

Similarly, subsection 4-209(b)(1)(iii) purports to authorize local regulation in "parks" and Section 57-11(a) includes every conceivable kind of "park" in its vague bans. Amended Complaint ¶ 68. But parks (however defined) are not on *Bruen*'s list and are not historically "sensitive places." See, e.g., *Bridgeville Rifle & Pistol Club, Ltd. v. Small*, 176 A.3d 632, 654 (Del. 2017) (relying on *Heller* to hold that State parks and forests were not "sensitive places" under Delaware's analogue to the Second Amendment). Subsection 4-209(b)(1)(iii) likewise purports to authorize County regulation in "churches" and "places of public assembly" and Section 57-11(a) includes any "place of worship" as well as all possible places of "public assembly" (however defined) in its vague bans. Amended Complaint ¶¶ 64-67. But such places are also not on *Bruen*'s list and are not

historically "sensitive places." See D. Kopel & J. Greenlee, *The "Sensitive Places" Doctrine*, 13 Charleston L. Rev. 205, 242 (2018) ("statutes all over America … required bringing guns into churches, and sometimes to other public assemblies"), cited with approval in *Bruen*, 142 S.Ct. at 2133. The same is obviously true for the 100-yard exclusion zone supposedly authorized by subsection 4-209(b)(1)(iii). See *People v. Chairez*, 2018 IL 121417, 104 N.E.3d 1158, 1176 (2018) (an area within 1000 feet of a public park was not a "sensitive place"). See *Antonyuk v. Bruen*, 2022 WL 3999791 at *32-*35 (N.D.N.Y. 2022) (New York's new list of "sensitive places" and "restricted locations" are impermissible under *Bruen*).

### C. The Path Forward

For the foregoing reasons, adjudication of Counts IV and V must come first. Such adjudication would leave the Court with two options for further proceedings thereafter. First, this Court could remand any remaining state law claims under 28 U.S.C. § 1367(c)(1). Plaintiffs may even elect to simplify the case and voluntarily dismiss Counts I and II should plaintiffs fully prevail on Counts IV and V, leaving only the Takings claim in Count III to be remanded. The Court could enter final judgment on Counts IV and V and thus allow the losing party to seek immediate appellate review. That approach would promote a speedy final resolution of the federal claims.

However, as the cross-motions for summary judgment filed in State court make clear, the State law Counts present dispositive *legal* issues. Apart from determining the amount of just compensation due under Count III, there is no need for trial court fact-finding on any claim. Thus, rather than remand, the second option and the better route would be for the Court to certify any remaining State law questions to the Maryland Court of Appeals under MD Code, Courts & Judicial Proceedings, § 12-603, just as the County suggested when it resisted a remand of the State

claims after its first removal. See *Grattan v. Board of School Com'rs of Baltimore City*, 805 F.2d 1160, 1164 (4th Cir. 1986) ("A federal court's certification of a question of state law to that state's highest court is appropriate when the federal tribunal is required to address a novel issue of local law which is determinative in the case before it."); *Colonial Props., Inc. v. Vogue Cleaners, Inc.*, 77 F.3d 384, 387 (11th Cir. 1996) ("[W]here there is any doubt as to the application of state law, a federal court should certify the question to the state supreme court to avoid making unnecessary ... 'guesses' and to offer the state court the opportunity to interpret or change existing law.").

Indeed, the Supreme Court strongly favors certifications of novel state law questions. See *McKesson v. Doe*, 141 S.Ct. 48, 51 (2020) (per curiam) (certification appropriate where "the dispute presents novel issues of state law peculiarly calling for the exercise of judgment by the state courts."); *Elkins v. Moreno*, 435 U.S. 647, 662 n.16 (1978) (*sua sponte* certifying a State law question, stating "it is obviously desirable that questions of law which . . . are both intensely local and immensely important to a wide spectrum of state government activities be decided in the first instance by state courts"); *Bellotti v. Baird*, 428 U.S. 132 151-52 (1976) ("the availability of an adequate certification procedure 'does, of course, in the long run save time, energy, and resources and helps build a cooperative judicial federalism'"), quoting *Lehman Brothers v. Schein*, 416 U.S. 386, 391 (1974); *Arizonans for Official English v. Arizona*, 520 U.S. 43, 76 (1997) (same).

Certification here would conserve the resources of the Court and the parties (thus promote "economy" and "convenience") and uphold "comity." *Mullaney v. Wilbur*, 421 U.S. 684, 691(1975) (State courts are the "ultimate expositors of state law"). This Court has already held that the State law claims present novel questions of first impression. Remand Op. at 8-10. See also id., at 7 ("the state constitutional claims in Count 3 add another complex legal analysis"). No more is required for certification. See *Gardner v. Ally Financial, Inc.,* 488 Fed. Appx 709, 713-14 (4th

Cir. 2012) (certifying); *R.L Jordan Oil Co. v. Boardman Petroleum, Inc.,* 23 Fed. Appx. 141, 146 (4th Cir. 2001) (directing certification on remand).

Of course, this Court could adjudicate the merits of the State law claims. But, any decision by this Court will not be authoritative and thus the County will be free to ignore the Court's decision in the next case, just as the County has blatantly ignored this Court's prior, narrow construction of the authorization accorded by subsection 4-209(b)(1) in *Mora v. City of Gaithersburg*, 462 F. Supp. 2d 675 (D. Md. 2006), *modified on other grounds*, 519 F.3d 216 (4th Cir. 2008). See Remand Op. at 9. Certification and the resulting controlling State court precedent is the fastest way to definitively resolve these important issues of State law. Remand Op. at 11 ("the Court concludes that interests of comity outweigh any minimal federal interest in having this Court insert itself into what [was] primarily [pre-*Bruen*] a dispute over the scope of a local government's authority to legislate under state law"). For all these reasons, certification is the superior approach.

## CONCLUSION

The County's motion to remand Counts I, II & III of the Amended Complaint and to hold Counts IV and V in abeyance should be denied.

Respectfully submitted,

*/s/ Mark W. Pennak*

MARK W. PENNAK
Maryland Shall Issue, Inc.
9613 Harford Rd., Ste C #1015
Baltimore, MD 21234-21502
Phone: (301) 873-3671
District Court Bar No. 21033
mpennak@marylandshallissue.org
*Counsel for Plaintiffs*

September 23, 2022