IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

```
-------------------------------X
                               :
MARYLAND SHALL ISSUE, ET AL.,  :
                               :
        Plaintiffs,            :
                               :
             v.                :        Civil No. 485899
                               :
MONTGOMERY COUNTY MARYLAND,    :
                               :
        Defendant.             :
                               :
-------------------------------X
```

MOTIONS HEARING

Rockville, Maryland                              July 19, 2022

**EXHIBIT A**

DEPOSITION SERVICES, INC.
P.O. BOX 1040
Burtonsville, Maryland 20866
(301) 881-3344

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND


```
-------------------------------X
                               :
MARYLAND SHALL ISSUE, ET AL., :
                               :
        Plaintiffs,            :
                               :
              v.               :        Civil No. 485889
                               :
MONTGOMERY COUNTY MARYLAND,    :
                               :
        Defendant.             :
                               :
-------------------------------X
```

Rockville, Maryland

July 19, 2022


WHEREUPON, the proceedings in the above-entitled

matter commenced

BEFORE:    THE HONORABLE JILL REID CUMMINS, JUDGE

APPEARANCES:

FOR THE PLAINTIFFS:

MARK W. PENNAK, Esq.
7416 Ridgewood Avenue
Chevy Chase, Maryland 20815

FOR THE DEFENDANT:

EDWARD B. LATTNER, Esq.
SEAN C. O'HARA, Esq.
Montgomery County Attorney's Office
101 Monroe Street, Third Floor
Rockville, Maryland  20850

1            So, you have the inconsistent provisions under the

2    state enactment of the ghost gun legislation, SP 387.  You have

3    inconsistent provisions where the varying regulations of the

4    possession, transport and transfer of firearms throughout the

5    state, and, versus 4-421.  So, I don't know that there is

6    anything left of the County's argument, especially after <u>Bruen</u>.

7            THE COURT:  Okay.

8            MR. PENNAK:  So, I would submit that it has to be

9    struck down in its entirety, and in fact 4-209(b) should be

10   very narrowly construed, in order to save its

11   constitutionality, and I want to be very specific about that.

12   Places of public assembly are void.  Anything regulating places

13   of public assembly are void because it wasn't mentioned a among

14   the five, by the Supreme Court in <u>Bruen</u>, and the County hasn't

15   come up with any historical analogy.  So, places where, parks

16   are void because there is no historical analogy.  Places of

17   churches, or houses of worship are void because there is no

18   historical analogy.

19           The county can regulate public buildings, regulate

20   places where the county council and legislative assemblies,

21   they can do that.  They can regulate the schools and regulate

22   any other five that the Supreme Court mentioned, but beyond

23   that, 4-209 cannot authorize any regulation at all, unless the

24   county comes forward with proof of historical analogy, and it

25   is the County's burden, not mine.  So, 4-21 is dead, and the

1  Court should so hold.

2            THE COURT:  Okay.

3            MR. PENNAK:  I'd be happy to answer any court

4  questions.

5            THE COURT:  Thank you.  Thank you, Mr. Pennak.

6            MR. PENNAK:  Thank you.

7            THE COURT:  All right.  On behalf of the County.

8            MR. LATTNER:  Thank you, Your Honor.  Edward Lattner

9  again for the County.  Contrary to what I was taught in law

10  school, I'm going to start very briefly with the least

11  important thing, which is Bruen, which may be an elephant, but

12  it's not in the room, and it's not in the room because there is

13  no Second Amendment claim in this case, although plaintiffs

14  have peppered their pleadings with references, and have filed

15  an entire supplement dedicated to the Second Amendment.  There

16  is in fact no Second Amendment claim.  So, there is nothing for

17  the Court to decide on that issue.  That's the short answer.

18            Beyond that, the plaintiff, I'm sorry, the county has

19  removed the federal claims to federal court, where count four,

20  the due process claim under the Fourteenth Amendment is still

21  pending, and I have to imagine the county would also be seeking

22  to remove any Second Amendment claim to federal court as well,

23  and that's if the plaintiffs decide to amend and actually state

24  a Second Amendment claim.

25            I'll also note that this is a challenge to Bill 4-21,

1  not to the statute as a whole.  This complaint is cast, and the

2  case has been argued as to challenge to 4-21, which was

3  amendments to the county's firearm law with regard to ghost

4  guns, and undetected guns.  So, that's enough said about the

5  Second Amendment.

6          Also, let me just, another preliminary matter.

7  Plaintiffs refer to this repeatedly as a ban, a ban.  It's not

8  a ban.  It is, it is, or it is a ban only to the extent of the

9  presence of children, and places of public assembly, which is

10  precisely what the state has allowed the county to regulate.

11  It is not a, a county-wide ban on firearms throughout the

12  county.

13          So, we ask that you grant the County's motion for

14  summary judgment, and enter a declaratory judgment, finding

15  that Bill 4-21 is not preempted by, or in conflict with state

16  law, and does not amount to a taking under state law.  My

17  co-counsel, Sean O'Hara, will address briefly the takings

18  claim.

19          The state has, it is true, expressly preempted much

20  firearm regulation at the local level, but since 1985, in

21  statute 4-209 of the Criminal Law Article, the state has

22  specifically, and expressly authorized local regulation of

23  firearms with respect to minors, and within 100 yards of or in

24  a park, church, school, public building, and other place of

25  public assembly.  Field 4-21 fits within that authorization.

1  For decades the county has enacted laws under 4-209, in 1991

2  and again in 1997 the Attorney General opined that these county

3  laws were specifically authorized by 4-209 and were not

4  preempted by the more general state preemption provisions that

5  the plaintiffs now rely on.

6           The plaintiffs would ask this Court to disregard that

7  explicit authorization.  Bill 4-21 extends the County's

8  regulation to unserialize ghost guns, and undetectable guns,

9  and the bill fits comfortably within 4-209.  Unless there are

10 any questions I wasn't going to address the standing issues.

11 We set those out in our motion to dismiss, and instead I'd like

12 to turn to the motion for summary judgment.

13           THE COURT:  Okay.

14           MR. LATTNER:  And first, the local law issue.

15           THE COURT:  So, wait a minute.  Wait a minute.  So, I

16 just want to make sure.  So, now you're moving to your

17 affirmative motion, as opposed to the opposition to the

18 plaintiff's motion.

19           MR. LATTNER:  Well --

20           THE COURT:  I know they overlap.  I know they

21 somewhat overlap.  I just want to be --

22           MR. LATTNER:  Right.  I'm moving --

23           THE COURT:  -- want to be clear on what we're, where

24 we're transitioning to.

25           MR. LATTNER:  Yes, I'm moving from the dismissal