IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MARYLAND SHALL ISSUE, INC., *et al*., ) | |
| ) | |
| *Plaintiffs*, ) | |
| ) | |
| v. ) | Case No. 8:21-cv-01736-TDC **(L)** |
| ) | Case No. 8:22-cv-01967-DLB |
| MONTGOMERY COUNTY, MD., ) | |
| ) | |
| *Defendant*. ) | |

**PLAINTIFFS' EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER
AND
EMERGENCY MOTION FOR A PRELIMINARY INJUNCTION**

Plaintiffs respectfully move this Court for an emergency order on Count VII of the Verified Second Amended Complaint, filed with the defendant's consent on November 29, 2022 (filing error corrected, refiled on November 30, 2022). Specifically, plaintiffs seek a Temporary Restraining Order ("TRO") and a Preliminary Injunction, preventing and enjoining defendant Montgomery County, Maryland ("the County") from enforcing Section 57-11(a) of Chapter 57 of the Montgomery County Code, as amended by County Bill 21-22E against persons who have been issued a wear and carry permit by the Maryland State Police pursuant to MD Code, Public Safety, § 5-306. Count VII is founded on the Supreme Court's decision *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S.Ct. 2111 (2022). Bill 21-22E was enacted as an emergency measure and went into effect on November 28, 2022, and thus is currently in effect. This relief is reflected in the **Proposed Order** filed herewith. These Motions do not request relief as to any other claim other than Count VII.

Alternatively, *at the very minimum*, for the reasons set forth in the accompanying supporting memorandum, an immediate TRO and preliminary relief should be granted restraining

1

the County from enforcing Section 57-11(a) of the County Code as to permit holders who provide armed security to places of worship and/or to private schools and thus allow them to continue to do so. Bill 21-22E has left these locations without urgently needed security. The lack of such armed security presents a true emergency and obvious irreparable injury. In addition, a TRO and preliminary relief is likewise appropriate, *as a minimum*, restraining the County from enforcing the 100-yard exclusion zones imposed by Bill 21-22E. That alternative relief would at least allow permit holders to possess and transport a firearm within the County, just as they have prior to the enactment of Bill 21-22E, as long as they did not actually intrude on the actual, additional locations at which possession and transport are banned by Bill 21-22E. The deprivation of these individuals of their constitutional rights is effectively County-wide and is thus severe and irreparable. Such limited relief would leave to a later time the constitutionality of the County's bans on permitted carry *in* or *at* the specific other locations identified in Bill 21-22E. The constitutionality of these additional locations may then litigated in due course. This alterative relief is reflected in the **Alternative Proposed Order**, filed herewith.

These sorts of preliminary relief are necessitated because Bill 21-22E repealed the prior exemption for carry permit holders that was long a part of County law under Section 57-11. Verified Second Amended Complaint ¶ 13. That repeal affects all **existing** permit holders, including those who were issued permits by the State Police for "good and substantial" reasons under MD Code, Public Safety, § 5-306(a)(6)(ii). Such reasons included protection against documented and immediate threats and were issued as well to persons who fell into "presumed risk" categories, such as judges, prosecutors, criminal defense attorneys, public officials and persons with high national security clearances. See https://bit.ly/3izcG2W. Such existing permit

holders also include persons who were issued carry permits for the express purpose of providing armed protection for houses of worship and private schools.

All permit holders are screened and thoroughly investigated by the State Police, including fingerprinted. All permit holders are thus identifiable by the FBI's RAP BACK system, under which a mere arrest or investigation of any permit holder will be immediately reported to the Maryland State Police. https://bit.ly/3B8l142. All have received the 16 hours of training required by MD Code, Public Safety, § 5-306(a)(5), or are otherwise exempted by State law from such training by MD Code, Public Safety, § 5-306(a)(6), such as law enforcement officers and firearms instructors. All such permit holders who had previously demonstrated a "good and substantial" reason are now disarmed by Bill 21-22E and are now placed at significant personal risk by the enactment of Bill 21-22E, including persons who received carry permits because they were in dire need of armed protection because of documented threats. Relief for these individuals could not be more immediate or urgent.

These motions are supported by attachments to the Verified Second Amended Complaint. Those attachments consist of a copy of County Bill 4-21, as originally challenged in the Complaint and the First Amended Complaint (Exhibit A), a copy of County Bill 21-22E, as signed into law on November 28, 2022 (Exhibit B), the comments submitted by plaintiff Maryland Shall Issue, Inc. ("MSI") in opposition to Bill 4-21 (Exhibit C), the Staff Report and accompanying written record before the Montgomery County Council regarding Bill 21-22E, including the opposition and comments submitted by MSI and others, (Exhibit D), and by the sworn declarations of each of the individual plaintiffs verifying the factual allegations of the Verified Second Amended Complaint. (Exhibits E, F, G, H, I, J, K, L, M).

In addition, these Motions are supported by the accompanying declarations of David Sussman and Allan Barall, as well as four "John Doe" declarations (John Doe No. 1, John Doe No. 2, Thomas Paine No.1, and John Smith No. 1, Exhibits N, O, P, Q, R, S, respectively), all of whom are MSI Members. The four "John Doe" MSI members wish to remain anonymous for the reasons stated in their declarations. Mr. Sussman, Mr. Barall and each of the four John Doe declarants possess wear and carry permits issued prior to the enactment of Bill 21-22E, and each provided armed security to their respective synagogues and churches. Bill 21-22E has forced them to stop providing such security. These individuals testify as to the severe risks to them and to their houses of worship caused by the enactment of Bill 21-22E.

For the reasons set forth in the accompanying supporting Memorandum and in Count VII, Bill 21-22E effectively eviscerates the ability of plaintiffs, including MSI members with carry permits, to exercise their fundamental Second Amendment right to carry a firearm in the County, as recognized in *Bruen*. That is because it is nearly impossible to move around the County without entering one or more of the hundreds, if not thousands, of the 100-yard exclusion zones that Bill 21-22E has created overnight throughout the County. That result effectively nullifies the use of a wear and carry permit virtually everywhere in the County and thus completely denies the plaintiffs the ability to exercise their Second Amendment rights recognized in *Bruen*. The Bill expressly bans the mere possession or transport of a firearm with a carry permit at or within 100 yards of any "place of worship" and schools, including private religious schools that have long provided their own security. Second Amended Complaint ¶ 11. Bill 21-22E has thus expressly stripped houses of worship in the County of the armed protection provided by permit holders who are members of their congregations. As the declarations of Sussman, Barall and the four John Doe declarants make clear, the need for such protection cannot be overstated.

Under State law, a carry permit operates as an exception to the broad ban on public carry otherwise imposed by MD Code, Criminal Law, § 4-203(a). See MD Code, Criminal Law, § 4-203(b)(2). However, each carry permit issued in the State is subject to the condition, expressly stated on the permit, that the permit is "not valid where firearms are prohibited by law." Verified Second Amended Complaint, ¶ 39. By banning possession and transport in the multitude of locations specified in Bill 21-22E, including within 100 yards of such locations, the Bill effectively likewise limits the areas in which the carry permit is "valid." That reality exposes every permit holder who carries in the County to prosecution and imprisonment, not only under Chapter 57, but also to imprisonment for up to three years (and a fine) for a violation of Section 4-203(a). Both Chapter 57 and Section 4-203(a) lack any *mens rea* element and thus create "strict liability" offenses without regard to a person's intent, knowledge or state of mind. Id. ¶ 25. Any conviction under Section 4-203(a) acts as a lifetime disqualification for possession of any firearm under both federal and State law and thus destroys a person's Second Amendment rights *in toto*. Id. ¶ 147.

The relief requested in these motions is very modest, consisting only of allowing permit holders to continue to carry firearms in the County **as previously permitted by Chapter 57 and as currently allowed by State law.** No relief is now requested as to other claims set forth in the Verified Second Amended Complaint. The *alternative* relief requested is even *more* modest, as it is limited to persons who provide armed security to places of worship and private schools, and allows persons with permits to continue to possess and transport in the County without fear of being arrested and prosecuted simply because they strayed inside one of the hundreds if not thousands of 100-yard exclusion zones created by Bill 21-22E. A TRO and a preliminary injunction is urgently needed to preserve the *status quo ante* and allow permit holders to exercise their fundamental constitutional right, recognized in *Bruen*, to protect themselves and others,

including at and around houses of worship and private schools. An immediate TRO and a preliminary injunction is necessary to shield plaintiffs and MSI members with carry permits from unlawful arrest and prosecution under Chapter 57 of the County Code, and MD Code, Criminal Law, 4-203(a). These matters are of the highest urgency and warrant expedited treatment and consideration.

## CONCLUSION

Plaintiffs' motions for a TRO and/or a preliminary injunction should be granted without delay.

Respectfully submitted,

*/s/ Mark W. Pennak*

MARK W. PENNAK
MARYLAND SHALL ISSUE, INC.
9613 Harford Rd., Ste C #1015
Baltimore, MD 21234-21502
mpennak@marylandshallissue.org
Phone: (301) 873-3671
District Court Bar No. 21033