**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| MARYLAND SHALL ISSUE, INC., *et al.*, | * | |
| | * | |
| Plaintiffs | * | |
| | * | Consolidated Case Nos.: |
| v. | * | 8:21-cv-01736-TDC (lead) |
| | * | 8:22-cv-01967-DLB |
| MONTGOMERY COUNTY, MARYLAND | * | |
| | * | |
| Defendant | * | |

**DEFENDANT'S RENEWED MOTION TO REMAND
COUNTS I, II, AND III AND STAY COUNTS IV THROUGH VIII**

Defendant Montgomery County, Maryland, ("the County") by and through its undersigned counsel, respectfully requests that this Court allow the parties to return to the path it put them on in February—remand the state law claims in Counts I, II, and III to the Circuit Court for Montgomery County, where the parties already filed and argued dispositive cross-motions, and hold in abeyance Counts IV through VIII, which arise primarily under Federal law, pending resolution of the state law claims. Although on the surface the

Plaintiffs' newly filed Second Amended Complaint appears to present more federal claims than their First Amended Complaint, closer inspection reveals that they have merely subdivided their federal claims into new counts. The complaint remains one substantially predominated by dispositive state-law claims, resolution of which could avoid the necessity to proceed with a cumbersome federal constitutional analysis under the shifting ground of the Second Amendment.

**BACKGROUND**

Plaintiffs challenge the County's firearms law, codified in Chapter 57 ("Weapons") of the Montgomery County Code, as amended County Bill 4-21 and Bill 21-22E. At issue here are firearms regulations with respect to minors, Cnty. Code § 57-7, and within 100 yards of or in a "place of public assembly." Cnty. Code § 57-11. The County's authority to regulate firearms with

respect to minors and places of public assembly derives from the explicit authorization in Md. Code Ann., Crim. Law (Crim. Law) § 4-209(b).[1]

**Bill 4-21 and the Original Complaint**

In April of 2021, the County enacted Bill 4-21, which expanded the definition of "place of public assembly" and generally amended the existing firearms regulations in §§ 57-7 and 57-11 to include ghost and undetectable guns. Plaintiffs filed their original Complaint in the Circuit Court for Montgomery County (Civ. No. 485899V) on May 28, 2021. That Complaint contained four counts. In Count I Plaintiffs claimed that Montgomery County Bill 4-21 is not a "local law" and that the County "exceeded its powers and jurisdiction to regulate" firearms under Article XI-A § 3 of the Maryland Constitution (the Home Rule Amendment). Compl. ¶¶ 36-39, ECF No. 7. In Count II Plaintiffs claimed that Bill 4-21 is preempted by and conflicts with several state statutes that regulate firearms. Compl. ¶¶ 40-42, ECF No. 7. Count III claimed that the restrictions in Bill 4-21 amounted to an unconstitutional taking under the Maryland Takings Clause, Md. Const., Article III § 40, and the Due Process Clause in Article 24 of the Maryland Declaration of Rights by "depriving Plaintiffs of their vested property rights in [ ] personal property." Compl. ¶¶ 43-50, ECF No. 7. Finally, in Count IV, Plaintiffs argued that Bill 4-21 was impermissibly vague and violated their federal and state due process rights under the Fourteenth Amendment to the U.S. Constitution and Article 24 of the Maryland Declaration of Rights. Compl. ¶¶ 51-66, ECF No. 7. Plaintiffs' federal due process claim was joined with a claim seeking compensatory and nominal damages under 42 U.S.C. § 1983 and attorney's fees under 42 U.S.C. § 1988. *Id.* ¶ 66.

---

[1] Crim. Law § 4-209(b) empowers a County to regulate the purchase, sale, transfer, ownership, possession, and transportation of a handgun, rifle, or shotgun, their ammunition, and components, "with respect to minors" and "within 100 yards of or in a park, church, school, public building, and other place of public assembly."

The Complaint did not include a Second Amendment claim, although it made several references to the Second Amendment, Compl. 9-10, ECF No. 7, and Plaintiffs later argued before the Circuit Court that Bill 4-21 "raises profound Second Amendment questions under the Supreme Court's decision in *District of Columbia v. Heller*, 554 U.S. 570 (2008) and *McDonald v. Chicago*, 561 U.S. 742, 750 (2010)." Pls.' Mot. Summ. J. 22-23, ECF No. 8. And though it did not include a Due Process claim regarding "parental rights," Plaintiffs also argued before the Circuit Court that Bill 4-21 violated those rights as well. Pls.' Mot. Summ. J. 28-29, ECF No. 8.

**Removal to Federal Court**

The County timely removed the original Complaint to this Court on July 12, 2021, and this Court docketed it as Civil No. 8:21-cv-01736-TDC. In response, Plaintiffs asked this Court to sever and remand the state law claims (Counts I, II, III, and the half of Count IV based upon the Maryland Declaration of Rights). ECF No. 18. The County opposed that request. ECF No. 19. On February 7, 2022, this Court remanded Counts I, II, and III for further proceedings in State Court and held Count IV (in its entirety) in abeyance pending resolution of the other counts. See ECF No. 22 (Memorandum Opinion), ECF No. 23 (Order).

**Remand to State Court**

Back in the Circuit Court for Montgomery County, the parties filed dispositive cross-motions and extensively briefed the state law issues underlying Counts I, II, and III. At the parties' request, due to the complexity of the state law issues, the Circuit Court provided additional time for argument on the cross-motions, which were heard on July 19, 2022. About a month earlier, on June 23, 2022, the Supreme Court issued its decision in *New York State Rifle & Pistol Assoc., Inc. v. Bruen*, 142 S. Ct. 2111 (2022). The Plaintiffs filed a supplemental brief and raised the Second Amendment issue at the hearing, but the County understandably declined to address the issue

3

because the Plaintiffs had not pled a Second Amendment claim. The County made clear that if Plaintiffs amended their Complaint to add a Second Amendment claim, "the County would also be seeking to remove any Second Amendment claim to federal court as well," just as it did with Plaintiffs' federal due process vagueness claim. *See* Circuit Court transcript attached as Ex. A to Pls.' Opp'n to Mot. to Remand/Stay, ECF No. 40-1).

Following oral argument, the Circuit Court took the motions under advisement. Three days later, before the Circuit Court could rule, Plaintiffs filed their First Amended Complaint on July 22, 2022, adding Count V and alleging, for the first time, a violation of the Second Amendment. Am. Compl., ECF 1-44 and ECF No. 11 (both filed under 8:22-cv-01967-DLB). As with their due process vagueness claim, Plaintiffs' Second Amendment claim was joined with a demand for compensatory and nominal damages under 42 U.S.C. § 1983 and attorney's fees under 42 U.S.C. § 1988. Counts I, II, III, and IV of the First Amended Complaint are substantively the same as those in the original Complaint.[2] As a result of Plaintiffs' Amended Complaint, the Circuit Court denied the cross-motions as moot on July 27. ECF No. 1-47 (filed under 8:22-cv-01967-DLB).

**The First Amended Complaint, the New Second Amendment Claim, and Removal Back to Federal Court**

Seeking to have this new federal claim adjudicated in federal court, the County removed the First Amended Complaint to this Court, which assigned a new case number to the action, Civ. No. 8:22-cv-01967-DLB.[3] In accordance with this Court's Case Management Order, ECF No. 11, Plaintiffs filed a Notice of Intent to File a Motion for Partial Summary Judgment on Count V

---

[2] The Second Amendment claim challenged Bill 4-21 and Montgomery County Code § 57-11, which regulates firearms (not just ghost and undetectable guns) in or near places of public assembly.

[3] This Court also consolidated the two cases by Order dated Sept. 1, 2022, ECF No. 38.

(Second Amendment), concluding that the remaining counts need not be addressed at this time. ECF No. 31. The County filed a Notice of Intent to File a Motion to Consolidate and a Motion to Remand Counts I, II, and III and Hold Counts IV and V in Abeyance. ECF No. 32. Following a Case Management Conference, this Court asked the parties to address the procedural issue and established a schedule for briefing the remand/abeyance issue. ECF No. 37. The County filed its Motion to Remand/Stay shortly thereafter. ECF No. 39. The Plaintiffs filed an opposition, ECF No. 40, and the County filed a brief reply, ECF No. 44.

**Bill 21-22E and the Second Amended Complaint**

Effective November 28, 2022, the County further amended Chapter 57 of the Montgomery County Code through the passage of Bill 21-22E. That bill narrowed the scope of a "place of public assembly" and removed the exception which permitted an individual with a state carry permit to possess a firearm in or within 100 yards of a place of public assembly.

While the County's Motion to Remand was still pending, Plaintiffs, with the County's consent, filed a Second Amended Complaint, ECF No. 49, and a Notice of Intent to file a Motion for a TRO and Preliminary Injunction, ECF no. 47. Following a pre-motion conference, this Court issued an Order denying the County's Motion to Remand/Stay as moot and setting a schedule for the filing of Plaintiff's Motion for TRO/Preliminary Injunction and the County's renewed Motion to Remand/Stay addressing the Second Amended Complaint. ECF No. 55.

Although the Second Amended Complaint adds three new Counts, it is not very different from the First Amended Complaint that the County addressed in its Motion to Remand. The state-law claims in Counts I, II, and III are substantially the same as their earlier counterparts.

The unconstitutional vagueness claim from County IV is now spread across two new Counts, IV and V. Count IV asserts that Bill 21-22E's definition of "place of public assembly" is

unconstitutionally vague (2d Am. Compl. ¶¶ 102-117) and Count V asserts that its definition of a "major component" of a firearm is unconstitutionally vague (2d Am. Compl. ¶¶ 118-129). As before, these claims are brought under the Fourteenth Amendment to the U.S. Constitution and Article 24 of the Maryland Declaration of Rights (2d Am. Compl. ¶¶ 102, 118) and Plaintiffs' federal due process claims are still joined with a demand for compensatory and nominal damages under 42 U.S.C. § 1983 and attorney's fees under 42 U.S.C. § 1988 (2d Am. Compl. ¶¶ 117, 129).

Likewise, the Second Amendment claim formerly presented in Count V is also spread across two new Counts, VII and VIII. Count VII asserts that the County's regulation of firearms in places of public assembly cannot meet the test for permissible regulation in "sensitive places" set out by the Supreme Court in *New York State Rifle & Pistol Assoc., Inc. v. Bruen*, 142 S. Ct. 2111 (2022) (2d Am. Compl. ¶¶ 135-158). Count VIII asserts that the County's regulation of ghost guns and components also violates the Second Amendment (2d Am. Compl. ¶¶ 159-169). As with their due process claim, Plaintiffs' Second Amendment claims are still joined with a demand for damages under 42 U.S.C. § 1983 and attorney's fees under 42 U.S.C. § 1988 (2d Am. Compl. ¶¶ 158,169).

Finally, Count VI is new, somewhat. Here Plaintiffs allege that Cnty. Code § 57-7 (regulating firearms with respect to minors) violates their Fourteenth Amendment Due Process right to raise their children, to the extent the County law regulates minors' access to ghost and undetectable guns. This claim is not entirely new. Like their Second Amendment argument, Plaintiffs earlier made this argument in their Motion for Summary Judgment in the Circuit Court. Pls.' Mot. Summ. J. 28-29, ECF No. 8.

## ANALYSIS

As before, this Court's February 7, 2022, decision remanding the state law claims (Counts

I, II, and III) and holding the state/federal vagueness claim (Count IV) in abeyance remains the template for evaluating this Motion. ECF No. 22. As this Court noted, a federal court's supplemental jurisdiction over state law claims is governed by 28 U.S.C. § 1367, which codifies the doctrine of pendent jurisdiction developed in *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). *Shanaghan v. Cahill*, 58 F.3d 106, 109 (4th Cir. 1995). Under § 1367(c), a federal district court "may decline to exercise supplemental jurisdiction over a claim" if:

(1) the claim raises a novel or complex issue of State law,
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

This Court further noted that, in deciding "the additional question of whether to remand" claims to state court, a court should consider "principles of economy, convenience, fairness, and comity" and "whether the efforts of a party in seeking remand amount to a 'manipulative tactic.'" *Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611, 617 (4th Cir. 2001) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988)).

After applying the above factors to the County's initial removal, this Court remanded the state law claims in Counts I, II, and III to state court and held Count IV (which included a federal and state due process vagueness claim) in abeyance pending resolution of the state law claims. That result remains as valid today as it did in February. Plaintiffs' Second Amended Complaint, filed over one year into this litigation, does not suggest a different result.

**The Second Amended Complaint Presents the Same Novel and Complex Issues of State Law**

In February, this Court found and that at least one of the state law claims, the preemption and conflict issues presented in Count II, involved novel or complex issue of state law, and

therefore favored remand to state court for resolution. ECF No. 22 at 8-10. That analysis need not be repeated here. Suffice it to say that the state law claims are no less novel or complex than they were last February and, therefore, remand is still advised for resolution of the state law claims.

**State Law Issues Still Substantially Predominate**

As this Court noted previously, the Supreme Court instructs that federal district courts should not exercise jurisdiction over state law claims if the state law issues substantially predominate "in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought." *Gibbs*, 383 U.S. at 726. "Once it appears that a state claim constitutes the real body of a case, to which the federal claim is only an appendage," a district court "may fairly" decline to exercise jurisdiction over the state claim. *Id*. at 111. State law claims may predominate when "the state law claims are more complex or require more judicial resources to adjudicate or are more salient in the case as a whole than the federal law claims." *Diven v. Amalgamated Transit Union Int'l*, 38 F.3d 598, 602 (D.C. Cir. 1994) (citation omitted). ECF No. 22 at 5-6.

This Court determined already in this case that the state law claims substantially predominated over the federal claim because they raised a broader scope of issues, would likely require more judicial resources to resolve, and would be dispositive of the County firearms law given the comprehensiveness of the remedies sought. ECF No. 22 at 5-8, 10.

This Court's conclusion still applies to the Second Amended Complaint. The state law claims still "collectively constitute a frontal attack on the validity of [the County firearms law] based on an array of state constitutional and statutory arguments." ECF 22 at 6. Plaintiffs' state law claims in Counts I and II, challenging the County's authority to enact its firearm law, remain dispositive.

Plaintiffs' Second Amendment claims are neither dispositive nor comprehensive. The

Second Amendment claims challenge the County's authority to regulate firearms consistent with the Second Amendment; the state-law claims challenge the County's authority to regulate firearms at all. There can be no doubt that, at a bare minimum, the County's regulation of firearms in the five so-called "sensitive places" where the *Bruen* Court acknowledged that the government can prohibit carrying firearms, is consistent with the Second Amendment. *Bruen*, 142 S. Ct. at 2133 (2022).[4] Bill 21-22E defines a place of public assembly (where firearms are regulated) to include these five areas: a school, government building, polling place, courthouse, and a legislative assembly. But Counts I and II challenge the County's authority to enact such a prohibition as a matter of state law, regardless of what the Second Amendment might countenance. Therefore, if Plaintiffs prevail under Count I or Count II, the County's regulation of firearms in sensitive places still fails, even if permissible under the Second Amendment.

Likewise, the vagueness claims attack only the specific wording of the County firearms law, not the County's authority to enact that law. In February 2022, when it remanded the state-law claims to the Circuit Court and stayed the vagueness claim, this Court concluded that "Plaintiffs' success on the federal due process claim likely would not bar enforcement of provisions of [the County firearms law] unconnected to the terms challenged as unconstitutionally vague . . . . Because resolution of the federal claim in Plaintiffs' favor would still require consideration of whether the state law claims invalidate other provisions of [the County firearms law], the remedy sought through the federal claim is less comprehensive than the remedy sought through the state law claims." Mem. Op. 7-8 (Feb. 7, 2022), ECF No. 22.

And resolution of the "parental rights" claim would not provide a dispositive result because

---

[4] The Court wrote that "courts can use analogies to those historical regulations of 'sensitive places' to determine that modern regulations prohibiting the carry of firearms in new and analogous sensitive places are constitutionally permissible." *Bruen*, 142 S. Ct. at 2133.

that claim is aimed at only one specific part of the law, Cnty. Code § 57-7 (regulating firearms with respect to minors).

Moreover, resolution of this case on state-law authority grounds would permit this Court to avoid unnecessarily deciding federal constitutional questions. Federal courts should avoid deciding constitutional questions unless they are essential to disposition of a case. *Hugger v. Rutherford Inst.*, 63 F. App'x 683, 691 (4th Cir. 2003) (citing *Bell Atl. Md., Inc. v. Prince George's County, Md.*, 212 F.3d 863, 865 (4th Cir. 2000)). In *Hugger* and *Bell Atlantic*, the Fourth Circuit concluded that "[b]y deciding the constitutional question . . . in advance of considering the state law question[] upon which the case might have been disposed of, the district court committed reversible error." *Hugger*, 63 F. App'x at 692; *Bell Atl. Md.*, 212 F.3d at 866.

Even if Plaintiffs' federal claims were as comprehensive as their state-law claims, judicial economy would still militate in favor of a remand to allow the Circuit Court to rule on the state-law claims. Plaintiffs explicitly chose not to allege Second Amendment or Due Process "parental rights" claims in their original complaint. They did not plead these claims until over one year into this litigation. In the meantime, the parties have already exhaustively briefed and argued the state law issues in state court.[5] As discussed below, this strongly favors remand of the state law issues to state court to complete its resolution of those issues, and a stay on the federal claims.

**Other Considerations Favor Remand of the State Law Claims and Stay of the Federal Claims.**

In February, this Court acknowledged that principles of economy and convenience

---

[5] The briefing papers, attached to the County's Notice of Removal. ECF No. 1 (filed under 8:22-cv-01967-DLB), are: (1) Pls.' Mot. Summ. J., ECF No. 1-8; (2) Cnty. Mot. Summ. J., ECF No. 1-18; (3) Pls.' Opp'n to Cnty. Mot. Summ. J., ECF No. 1-26; (4) Pls.' Supp., ECF No. 1-27; (5) Cnty. Opp'n to Pls.' Supp., ECF No. 1-31; (6) Pls.' Reply to Cnty. Opp'n to Pls.' Supp., ECF No. 1-33; and (7) Pls.' [2nd] Supp., ECF No. 1-41.

generally supported keeping all claims in one forum. However, this Court concluded that staying the federal claim in Count IV after remanding the state law claims to state court "mitigate[d] concerns about economy and convenience by preventing the County from having to litigate simultaneously in two separate forums and depending on the proceedings in state court, **may obviate the need to litigate the federal claim to completion**. Moreover, because this action is in the early stages of litigation and the parties do not anticipate discovery, there is no concern about having **wasted judicial resources** by remanding at this state of the action." ECF 22 at 10-11 (emphasis added). Given the stay of the federal claim, this Court also concluded that principles of fairness and comity would be vindicated by permitting the state court to decide the state law issues. ECF No. 22 at 11-12.

This Court's decision to remand the state law claims and stay the federal claims in the original Complaint remains sound given the present posture of this case. Resolution of the state law claims could still obviate the need to litigate the federal claims. The new federal claims do not render the state law claims any less dispositive now than they were before. Plaintiffs recognized as much in their Motion to Remand, stating that if they prevailed in their state law claims, "there is a likelihood that [they] would simply voluntarily dismiss the federal [due process vagueness] claim without further ado, thereby eliminating the need for this Court to decide the claim altogether." ECF 18 at 15.

In fact, the argument for remanding the state law claims and staying the federal claims is even stronger now given that the parties have already briefed and argued those state law claims in state court. Again, even if the federal claims were dispositive, judicial economy and convenience militate in favor of not wasting judicial resources. This Court should return the state law claims to the Circuit Court and that court should be permitted to finish its work and resolve those claims.

In addition to obviating the need to litigate the federal claims, state court resolution of the state law claims may provide interpretation and construction of the County firearms law that this Court would find helpful in any analysis of the federal claims. For example, in Counts IV and V Plaintiffs claim that the parts of the County firearms law, including the definition of "place of public assembly" are unconstitutionally vague. In their Motion to Remand, Plaintiffs acknowledged that "resolution of the state law claims will assist in the resolution of the federal [vagueness] claim remaining before this Court as the Court will have the benefit of an authoritative State Court decision construing and applying the complex web of State statutes at issue in this case." ECF No. 18 at 15-16. And the breadth and scope of the County's firearms law is a necessary component to Plaintiffs' assertion that the County law cannot be sustained under the recent formulation of the "sensitive places" doctrine explicated in *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022).

**Analysis of the Second Amendment Claim Will Be Complex and Lengthy**

Finally, in contrast to the state law claims, which the parties have already briefed, the Second Amendment claims are not as easily resolved. When the Second Amendment's plain text covers an individual's conduct, the government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. *Bruen*, 142 S. Ct. at 2130. In *Bruen*, the Court reviewed New York's requirement that an individual demonstrate "proper cause" to obtain a permit to carry a firearm. To support its requirement that a carry permit applicant demonstrate "a non-speculative need for armed self-defense," New York had to show that its proper cause requirement was consistent with this Nation's historical tradition of firearm regulation. *Id*. at 2135. Courts must decide these matters "based on the historical record compiled by the parties." *Id*. at 2130 n.6.

The *Bruen* Court stated that this historical analysis will often involve reasoning by analogy. "Like all analogical reasoning, determining whether a historical regulation is a proper analogue for a distinctly modern firearm regulation requires a determination of whether the two regulations are relatively similar." *Id*. at 2132 (internal quotation omitted). This analogical reasoning

> is neither a regulatory straightjacket nor a regulatory blank check. On the one hand, courts should not uphold every modern law that remotely resembles a historical analogue, because doing so risks endorsing outliers that our ancestors would never have accepted. On the other hand, analogical reasoning requires only that the government identify a well-established and representative historical analogue, not a historical twin. So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster.

*Id*. at 2133 (internal citation and quotation omitted).

In *Bruen*, the Court reviewed an extensive historical record that ran from the late 1200s to the early 1900s. *Id*. at 2138-2156. "At the end of [that] long journey through the Anglo-American history of public carry," the Court concluded that history did not support New York's proper cause requirement. *Id*. at 2156.[6]

To properly address the Second Amendment claim, the parties, and in particular the County, will need an opportunity to develop a historical record regarding the regulation of firearms in places of public assembly. Though *Bruen's* exhaustive historical analysis was limited to proper cause carry requirements, the Court did briefly address the history of laws prohibiting firearms in "sensitive places."

> Consider, for example, *Heller's* discussion of longstanding laws forbidding the carrying of firearms in sensitive places such as schools and government buildings. Although the historical record yields relatively few 18th- and 19th-century "sensitive places" where weapons were altogether prohibited—e.g., legislative assemblies, polling places, and courthouses—we are also aware of no disputes regarding the lawfulness of such prohibitions. We therefore can assume it settled

---

[6] Following *Bruen*, the Maryland Court of Special Appeals struck down Maryland's similar "good and substantial reason" requirement for a carry permit one month later. *In re Rounds*, 2022 Md. App. LEXIS 543 (2022).

13

that these locations were "sensitive places" where arms carrying could be prohibited consistent with the Second Amendment. **And courts can use analogies to those historical regulations of "sensitive places" to determine that modern regulations prohibiting the carry of firearms in new and analogous sensitive places are constitutionally permissible.**

*Id*. at 2133 (internal citations and quotations omitted) (emphasis added). Therefore, the Court will have to allow the parties an opportunity to develop a historical record for its review.

**Final Comments**

Notwithstanding the County's arguments, should this Court determine to proceed with the federal claims as Plaintiffs request, the County respectfully requests that it **not** remand the state law claims to state court. While the concept of relitigating the state law claims in this Court is the antithesis of economy and convenience, construing the County firearms law in two different courts simultaneously is fraught with peril.

Finally, the County reserves the right to seek discovery, particularly as to damages sought in connection with all claims.

## CONCLUSION

After the County first removed this matter, it initially opposed remand of the state law claims. But having litigated and argued those state-law claims in Circuit Court, the County acknowledges that it would be a waste of judicial resources to start over again in this Court. Defendant removed the entire First Amended Complaint because it was simply not aware of any procedural mechanism to remove a single count of an amended complaint (the Second Amendment claim), rather than the entire action.

*Bruen* may have changed the Second Amendment legal landscape. But it did not change the factors this Court must consider in deciding whether to remand the state law claims and stay the federal claims. *Bruen* does not give Plaintiffs the right to demand that this Court immediately

resolve its Second Amendment claim, laying waste to the months the parties have spent briefing and arguing the state law claims, and squandering the judicial resources already expended by the Circuit Court for Montgomery County.

Defendant respectfully requests that this Court remand Counts I, II, and III of the First Amended Complaint to Circuit Court and hold in abeyance Counts IV through VIII pending final resolution of the state law claims.

    Respectfully submitted,

    JOHN P. MARKOVS
    COUNTY ATTORNEY

    /s/
    Patricia L. Kane, Chief
    Division of Litigation
    patricia.kane@montgomerycountymd.gov
    Bar No. 13621

    /s/
    Edward B. Lattner, Chief
    Division of Government Operations
    edward.lattner@montgomerycountymd.gov
    Bar No. 03871

    /s/
    Erin J. Ashbarry
    Associate County Attorney
    Federal Bar No. 26298
    erin.ashbarry@montgomerycountymd.gov

    /s/
    Matthew H. Johnson
    Associate County Attorney
    Federal Bar No. 17678
    matthew.johnson3@montgomerycountymd.gov

    Attorneys for Defendant Montgomery
    County, Maryland
    101 Monroe Street, Third Floor
    Rockville, Maryland 20850-2540
    (240) 777-6700
    (240) 777-6705 Fax

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 9, 2022, a copy of the foregoing was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the address(es) listed below:

Mark W. Pennak
Maryland Shall Issue, Inc.
9613 Harford Rd., Ste C #1015
Baltimore, Maryland 21234-21502
mpennak@marylandshallissue.org

                                                      /s/
                                        Edward B. Lattner

21-003732