IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **MARYLAND SHALL ISSUE, INC.,** *et al.*, ) | |
| ) | |
| *Plaintiffs*, ) | |
| ) | |
| v. ) | Case No. 8:21-cv-01736-TDC (L) |
| ) | Case No. 8:22-cv-01967-DLB |
| **MONTGOMERY COUNTY, MD.,** ) | |
| ) | |
| *Defendant*. ) | |

### PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO REMAND COUNTS I, II & III TO STATE COURT AND OPPOSITION TO DEFENDANT'S MOTION TO HOLD THE FEDERAL CLAIMS IN ABEYANCE

Plaintiffs respectfully submit this Opposition to the Motion filed by defendant, Montgomery County, Maryland ("the County" To Remand the State law claims set forth in Counts I, II & III of the Second Amended Complaint to State Court, filed December 9, 2022. Plaintiffs likewise oppose defendant's motion to hold the federal claims in Counts IV, V, VI, VII and VIII in abeyance pending full adjudication of the State law claims. For the reasons set forth below, defendant's remand and abeyance motion should be denied.

### ARGUMENT

A.   **The Verified Second Amended Complaint**

The statutory scheme presented in this case is set forth in Plaintiffs' pending Emergency Motion for a Temporary Restraining Order and Emergency Motion for a Preliminary Injunction, filed December 6, 2022 ("TRO and PI Motion"), and that pleading is incorporated herein by reference. Before this Court is the County's motion seeking a remand to State court of all the State law claims set forth in plaintiffs' Verified Second Amended Complaint ("SAC"), filed on November 30, 2022. The County also seeks to hold the federal constitutional claims in abeyance, pending full resolution of the State law claims in State court. That Second Amended Complaint

was necessitated by the County's enactment of Bill 21-22E, which became effective on November 28, 2022. See SAC ¶¶ 10-16.

Bill 21-22E amends County Code Section 57-11(a) to ban the possession, transport, sale or transfer of any firearm and "major components" of any firearm at or within 100 yards of a "place of public assembly." SAC, ¶ 13. A "place of public assembly" is newly redefined by Bill 21-22E to consist of:

> (1) a publicly or privately owned: (A) park; (B) place of worship; (C) school; (D) library; (E) recreational facility; (F) hospital; (G) community health center, including any health care facility or community-based program licensed by the Maryland Department of Health; (H) long-term facility, including any licensed nursing home, group home, or care home; (I) multipurpose exhibition facility, such as a fairgrounds or conference center; or (J) childcare facility; (2) government building, including any place owned by or under the control of the County; (3) polling place; (4) courthouse; (5) legislative assembly; or (6) a gathering of individuals to collectively express their constitutional right to protest or assemble." SAC, ¶ 11.

Another major change made by Bill 21-22E was to amend Section 57-11(b) of Chapter 57 of the County Code to eliminate the prior exemption for wear and carry permit holders from the bans otherwise imposed by Section 57-11(a). SAC, ¶ 85. Such wear and carry permits are issued by the Maryland State Police pursuant to MD Code, Public Safety, § 5-306. As thus amended, the bans imposed by Section 57-11(a) now apply equally to persons who have been issued a wear and carry permit. See TRO and PI Motion at 4.

Bill 21-22E was enacted in direct response to the Supreme Court's decision in *New York State Rifle & Pistol Association, Inc. v. Bruen,* 142 S.Ct. 2111 (2022), in which the Court held that the Second Amendment protected a right to carry a firearm in public while also making clear that a State may condition that right on obtaining a carry permit from the State, as long as the permit is issued on an otherwise reasonable and objective "shall issue" basis. *Bruen*, 142 S.Ct. at 2138 & n.9. As explained in plaintiffs' TRO and PI Motion, Bill 21-22E makes it impossible, as a practical matter, for any person with a Maryland wear and carry permit to exercise this

constitutional right to carry in Montgomery County. TRO and PI Motion at 24-25. Count VII of the Second Amended Complaint directly challenges the enactment of Bill 21-22E on that basis. The emergency relief sought in the TRO and PI Motion is limited to Count VII.

Bill 21-22E also amended those portions of Chapter 57 which imposed bans on "ghost guns." SAC, ¶ 11. A "ghost gun," as defined by the County, is simply a privately made firearm ("PMF") made for personal use and which thus lacks a serial number engraved by a federally licensed manufacturer or importer under 28 U.S.C. § 923(i). SAC, ¶¶ 17, 161. These PMF provisions are newly challenged in Count VIII, which alleges that the County's bans on "ghost guns" and "major components" violate the Second Amendment, as construed in *Bruen*. Also new in the Second Amended Complaint is Count V, which challenges the County's bans on "major components" of firearms as irrational and arbitrary under the Due Process Clause of the Fourteenth Amendment. That Count alleges that the unreasonable bans imposed by Chapter 57 with respect to "major components" interfere with the exercise of the fundamental Second Amendment right "to keep and bear Arms," and thus "are subject to strict scrutiny under the Due Process Clause." SAC, ¶ 126. The constitutional implications arising from the County's regulation of "major components" was previously briefed in State court as a reason to narrowly construe the County's authority otherwise accorded to the County by MD Code, Criminal Law, 4-209(b)(1). See, e.g., P. Opp. Def. Motion for Summary Judgment at 15. These bans on components are now newly alleged to be a violation of the Due Process Clause in Count V and a violation of the Second Amendment in Count VIII.

Count VI of the Second Amended Complaint is also new. That Count, which is brought under both the Due Process Clause of the Fourteenth Amendment and the Due Process Clause of Article 24 of the Maryland Declaration of Rights, alleges that the restrictions placed on parents of minor children by Chapter 57, as amended by Bill 4-21 and Bill 21-22E, violate the rights of

parents "in the care, custody, and control of their children." Such parental rights had previously been advanced in prior briefing in State court as a reason to narrowly construe the authorization otherwise accorded to the County by subsection 4-209(b)(1). See P. Op. To Def's Motion for Summary Judgment at 17. These restrictions on parents are now newly alleged to be a violation of the Due Process Clause of the Fourteenth Amendment and Article 24 of the Maryland Declaration of Rights in Count VI.

Count IV of the Second Amended Complaint continues to challenge Chapter 57 as unconstitutionally vague. However, the allegations in Count IV have been substantially revised to reflect changes made by Bill 21-22E. For example, prior to the enactment of Bill 21-22E, Chapter 57 imposed bans on the possession, transport, sale or transfer of any firearm or major component of any firearm at or within 100 yards of any "place of public assembly," which Bill 4-21 had defined to mean any place where the public "may assemble." SAC, ¶ 6. As noted above, Bill 21-22E changed that definition of "place of public assembly" to mean a long list of places, some of which are specifically challenged in Count IV as unconstitutionally vague. As thus revised by Bill 21-22E, a place of public assembly no longer is defined as a place where the public "may assemble." Bill 21-22E also changed the definition of "ghost guns," SAC, ¶ 11, for the stated purpose of bringing County law into compliance with recent legislation enacted by the Maryland General Assembly. See SAC, ¶ 93*o*. Nominal or compensatory damages are expressly sought on all the federal constitutional claims. SAC, Prayer for Relief, ¶¶ I, J.

The State law claims set forth in Counts I-III have also been revised to reflect changes made by Bill 21-22E. Count I continues to allege that Chapter 57, as amended by both Bill 4-21 and further amended by Bill 21-22E are not local laws under the Maryland Constitution. Count II alleges that Chapter 57, as amended by Bill 4-21 and Bill 21-22E violate the Maryland Express Powers Act by being inconsistent or in conflict with multiple provisions of Maryland law. The

Takings claim in Count III is updated to include the changes made by Bill 21-22E but is otherwise unchanged from the First Amended Complaint and the original complaint.

### B. The Federal Constitutional Claims Now Predominate

The County erroneously claims that the State law claims are "still substantially predominant" as they did under the initial complaint, filed in May of 2021. County Motion at 10. Even the most causal examination of the Second Amended Complaint makes evident that the County's assertion is false because the nature of the case has changed substantially with the decision in *Bruen* and the enactment of Bill 21-22E by the County. Unlike the initial complaint, the Second Amended Complaint challenges the constitutionality of Chapter 57, as amended by Bill 4-21 and Bill 21-22E, *regardless* of the authority otherwise conveyed to the County by subsection 4-209(b)(1). SAC, ¶¶ 154, 168.

For example, *Bruen* holds that a State presumptively may regulate firearms only with respect to five very specific "sensitive areas" expressly identified in *Bruen*, *viz.,* courthouses, schools, legislative assemblies, government buildings and polling places. *Bruen*, 142 S.Ct. at 2133. Regulations beyond those five areas are presumptively unconstitutional. (Id.). Unlike the authority accorded by subsection 4-209(b)(1), the Second Amendment does not permit the County to designate exclusion zones, like within 100 yards of a particular type of location. Under *Bruen*, the burden is on the County to show "a well-established and representative historical analogue" dating back to *circa* 1791 if it seeks to justify banning firearms in locations beyond the five identified in *Bruen*. Id. The controlling "metric" is "whether modern and historical regulations impose a comparable burden on the right of armed self-defense, and second, whether that regulatory burden is comparably justified." Id. Count VII of the Second Amended Complaint alleges that the County did not even attempt to carry its burdens in enacting Bill 21-22E. SAC, ¶¶ 149, 151,160.

As plaintiffs' TRO and PI Motion makes plain, there is no constitutional justification for any regulation in *any* 100-yard exclusion zone. Likewise, there is no historical analogue for gun bans in a "church" or a "park," or in places of "public assembly," including most of the areas now enumerated by Bill 21-22E in its newly-minted definition of "place of public assembly." In short, any adjudication of the State law claims cannot possibly render it unnecessary to decide the Second Amendment claim set forth in Count VII because subsection 4-209(b)(1) authorizes regulation in precisely those areas in which regulation is presumptively *precluded* under *Bruen*. The Second Amendment trumps any such authority accorded by subsection 4-209(b)(1), regardless of how it is interpreted. No Second Amendment claim was alleged in the initial complaint because controlling authority, now abrogated by *Bruen*, then held that the Second Amendment did not apply outside the home at all. SAC, ¶ 137. The Second Amendment claims thus predominate over any claim that the County exceeded its authority accorded by subsection 4-209(b)(1).

The same is true with the other federal constitutional claims newly set out in the Second Amended Complaint. For example, Count VIII challenges the County's total ban on "ghost guns" and "major components" of **all** firearms, alleging that these items are constitutionally protected arms and thus may not be banned regardless of the authorization otherwise accorded by subsection 4-209(b)(1). The test articulated in *Bruen* for firearms regulation, SAC, ¶ 138, is controlling on that question. SAC, ¶ 164. While Count II alleges that the County's ban on ghost guns conflicts with State law with respect to several specific provisions (Count II, ¶ 92*o*), a ruling on that claim would not eliminate the County's unconstitutional bans with respect to "ghost guns" and components because, under the severability provision enacted by Bill 21-22E (SAC, ¶ 15), only the inconsistent parts of the County's bans would be stricken, leaving the bans themselves in place. Such a holding would leave unaddressed plaintiffs' contention (Count VIII)

that the bans themselves are a violation of the Second Amendment, regardless of whether such bans are consistent with State law. SAC, ¶ 168.

Similarly, the preemption claims in Count II address specific Maryland statutes preempting local regulation of the "sale," the "transfer" and "possession" of "regulated firearms" (handguns) and the "transfer" of long guns. SAC ¶ 93. The bans imposed by Chapter 57-11 are more expansive than these preemption provisions. Under the initial complaint, plaintiffs argued that the authority accorded by subsection 4-209(b)(1) must be narrowly construed in light of these other provisions of State law, not that subsection 4-209(b)(1) was totally ousted. See P. Mem in Opp. To Def.'s Motion for Summary Judgment at 9, 18. Those arguments would accord plaintiffs less relief than that available under the federal claims, as they would leave in place some County regulations that are nonetheless still violative of the Due Process Clause and the Second Amendment.

Similarly, subsection 4-209(b)(1)(i) expressly allows the County to regulate firearms with respect to "minors." Count VI alleges that the County has done so in a manner that violates the parents' constitutional rights "in the care, custody, and control of their children." SAC, ¶ 132. Plaintiffs had previously argued that subsection 4-209(b)(1)(i) should be narrowly construed in light of parents' rights. Those parental rights were not independently asserted in a separate count, as they are now in the Second Amended Complaint.

The vagueness claims in Count IV are likewise different than the vagueness claims presented in the initial complaint and in the First Amended Complaint. Bill 22-21E eliminated Bill 4-21's definition of "place of public assembly" as including any place where the public "may assemble," an impossibly vague term. Similarly, Bill 4-21 never defined the term "unfinished frame or receiver" in including such items in its bans on "ghost guns." SAC, ¶ 6. Bill 21-22E has now defined "ghost gun" to incorporate by reference the approach adopted by the

federal ATF in regulations that became effective on August 24, 2022. SAC, ¶ 16. Those ATF regulations are likewise incorporated into State law in legislation enacted during the 2022 Session of the General Assembly. See SAC ¶¶ 19, 40, 123. Plaintiffs have not challenged that federal definition in the Second Amended Complaint.

However, the vagueness Count remains critically important because the vagueness of *other* provisions enacted by Bill 21-22E are highly relevant under other Counts of the Second Amended Complaint. For example, the County's bans are imposed at and within 100 years of a *privately* owned "recreational facility" or "health care facility" or "library" or "park" or "long term facility" or "school" *without regard* to whether such privately owned locations are even open to the public. The scope of each of these terms is vague and thus magnify the *in terrorem* effect created by Bill 21-22E for carry permit holders and others, especially since Bill 21-22E has no *mens rea* requirement and thus creates a strict liability crime. That vagueness is relevant in assessing the extent and reach of the bans imposed by Bill 21-22E and thus their constitutionality under the Second Amendment, as alleged in Count VII and Count VIII, and under the Due Process Clause, as alleged in Count V. See SAC, ¶ 146; TRO and PI Motion at 13, 17-18, 23-25. The test established in *Bruen* is central to that analysis.

In sum, the State law claims presented in Counts I, II, and III are now outnumbered and vastly outweighed in importance by the federal constitutional claims presented in Counts IV, V, VI, VII and VIII. No adjudication of any State law claim could possibly award all the relief requested in these federal claims. The current situation is far different than that presented when the County removed the initial complaint in July of 2021. As then constituted, the case presented three State law claims (Counts 1, II, III) and one combined federal and State constitutional claim, the vagueness claim in Count IV. Thus, as this Court noted in its February 7, 2022, remand decision ("Remand Op."), the initial complaint was "primarily a dispute over the scope of a local

government's authority to legislate under state law." Mem. Op. at 11, citing *Kimberlin v. Nat'l Bloggers Club*, No. GJH-13-3059, 2015 WL 1242763, at *18 (D. Md. Mar. 17, 2015) (declining to exercise supplemental jurisdiction because "no federal policy . . . would be furthered" by the Court presiding over state law claims and one federal claim). No longer. With the decision in *Bruen* and the County's enactment of Bill 21-22E, the issues presented in this case have radically changed. The federal constitutional claims now predominate by far. See *Campbell–McCormick, Inc. v. Oliver,* 874 F.3d 390, 393 (4th Cir. 2017).

### C. Adjudication Of The Federal Constitutional Claims Cannot Be Avoided

The County erroneously claims that "resolution of this case on state-law authority grounds would permit this Court to avoid unnecessarily deciding federal constitutional questions." County Motion at 8, 10. Yet, it should be obvious that adjudication of the State law claims cannot possibly resolve this case if only because subsection 4-209(b)(1), the only source of authority claimed by County, expressly gives the County *some* authority to act with respect to "minors" and with respect to places "within 100 yards of or in a park, church, school, public building, and other place of public assembly." Again, under the initial complaint, plaintiffs argued that the County's authority subsection 4-209(b)(1) must be narrowly construed, not that the County has no authority. In contrast, the federal constitutional claims contend that Chapter 57, as amended by Bill 4-21 and further amended by Bill 21-22E, has crossed federal constitutional lines *regardless of* the scope of the County's power under subsection 4-209(b)(1). SAC ¶¶ 154, 168.

The "constitutional avoidance" principle on which the County relies obtains only where the *whole* case can be "disposed of" by adjudicating the State law claims. *Hugger v. Rutherford Inst.*, 63 F. App'x 683, 692 (4th Cir. 2003); *Bell Atl. Md., Inc. v. Prince George's County*, 212 F.3d 863, 865 (4th Cir. 2000). The Fourth Circuit thus explained in *Columbia Venture, LLC v.*

*Dewberry & Davis, LLC*, 604 F.3d 824, 828 (4th Cir. 2010), that "'an independent state law ground is one that *allows us to avoid deciding a constitutional question*.'" (Emphasis added). The same point was stressed in *MediaOne Group, Inc. v. County of Henrico*, 257 F.3d 356, 362 (4th Cir. 2001). There, the court of appeals refused to apply the avoidance principle where State law embraced federal law and thus deciding the state law claim would likewise decide the federal claim. The court reasoned that in such circumstances, the state law claim was "not independent because it does not allow us to 'avoid deciding [the] constitutional question[].'" Quoting *Bell Atlantic*, 212 F.3d at 865 (brackets the court's).

More generally, "the canon of constitutional avoidance is only applicable where a statute has "more than one plausible construction." *Johnson v. Arteaga-Martinez*, 142 S.Ct. 1827, 1833 (2022), quoting *Jennings v. Rodriguez*, 138 S.Ct. 830, 842 (2018). The doctrine instructs courts to adopt the "plausible construction" that would avoid the constitutional issue. *Clark v. Martinez*, 543 U.S. 371, 380-81 (2005). The doctrine does not permit a court to avoid constitutional adjudications by adopting "implausible" or unreasonable constructions. See, e.g., *United States v. Simms*, 914 F.3d 229, 251 (4th Cir. 2019) ("Where, as here, there is an 'absence of more than one plausible construction, the canon of constitutional avoidance "'simply has no application.'"), quoting *Jennings*, 138 S.Ct. at 842. As the Fourth Circuit has stressed, "[t]his limitation is an important one" because "'[s]potting a constitutional issue does not give a court the authority to rewrite a statute as it pleases.'" *Simms*, 914 F.3d at 251, quoting *Jennings*, 138 S.Ct. at 843. A court "'cannot ignore the text and purpose of a statute in order to save it.'" *SEC v. Pirate Investor, LLC,* 580 F.3d 233, 253 (4th Cir. 2009), quoting *Boumediene v. Bush*, 553 U.S. 723, 787 (2008).

Here, no court (State or federal) could plausibly construe the language in subsection 4-209(b)(1) and Chapter 57, as amended by Bill 4-21 and Bill 21-22E, in such a way as to avoid

completely the federal claims. As noted, subsection 4-209(b)(1) expressly permits the County to regulate possession and transport in "parks," "churches," "schools" and other "places of public assembly" and "within 100 yards" of these locations. As plaintiffs' TRO and PI Motion makes clear (Memo. at 27-31), these are among the very places that the County may **not** regulate under the Second Amendment, as construed in *Bruen*. See TRO and PI Motion at 13, 15, 19, 25. While it might be possible to narrowly construe "school" to avoid the constitutional issue by limiting the term to public primary and secondary schools attended by minors thus excluding trade schools and institutions of higher education, such a narrowing construction is not reasonably plausible with respect to these *other* specific places set forth in subsection 4-209(b)(1), as employed by the County in enacting Bill 21-21E.

For example, the County undoubtedly goes too far under State law (Counts I and II) in banning all firearms at or within 100 yards of a "privately owned park" because subsection 4-209(b)(1) cannot be reasonably construed to authorize such regulation of a "private" park. Indeed, the term "privately owned park" is inordinately vague, especially since the text of the ordinance would include "privately owned" places that are not even open to the public. SAC, ¶ 113. But Bill 21-22E *also* expressly regulates a "publicly owned park" and subsection 4-209(b)(1) undoubtedly expressly authorizes regulation at and within 100 yards of a *public* park. There is no historical analogue for such a ban in public park, much less a 100-yard exclusion zone around such a park. See TRO and PI Motion at 27-30. Similarly, subsection 4-209(b)(1) expressly authorizes a 100-yard exclusion zone, but such zones have no historical analogue and thus unquestionably violate the Second Amendment, as alleged in Count VII. TRO and PI Motion at 13, 20-21, 25, 31.

Likewise, subsection 4-209(b)(1) authorizes regulation at and within 100 yards of a "church," and Bill 21-22E imposes firearms bans at a "place of worship." There is no plausible

interpretation of "place of worship" that would exclude churches. Nor it reasonable to suppose that a State court would construe subsection 4-209(b)(1) to exclude places of worship other than churches. There is no historical analogue for such regulation at a church or a place of worship, much less within 100 yards of such places. The County's bans with respect to churches (and other places of worship) fail under the Second Amendment. See TRO and PI Motion at 22-27.

Similarly, County regulation at and within 100 yards of a "place of public assembly" is authorized by 4-209(b)(1) and there is no doubt that the term can be narrowly construed, as plaintiffs argued under the initial complaint. But whatever a "place of public assembly" can be construed to mean, a *categorical* gun ban in such exclusion zones, such as authorized by subsection 4-209(b)(1), cannot survive a Second Amendment challenge because there is no historical analogue that could justify a categorical ban on firearms at or within 100 yards of *any* "place of public assembly." While *Bruen* identifies the five sensitive locations which might be viewed as places of public assembly, nothing in *Bruen* suggests that a 100-yard exclusion zone around even these five places is supported by any historical analogue. See TRO and PI Motion at 11, 21-22. A categorical ban on possession at or within 100 yards of all places of public assembly, as authorized by subsection 4-209(b)(1), is unconstitutional, regardless of how the term "place of public assembly" is construed.

The same is true for the other federal claims. Subsection 4-209(b)(1) expressly allows the County to regulate "components," and the County defines the term "major component" as the slide or cylinder of a handgun and the barrel of a rifle or shotgun. See SAC, ¶ 6; County Code § 57-1 (definitions). Section 57-11(a) then imposes its bans on a "major component" of firearms as well as on firearms. There is no plausible construction of "components" as used in subsection 4-209(b)(1) that could *exclude* these items and thus avoid adjudicating plaintiffs' claim, in Count V, that the County's bans on a "major component" violates the Due Process Clause of the

Fourteenth Amendment. Nor could any plausible construction of "components" avoid plaintiffs' claim in Count VIII that the County's bans on a "major component" (and PMFs) violate the Second Amendment. Likewise, subsection 4-209(b)(1) authorizes regulation with respect to "minors," and there is no plausible interpretation of "minors" that would avoid the need to adjudicate whether the County has done so in violation of parental rights protected by the Due Process Clause, as alleged in Count VI.

Finally, the County's newly minted reliance on the constitutional avoidance doctrine is dramatically inconsistent with its prior arguments in State court. Specifically, at the July 19, 2022, Hearing in State court, the County vigorously argued that the State court should ignore *Bruen* in adjudicating the then-pending cross-motions for summary judgment because at that time the initial complaint did not state a Second Amendment claim. As noted, plaintiffs had argued that authorization accorded by subsection 4-209(b)(1) should be narrowly construed in light of *Bruen*, an approach the County rejected. Indeed, the County asserted that subsection 4-209(b)(1) should be read broadly and that Bill 4-21 was *completely* outside the scope of the Express Powers Act. Transcript of July 19, 2022, Hearing, at 17-31 (attached herewith as Exh. A). A severance and remand of the State law claims would allow the County to take the same position on remand and thus ignore the very constitutional avoidance principles on which the County now relies. Such "never mind" tactics should not be rewarded.

### D.     This Court Has A "Duty To Adjudicate" The Constitutional Issues

Holding the federal claims in Counts IV, V, VI, VII, and VIII in abeyance while remanding Counts I, II and III would be impermissible, where, as here, a remand of the State law claims could not "obviate the need to litigate the federal claim to completion." Remand Op. at 11. There is no thus valid reason to wait for the State law claims to be adjudicated. To the contrary, in such circumstances, this Court has an affirmative duty to exercise its jurisdiction.

See *Mata v. Lynch,* 576 U.S. 143, 150 (2015) ("And when a federal court has jurisdiction, it also has a 'virtually unflagging obligation ... to exercise' that authority.") (citation omitted). Accord *Washington Gas Light Co. v. Prince George's Cnty. Council*, 711 F.3d 412, 418 (4th Cir. 2013). See also *Edwards v. Sammons*, 437 F.2d 1240 (5th Cir. 1971) (voting rights); *Ross v. Houston Independent School District*, 559 F.2d 937 (5th Cir. 1977) (school desegregation rights).

Specifically, a federal court may not abstain or hold in abeyance (the functional equivalent of abstention) a constitutional claim over the plaintiffs' objection in the absence of exceptional circumstances. The County removed this case to federal court and thus no parallel State court proceedings now exist. In such cases, abstention is categorically improper and "federal courts must normally fulfill their duty to adjudicate federal questions properly brought before them." *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 238 (1984). See also *Jonathan R. by Dixon v. Justice*, 41 F.4th 316, 327-32 (4th Cir.), *cert. denied,* 143 S.Ct. 310 (2022) (collecting cases); *Tokyo Gwinnett, LLC v. Gwinnett County*, 940 F.3d 1254, 1266-67 (11th Cir. 2019) (same).

Even if parallel State court proceedings *did* exist, an abeyance order would *still* be inappropriate. In such cases, the "relevant inquiry is not whether there is a bare, though unlikely, possibility that state courts might render adjudication of the federal question unnecessary," but rather "abstention is not to be ordered unless the statute is of an uncertain nature, and is obviously susceptible of a limiting construction." *Midkiff*, 467 U.S. at 237, quoting *Zwickler v. Koota*, 389 U.S. 241, 251 & n.14 (1967). See also *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 81-82 (2013) ("our dominant instruction that, even in the presence of parallel state proceedings, abstention from the exercise of federal jurisdiction is the 'exception, not the rule'") (citation omitted); *Jonathan by Dixon*, 41 F.4th at 328-29 (discussing *Sprint*); *Ewell v. Toney*, 853 F.3d 911, 916-17 (7tth Cir. 2017) (reversing abstention order). Here, as explained, there is

no "obvious" "limiting construction" that would remove the need to decide the constitutional claims. A remand of the State law claims would thus pointlessly *create* parallel proceedings where none now exist.

### E. Holding The Federal Claims In Abeyance Would Be Manifestly Unfair

Holding the federal claims in abeyance would also be grossly unfair to plaintiffs. First, such an order would impermissibly countenance the County's ongoing violations of plaintiffs' constitutional rights. These violations could continue for years while the State law claims were litigated to final judgment in the State court system. Constitutional rights cannot be treated so cavalierly. In particular, Second Amendment rights are entitled to no less consideration than other constitutional rights. As *Bruen* holds, "[t]he constitutional right to bear arms in public for self-defense is not 'a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees.'" *Bruen*, 142 S.Ct. at 2156, quoting *McDonald v. City of Chicago*, 561 U.S. 742, 780 (2010) (plurality opinion).

Second, the County's removal stripped the State court of its concurrent jurisdiction to consider the federal constitutional claims, thereby insulating the County from *Bruen* in that forum. Remanding the State law claims and holding federal constitutional claims in abeyance in this Court would mean that there would be **no** court actively adjudicating the County's denial of the fundamental constitutional rights. Even assuming *arguendo* that the Court had the discretion to stay indefinitely the federal claims over plaintiffs' objections, the County has not even attempted to justify such a stay under the test imposed by controlling precedent. See *Landis v. North American Co.,* 299 U.S. 248, 255 (1936) ("the suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else"); *Williford v. Armstrong World Industries, Inc.*, 715 F.2d 124, 127-28 (4th Cir. 1983) (sustaining a refusal to stay proceedings

pending resolution of another case, holding "proper use of this [stay] authority 'calls for the exercise of judgment which must weigh competing interests and maintain an even balance'" and that "[t]he party seeking a stay must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative"), quoting *Landis*, 299 U.S. at 254-55. See also *Belize Social Development Ltd. v. Government of Belize*, 668 F.3d 724, 732-33 (D.C. Cir.), *cert. denied*, 568 U.S. 882 (2012) (on a writ of mandamus, applying *Landis* and reversing a stay as unjustified by any "pressing need").

Finally, it should be apparent that the County is impermissibly attempting to manipulate the removal and remand process in order to delay and frustrate **any** adjudication of plaintiffs' constitutional claims. *Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611, 617 (4th Cir. 2001) ("a court should consider 'principles of economy, convenience, fairness, and comity' and 'whether the efforts of a party in seeking remand amount to a 'manipulative tactic'"), quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988). Such tactics seek delay for the sake of delay and should not be tolerated. See, e.g., *ATSI Comm., Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 154 n.11 (2d Cir. 2009) (noting that a suit filed to gain a tactical advantage and not to vindicate the party's rights is an improper purpose).

### F. The Path Forward

Prompt adjudication of the federal constitutional claims in Counts IV, V, VI, VII and VIII in plaintiffs' favor would likely leave only the Takings claim in Count III still at issue. The State law questions presented by Counts I and II would be effectively moot as the relief under federal claims would, as explained above, go well beyond any relief available under Counts I and II. Plaintiffs may well elect to dismiss these State law claims should they prevail on their federal claims. The Court should thus adjudicate the federal claims first and *then* determine whether to remand any remaining state law claims, such as the Takings claim of Count III. See *Wood v.*

*Crane Co.*, 764 F.3d 316, 321 (4th Cir. 2014), *cert. denied*, 574 U.S. 1156 (2015) ("'a federal district court has discretion under the doctrine of pendent jurisdiction to remand a properly removed case to state court when all federal-law claims in the action have been eliminated and only pendent state-law claims remain"), quoting *Carnegie–Mellon*, 484 U.S. at 345.[1]

The Court could also certify any remaining State law claims to the Maryland's highest court, just as the County suggested in opposing remand of the State law claims after the County removed the initial complaint in July of 2021. Maryland has such a certification provision. MD Code, Courts & Judicial Proceedings, § 12-603. See *Grattan v. Board of School Com'rs of Baltimore City*, 805 F.2d 1160, 1164 (4th Cir. 1986) ("A federal court's certification of a question of state law to that state's highest court is appropriate when the federal tribunal is required to address a novel issue of local law which is determinative in the case before it."); *Colonial Props., Inc. v. Vogue Cleaners, Inc.*, 77 F.3d 384, 387 (11th Cir. 1996) ("[W]here there is any doubt as to the application of state law, a federal court should certify the question to the state supreme court to avoid making unnecessary ... 'guesses' and to offer the state court the opportunity to interpret or change existing law."). The Supreme Court has strongly favored such certifications on State law questions. See, e.g., *McKesson v. Doe*, 141 S.Ct. 48 (2020); *Bellotti v. Baird*, 428 U.S. 132, 151-52 (1976); *Lehman Brothers v. Schein*, 416 U.S. 386, 391 (1974).

Either route would fall within this Court's discretion, and either is acceptable to plaintiffs *after* a decision by this Court on the federal claims. That said, certification is the better path as it would lead to a precedential decision on the State law questions much more quickly than a remand to the trial court. We certainly see no reason for *this* Court to decide these State law

---

[1] The Court could, of course, adjudicate the federal claims and, at the same time, remand the State law claims. The County expressly opposes such a remand. County Motion at 14. The correct approach is to decide the federal constitutional claims first and *thereafter* remand or certify the remaining State law claims, as explained above.

claims. Such a decision would be essentially a non-precedential opinion on these difficult State law issues. Any decision by this Court on the State law claims could simply be ignored by the County in the next case, just as it has continuously ignored this Court's prior holding, in *Mora v. City of Gaithersburg*, 462 F. Supp. 2d 675, 690 (D. Md. 2006), *modified on other grounds*, 519 F.3d 216 (4th Cir. 2008), that "the exceptions [in subsection 4-209(b)(1)] to otherwise blanket preemption [in subsection 4-209(a)] are narrow and strictly construable." See Remand Op. at 9.

## CONCLUSION

For the foregoing reasons, the County's motion to remand Counts I, II & III of the Amended Complaint and to hold the federal constitutional claims in abeyance should be denied.

Respectfully submitted,

*/s/ Mark W. Pennak*

MARK W. PENNAK
Maryland Shall Issue, Inc.
9613 Harford Rd., Ste C #1015
Baltimore, MD 21234-21502
mpennak@marylandshallissue.org
Phone: (301) 873-3671
District Court Bar No. 21033

*Counsel for Plaintiffs*

Dated: December 23, 2022