IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

```
-------------------------------X
                                :
MARYLAND SHALL ISSUE, ET AL.,   :
                                :
         Plaintiffs,            :
                                :
              v.                :     Civil No. 485899
                                :
MONTGOMERY COUNTY MARYLAND,     :
                                :
         Defendant.             :
                                :
-------------------------------X
```

MOTIONS HEARING

Rockville, Maryland                                    July 19, 2022

**EXHIBIT A**

Deposition Services, Inc.
P.O. Box 1040
Burtonsville, Maryland 20866
(301) 881-3344

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

```
------------------------------X
                              :
MARYLAND SHALL ISSUE, ET AL., :
                              :
        Plaintiffs,           :
                              :
             v.               :     Civil No. 485889
                              :
MONTGOMERY COUNTY MARYLAND,   :
                              :
        Defendant.            :
                              :
------------------------------X
```

Rockville, Maryland

July 19, 2022

WHEREUPON, the proceedings in the above-entitled matter commenced

BEFORE:   THE HONORABLE JILL REID CUMMINS, JUDGE

APPEARANCES:

FOR THE PLAINTIFFS:

MARK W. PENNAK, Esq.
7416 Ridgewood Avenue
Chevy Chase, Maryland 20815

FOR THE DEFENDANT:

EDWARD B. LATTNER, Esq.
SEAN C. O'HARA, Esq.
Montgomery County Attorney's Office
101 Monroe Street, Third Floor
Rockville, Maryland  20850

```
 1  Court should so hold.
 2              THE COURT:  Okay.
 3              MR. PENNAK:  I'd be happy to answer any court
 4  questions.
 5              THE COURT:  Thank you.  Thank you, Mr. Pennak.
 6              MR. PENNAK:  Thank you.
 7              THE COURT:  All right.  On behalf of the County.
 8              MR. LATTNER:  Thank you, Your Honor.  Edward Lattner
 9  again for the County.  Contrary to what I was taught in law
10  school, I'm going to start very briefly with the least
11  important thing, which is Bruen, which may be an elephant, but
12  it's not in the room, and it's not in the room because there is
13  no Second Amendment claim in this case, although plaintiffs
14  have peppered their pleadings with references, and have filed
15  an entire supplement dedicated to the Second Amendment.  There
16  is in fact no Second Amendment claim.  So, there is nothing for
17  the Court to decide on that issue.  That's the short answer.
18              Beyond that, the plaintiff, I'm sorry, the county has
19  removed the federal claims to federal court, where count four,
20  the due process claim under the Fourteenth Amendment is still
21  pending, and I have to imagine the county would also be seeking
22  to remove any Second Amendment claim to federal court as well,
23  and that's if the plaintiffs decide to amend and actually state
24  a Second Amendment claim.
25              I'll also note that this is a challenge to Bill 4-21,
```

1  not to the statute as a whole.  This complaint is cast, and the
2  case has been argued as to challenge to 4-21, which was
3  amendments to the county's firearm law with regard to ghost
4  guns, and undetected guns.  So, that's enough said about the
5  Second Amendment.
6          Also, let me just, another preliminary matter.
7  Plaintiffs refer to this repeatedly as a ban, a ban.  It's not
8  a ban.  It is, it is, or it is a ban only to the extent of the
9  presence of children, and places of public assembly, which is
10 precisely what the state has allowed the county to regulate.
11 It is not a, a county-wide ban on firearms throughout the
12 county.
13         So, we ask that you grant the County's motion for
14 summary judgment, and enter a declaratory judgment, finding
15 that Bill 4-21 is not preempted by, or in conflict with state
16 law, and does not amount to a taking under state law.  My
17 co-counsel, Sean O'Hara, will address briefly the takings
18 claim.
19         The state has, it is true, expressly preempted much
20 firearm regulation at the local level, but since 1985, in
21 statute 4-209 of the Criminal Law Article, the state has
22 specifically, and expressly authorized local regulation of
23 firearms with respect to minors, and within 100 yards of or in
24 a park, church, school, public building, and other place of
25 public assembly.  Field 4-21 fits within that authorization.

1   For decades the county has enacted laws under 4-209, in 1991
2   and again in 1997 the Attorney General opined that these county
3   laws were specifically authorized by 4-209 and were not
4   preempted by the more general state preemption provisions that
5   the plaintiffs now rely on.
6           The plaintiffs would ask this Court to disregard that
7   explicit authorization.  Bill 4-21 extends the County's
8   regulation to unserialize ghost guns, and undetectable guns,
9   and the bill fits comfortably within 4-209.  Unless there are
10  any questions I wasn't going to address the standing issues.
11  We set those out in our motion to dismiss, and instead I'd like
12  to turn to the motion for summary judgment.
13          THE COURT:  Okay.
14          MR. LATTNER:  And first, the local law issue.
15          THE COURT:  So, wait a minute.  Wait a minute.  So, I
16  just want to make sure.  So, now you're moving to your
17  affirmative motion, as opposed to the opposition to the
18  plaintiff's motion.
19          MR. LATTNER:  Well --
20          THE COURT:  I know they overlap.  I know they
21  somewhat overlap.  I just want to be --
22          MR. LATTNER:  Right.  I'm moving --
23          THE COURT:  -- want to be clear on what we're, where
24  we're transitioning to.
25          MR. LATTNER:  Yes, I'm moving from the dismissal

Case 8:21-cv-01736-TDC   Document 58-1   Filed 12/23/22   Page 6 of 17

20

1  grounds based on standing, to the summary judgment because this
2  Court's going to have issue a declaratory judgment, one way or
3  the other, on the validity of Bill 4-21.  So, I'm moving to
4  the -- to our motion/opposition, their motion on validity on
5  Bill 4-21.
6          THE COURT:  Okay.
7          MR. LATTNER:  And the first issue under that is the
8  issue of local law, and I'll note as an initial matter, the
9  argument that the County has exceeded its authority under the
10 Express Powers Act, fails because in enacting Bill 4-21, the
11 County was not acting under the Express Powers Act.  It is
12 acting under a grant of authority outside the Express Powers
13 Act.
14         I think the plaintiffs have led us down a road of
15 Express Powers Act, which is certainly where most of the
16 County's authority comes from, that is true, but in this case
17 there was a specific provision in the criminal law article,
18 that is 4-209, that is the authority for the county to enact
19 its firearms law.  There are examples where the county
20 exercises authority outside the Express Powers Act.  The
21 county's zoning authority comes from something called the
22 Regional District Act, which is in the Land Use Article, I
23 think it's Division 2 of the Land Use Article.
24         The County's authority to impose excise taxes also
25 comes outside the Express Powers Act, and there are other

1  examples, but issues of local law, and intrusion on state
2  interests, under the Home Rule Amendment, and the Express
3  Powers Act, are not applicable where the county is exercising
4  authority outside of the Express Powers Act.
5        Having said that, let me go on to address the Home
6  Rule Amendment, and the Express Powers Act.  Even under those
7  authorities, the bill is a valid local law.  The Home Rule
8  Amendment, which is the amendment to the Maryland Constitution,
9  represents a bargain of sorts.  Charter counties can enact
10 local laws on a subject covered by the Express Powers Act if it
11 doesn't conflict with, and is not preempted by state law, and
12 I'll be discussing preemption and conflict next.
13       But the Home Rule Amendment, the only definition that
14 provides that the term local law, is a law that is limited to
15 the jurisdiction of the county.  It doesn't have any other
16 definition, and there is only one decision the County is aware
17 of, where a local law, a county local law was struck down even
18 though it's impact was limited to the jurisdiction of the
19 county, and that was because that law, it clearly intruded on
20 well-defined state interests, and that case is <u>McCrory versus
21 Powell</u> (phonetic sp.), which we discuss in our memorandum.
22       That was a law, that was a 1990 Court of Appeals
23 decision, Montgomery enacted a law that purported to create a
24 private cause of action for violation of our county local
25 employment discrimination law, and the Court of Appeals said,

1 creating a new cause of action is the province of the General
2 Assembly for the courts of Maryland under their authority to
3 modify the common law, and so, the County does not have
4 authority to create a private cause of action. That is not a
5 local law, even if confined to the jurisdiction of Montgomery
6 County.
7       The Court made clear that the county didn't overstep
8 it's authority because it was addressing employment
9 discrimination, which is a statewide problem, but because it
10 had created a judicial cause of action. Indeed, the Maryland
11 courts have upheld a variety of county laws that address
12 matters of statewide concern because they were proper local
13 laws.
14       For example, the county has laws regarding housing
15 discrimination. The county has laws prohibiting discrimination
16 in places of public accommodation, even though these are
17 matters of public, of statewide concern, and are in fact the
18 subject of statewide legislation. It does not mean that this
19 is a local law. The test is not simply, oh, this is a matter
20 of statewide concern, therefore you can't regulate that. That
21 is not the test.
22       So, Bill 4-21 is a local law. It's limited to the
23 county. It does not create a private cause of action, and more
24 importantly, as I'll talk about some more in a minute, it's
25 expressly authorized by 4-209.

1            The cases that the plaintiffs rely on are in
2   apposite.  The Home Rule Amendment also provides that once a
3   county chooses a charter form of government, the state cannot
4   enact a public local law for a county on a matter covered by
5   the Express Powers Act.  So, for example, the General Assembly
6   couldn't enact a law regulating procurement within Montgomery
7   County alone because Montgomery County has authority to address
8   procurement under the Express Powers Act, and the General
9   Assembly can't do that just for Montgomery County.
10           All the cases that are cited by the plaintiffs
11  involve situations where a state public local law, on a subject
12  covered by the Express Powers Act, was still held to be a
13  permissible local law because there was some nexus to the
14  state.  So, these cases are <u>Norris</u> from 1937 - from 1936,
15  <u>Gaither</u> from 1925.  These all upheld state public local laws.
16  These were state laws that applied only to Baltimore City, but
17  they were still upheld because there was some state nexus in
18  each of these cases.  The cases did not involve the validity of
19  a county local law, which is what we have here in this case.
20           Let me turn to preemption and conflict now, and I'll
21  start with, as we mentioned in our paper, there is a
22  presumption against finding preemption and conflict.  First,
23  I'll talk about express preemption.  Bill 4-21 is not expressly
24  preempted by state law, and it is in fact, it's supported by
25  4-209, it's supported by 4-209's plain language, it's

1  legislative history, and its prior interpretation.  First,
2  we'll talk about the plain language.  4-209, the criminal law
3  article, authorized counties to regulate the purchase, sale,
4  transfer, ownership, possession and transportation of handguns,
5  rifles, shotguns, their ammunition, and their component parts
6  with respect to minors, and within a 100 yards of, or in a
7  park, church, school, public building and other place of public
8  assembly.  Bill 4-21 operates within that authority.
9           Now, the plaintiffs argue that the Bill's definition
10 of place of public assembly is not supported by 4-209, but the
11 Bill's definition of place of public assembly fits comfortably
12 within the definition in 4-209.  Again, 4-209 is not limited to
13 parks, churches, schools and public buildings.  Those are
14 merely examples provided in the state law.
15          The plaintiffs criticize the Bill's inclusion of
16 places of public assembly on private property, but 4-209
17 includes a church as a specific example of a place of public
18 assembly because churches are not typically built on public
19 land.  The General Assembly made clear that a place of public
20 assembly includes private property where the public may
21 assemble.
22          The plaintiffs seek to a draw a difference between
23 the phrase in 4-209, place of public assembly, and the bill's
24 phrase, place where the public may assemble.  The County
25 submits there is no difference in this wording.  They are

1  places of public assembly.  It's the same thing.
2           Plaintiffs argue that the bill regulates ghost and
3  undetectable guns in homes, that because it regulates, I'm
4  sorry, ghost and undetectable guns in homes, that is therefore
5  defined a home as a place of public assembly, that is not true.
6  The law prohibits storing or leaving a ghost of undetectable
7  gun in a location that person knows, or should know is
8  accessible to a minor.  That does not mean your home is a place
9  of public assembly.
10          Likewise, the bill prohibits possession a ghost or
11 undetectable gun in your home if your home is within 100 yards
12 of a place of public assembly.  That does not mean your home is
13 a place of public assembly.  That section applies, again, if
14 your home is within 100 yards of a place of public assembly.
15 So, Bill is consistent with the places of public assembly
16 identified in 4-209.
17          Let me talk a little bit about the legislative
18 history of 4-209, that also supports the county bill.  The
19 legislative history reveals that 4-209 was intended to be an
20 exception to the more general express preemption found
21 elsewhere in the state code.  This is detailed in the 1991 AG
22 opinion, that's 76 Op. Atty. Gen. Md. 240, that we discuss at
23 some length in our motion, and I won't, I'm not going to repeat
24 everything that's in there, but it talks about how the General
25 Assembly passed a bill in '84.  It would have removed most

1  local authority of over firearms.  The governor vetoed that
2  bill noting it would invalidate beneficial existing local
3  regulation, including regulation that was related to firearms
4  and minors, and possession in places of public assembly.  The
5  General Assembly came back with the compromise legislation
6  allowing that exact regulation, and here we are today with 4-
7  209.
8        The interpretation of 4-209 also supports our bill.
9  The attorney general, as I mentioned before, has twice
10 concluded that 4-209, which was Article 27, Section 36(H),
11 before recodification, the attorney general has twice concluded
12 that it did not preempt, and specifically authorized county
13 regulation of firearms.  You have the 1991 AG opinion that
14 upheld County Bill 42-91, then there is the AG opinion in 1997,
15 that's 82 Md. Op. Atty. Gen. 84 that upheld Bill 1197, which
16 dealt with the trigger locks, and said, yes, this is
17 permissible also under 4-209.
18        The AG repealed this review in the 2008 opinion.
19 Again, this is cited in our memorandum, each time noting that
20 4-209(b) is an exception to the otherwise more general express
21 preemption provisions throughout the county code that the
22 plaintiffs rely upon.
23        The General Assembly is presumed to be aware of the
24 attorney general's opinion of its statutes, and General
25 Assembly acquiescence in prior AG opinions, is a factor in

1  legislative interpretation.  The General Assembly did not
2  impliedly, and silently repeal the specific authority granted
3  to counties in 4-209 by these other statutes that the
4  plaintiffs rely upon, that were either enacted before 4-209, or
5  they express other aspects of fireship, I'm sorry, of firearm
6  ownership, and, again, and this is key, you start with the
7  proposition that when the same legislative body enacts two
8  statutes, especially when they are part of the same legislative
9  scheme, they have to be construed together and harmonize.
10         The courts will not likely find implied preemption,
11 I'm sorry, implied repeal, unless it's demanded by
12 irreconcilability, or repugnancy, and the plaintiffs' argument
13 would require that you conclude that the General Assembly,
14 without comment, has simply taken away the authority under
15 4-209(b).  So, there are several statutes in the Public Safety
16 Article, and this is all in the memos, 5-104, 5-133, 5-134, an
17 uncodified provision in 1972.  These all generally preempt
18 local regulation of the sale, possession, and transfer of a
19 regulated firearm.
20         These statues can and have been interpreted
21 harmoniously with the express authority granted in 4-209, and
22 that's what those AG opinions do, and the AG explains, using
23 canons, using the legislative history, the canons of statutory
24 construction that I've been talking about, how the AG has come
25 to that conclusion.

1          The same logic applies to 5-507 in the Public Safety
2  Article.  This was, yes, this was enacted a year ago in 2021,
3  and it generally preempts local regulation of the transfer of a
4  rifle or a shotgun.  The others deal with regulated firearms.
5  This one deals with so-called long guns.  Again, it is, it is
6  inappropriate to conclude that by this statute, the General
7  Assembly, again, sub silentio has repealed the express
8  authority provided in 4-209, that that authority, that that
9  authority no longer exists.
10         Turning to implied preemption.  Implied preemption is
11 the search for legislative intent.  Its intent to preempt in
12 the absence of express legislative guidance, and generally the
13 Court looks to the comprehensiveness of state regulation.
14 There is no implied preemption.  First, there can be no implied
15 preemption.  There cannot be, you cannot infer an intent to
16 preempt, where the General Assembly has expressly given the
17 county the authority it has under 4-209(b).
18         And secondly, in <u>State v. Phillips</u>, the Maryland
19 Court of Special Appeals case, the Court specifically rejected
20 the argument that the state has impliedly preempted local
21 regulation of firearms.  Noting particularly the authority
22 given in 4-209.
23         Finally, let me talk about conflict.  The plaintiffs
24 cite a variety of other statutes in state law in the Criminal
25 Law Article 4-203, 4-104, and the recent state ghost gun law

1  was enacted just a few months ago.  Again, Bill 4-21 cannot
2  conflict with state law when it follows specific authority that
3  the state has granted to regulate firearms with respect to
4  minors, and within 100 yards of a place of public assembly, and
5  that is the crucial element that's really missing from the
6  plaintiffs cases.  We are under operating under a statute
7  that's a specific carve-out that must be read harmoniously with
8  the other state provisions, as an exception to the general
9  preemption that permits the local jurisdictions to go farther,
10 and would otherwise be permissible, and to regulate, as
11 provided in 4-209.  Otherwise, 4-209(b) does not have any
12 meaning.
13         We discussed the verbal test and the functional test,
14 in our memo, I won't repeat what's there.  Either way there is
15 no conflict.  The plaintiffs don't address -- there was
16 Baltimore v. Hart that talked about the functional test.  They
17 do not address Baltimore v. Hart, or the other cases that
18 employ the functional test.
19         In terms of the state ghost gun law, the recent one,
20 you know, that law follows the federal model, and expands the
21 definition of firearms to include unfinished frames or
22 receivers.  It requires these ghost guns to be serialized and
23 treated as firearms.  Hopefully, there will be fewer
24 unserialized ghost guns if this works.  Bill 4-21 would
25 regulate the remaining unserialized ghost and undetectable guns

1   with respect to minors, and within 100 yards of places of
2   public assembly, precisely as permitted under 4-209.
3           As we said in our motion, the County testified in
4   support of the state law.  It specifically referenced its Bill
5   4-21.  The Senate Judicial Proceedings Committee floor report,
6   and the state and house fiscal notes referenced Bill 4-21, as
7   example of local regulation regarding ghost guns.  It's an odd
8   way indeed for the state to, you know, impliedly preempt the
9   county's authority when the county has brought this to the
10  state's attention, and said, yes, we're for the state law, look
11  what we've done, and the state acknowledges this.
12          Plaintiffs' counsel mentioned the Angel Enterprises
13  case.  That's a case where a county law confirmed jurisdiction
14  on a local board of appeals to adjudicate civil fines.  That
15  was a direct conflict.  They may have said inconsistent.  It
16  was a direct conflict with state law.  The courts in judicial
17  proceedings article confers jurisdiction to adjudicate fines on
18  the courts.  Depending on the amount of the fine, it goes to
19  the district court or it goes to the circuit court.  County
20  cannot give that authority to a board of appeals.  That is not
21  the situation we have here.  We are operating again, 4-209, and
22  I'll try not to repeat myself.
23          So, let me wrap up what I'm talking about.  Yes, the
24  state has expressly preempted much local regulation, but it's
25  provided a specific carve-out in 4-209.  The county has

1  exercised its authority many times since then.  The attorney
2  general has upheld that.  These statutes all have to be
3  interpreted consistently.  Implied repeal is particularly
4  disfavored unless the two statutes are determined -- that the
5  courts have used are repugnant to one another.  We ask that you
6  ask a declaratory judgment declaring that Bill 4-21 is valid.
7  And if there is no other questions I'll guess I'll wait for Mr.
8  O'Hara to just briefly address the takings argument.
9            THE COURT:  Okay.  All right.
10           MR. O'HARA:  Good morning, again, Your Honor.  Sean
11 O'Hara here on behalf of the County, and as Mr. Lattner alluded
12 to, I'll be addressing only Count 3 of the complaint, which is
13 the takings claim, and the plaintiffs in this case allege that
14 there has been a taking without just compensation under both
15 Article 3, Section 40 of the Maryland Constitution, and also
16 Article 24 of the Declaration of Rights.  Those are
17 (unintelligible) with the Fifth Amendment due process cases,
18 and so, the federal cases in that regard are quote, practically
19 direct authorities on this issue.  So, will be going through a
20 myriad, some cases here, some state, some federal, but they're
21 all applicable.
22           One of the key things that I think the plaintiffs
23 misapprehend in this case, is they fail to distinguish between
24 the different varieties of takings cases.  So, there are two
25 types of casings.  There is, number one, a physical