**INCLUDES Bill 21-22**

# Chapter 57. Weapons.

**Cross references-**Furnishing weapons to citizens during emergencies, § 2-15; special zoning requirements for rifle, pistol or skeet shooting ranges, §§ 59-G-2.51, 59-G-2.52.

**State law references-**Carrying weapons, Ann. Code of Md., art. 27, § 36 et seq.; sale, etc., of switchblade knives, Ann. Code of Md., art. 27, § 339; machine guns, Ann. Code of Md., art. 27, §§ 372-383; pistols, Ann. Code of Md., art. 27, §§ 441-448.

§ 57-1. Definitions.
§ 57-2. Firearm Safety Committee.
§ 57-3. Change in urban area boundary.
§ 57-4. Discharge of guns in the urban area.
§ 57-5. Discharge of guns outside the urban area.
§ 57-6. Discharge of bows.
§ 57-7. Access to guns by minors.
§ 57-8.  Child safety handgun devices and handguns
§ 57-9. Unlawful ownership or possession of firearms.
§ 57-10. Keeping guns on person or in vehicles.
§ 57-11. Firearms in or near places of public assembly.
§ 57-12. Sale of fixed ammunition.
§ 57-13. Use of public funds.
§ 57-14. Exemptions from Chapter.
§ 57-15. Penalty.
§ 57-16. Reporting requirement.

## Sec. 57-1. Definitions.

In this Chapter, the following words and phrases have the following meanings:

*3D printing process:* a process of making a three-dimensional, solid object using a computer code or program, including any process in which material is joined or solidified under computer control to create a three-dimensional object.

*Child safety handgun box:* A secure, lockable box designed to hold the handgun being transferred that:

(1) requires a key or combination to remove;

(2) renders the handgun inoperable when locked; and



    (3)    is approved by Executive regulation under method (2).

*Child safety handgun device:* A child safety handgun lock or child safety handgun box.

*Child safety handgun lock:* A device that when locked in place prevents movement of the trigger of the handgun being transferred without first removing the lock by use of a key or combination. "Child safety handgun lock" also includes any other device that can be attached to a handgun and:

    (1)    requires a key or combination to remove;

    (2)    renders the handgun inoperable when locked in place; and

    (3)    is approved by Executive regulation under method (2).

*Crime of violence:* Murder, voluntary manslaughter, rape, mayhem, kidnapping, robbery, burglary, housebreaking, arson, assault with intent to murder, ravish or rob, assault with deadly weapon or assault with intent to commit any offense punishable by imprisonment for more than one (1) year.

*Firearm dealer:* A person required by State or federal law to obtain a:

    (1)    regulated firearms dealer's license; or

    (2)    temporary transfer permit to display a regulated firearm at a gun show.

*Fixed ammunition:* Any ammunition composed of a projectile or projectiles, a casing, an explosive charge and a primer, all of which shall be contained as one (1) unit. Cartridges designed, made and intended to be used exclusively (i) in a device for signaling and safety purposes required or recommended by the United States Coast Guard or (ii) for industrial purposes, shall not be considered fixed ammunition. Curios or relics, as defined in regulations promulgated by the United States Secretary of the Treasury pursuant to 18 United States Code, section 921(A)(13), shall not be considered fixed ammunition.

*Fugitive from justice:* Any person for whom criminal proceedings have been instituted, warrant issued or indictment presented to the grand jury, who has fled from a sheriff or other peace officer within this state, or who has fled from any state, territory, District of Columbia or possession of the United States, to avoid prosecution for crime of violence or to avoid giving testimony in any criminal proceeding involving a felony or treason.

*Gun* or *firearm:* Any rifle, shotgun, revolver, pistol, ghost gun, undetectable gun, air gun, air rifle or any similar mechanism by whatever name known which is designed to expel a projectile through a gun barrel by the action of any explosive, gas, compressed air, spring or elastic.

MONTGOMERY COUNTY CODE

(1) The term "antique firearm" means (a) any firearm (including any firearm with a matchlock, flintlock, percussion cap, or similar type of ignition system) manufactured in or before 1898; and (b) any replica of any firearm described in subparagraph (a) if such replica (i) is not designed or redesigned or using rimfire or conventional centerfire fixed ammunition, or (ii) uses rimfire or conventional centerfire fixed ammunition which is no longer manufactured in the United States and which is not readily available in the ordinary channels of commercial trade.

(2) "Ghost gun" means a firearm, including an unfinished frame or receiver, that:

   (A) lacks a unique serial number engraved or cased in metal alloy on the frame or receiver by a licensed manufacturer, maker or importer in accordance with federal law; and

   (B) lacks markings and is not registered with the Secretary of the State Police in accordance with Section 5-703(b)(2)(ii) of the Public Safety Article of the Maryland Code.

   "Ghost gun" does not include a firearm that has been rendered permanently inoperable, or a firearm that is not required to have a serial number in accordance with the Federal Gun Control Act of 1968.

(3) "Handgun" means any pistol, revolver or other firearm capable of being concealed on the person, including a short-barreled shotgun and a short-barreled rifle as these terms are defined below. "Handgun" does not include a shotgun, rifle, or antique firearm.

(4) "Rifle" means a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed metallic cartridge to fire only a single projectile through a rifled bore for each single pull of the trigger.

(5) The term "short-barreled rifle" means a rifle having one (1) or more barrels less than sixteen (16) inches in length and any weapon made from a rifle (whether by alternation, modification or otherwise) if such weapon, as modified, has an overall length of less than twenty-six (26) inches.

(6) The term "short-barreled shotgun" means a shotgun having one (1) or more barrels less than eighteen (18) inches in length and any weapon made from a shotgun (whether by alteration, modification or otherwise) if such weapon as modified has an overall length of less than twenty-six (26) inches.

(7) "Shotgun" means a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed shotgun shell to fire through a

  smooth bore either a number of ball shot or a single projectile for each single pull of the trigger.

 (8) "Undetectable gun" means:

  (A) a firearm that, after the removal of all its parts other than a major component, is not detectable by walk-through metal detectors commonly used at airports or other public buildings;

  (B) a major component that, if subjected to inspection by the types of detection devices commonly used at airports or other public buildings for security screening, would not generate an image that accurately depicts the shape of the component; or

  (C) a firearm manufactured wholly of plastic, fiberglass, or through a 3D printing process.

 (9) "Unfinished frame or receiver" means a forged, cast, printed, extruded, or machined body or similar article that has reached a stage in manufacture where it may readily be completed, assembled, or converted to be used as the frame or receiver of a functional firearm.

*Gun shop:* An establishment where a handgun, rifle, or shotgun, or ammunition or major component of these guns is sold or transferred. "Gun shop" does not include an area of an establishment that is separated by a secure, physical barrier from all areas where any of these items is located.

*Gun show:* Any organized gathering where a gun is displayed for sale.

*Major component* means, with respect to a firearm:

 (1) the slide or cylinder or the frame or receiver; and

 (2) in the case of a rifle or shotgun, the barrel.

*Minor:* An individual younger than 18 years old.

*Pistol* or *revolver:* Any gun with a barrel less than twelve (12) inches in length that uses fixed ammunition.

*Place of public assembly:* A "place of public assembly" is:

 (1) a publicly or privately owned:

  (A) park;

4

  (B) place of worship;

  (C) school;

  (D) library;

  (E) recreational facility;

  (F) hospital;

  (G) community health center, including any health care facility or community-based program licensed by the Maryland Department of Health;

  (H) long-term facility, including any licensed nursing home, group home, or care home;

  (I) multipurpose exhibition facility, such as a fairgrounds or conference center; or

  (J) childcare facility;

 (2) government building, including any place owned by or under the control of the County;

 (3) polling place;

 (4) courthouse;

 (5) legislative assembly; or

 (6) a gathering of individuals to collectively express their constitutional right to protest or assemble.

A "place of public assembly" includes all property associated with the place, such as a parking lot or grounds of a building.

*Record plat* means a subdivision plat recorded in the County's land records.

*Sell* or *purchase:* Such terms and the various derivatives of such words shall be construed to include letting on hire, giving, lending, borrowing or otherwise transferring.

*Sporting use:* "Sporting use" of a firearm and ammunition means hunting or target shooting in compliance with all federal, State, and local laws. Sporting use includes:

 (a) participation in a managed hunt sponsored by a government agency; and

  (b) the sale or other transfer of ammunition by a sporting club for immediate, on-site use at the club.

  *Tax assessment record* means the information maintained by the State Department of Assessments and Taxation in its Real Property Database on each parcel of real property located in the County, including the tax map for each parcel.

  *Urban area:* That part of the County within the following boundaries:   Beginning at a point where the Maryland/District of Columbia boundary line in the County intersects with the Maryland/Virginia boundary line on the southwest side of the Potomac River; running then northwest along the Maryland/Virginia boundary line to the emptying of Watts Branch into the Potomac River; then northwest along the northeast side of the Potomac River to the emptying of Seneca Creek into the Potomac River; then north along Seneca Creek to Route 112 (Seneca Road); then east along Route 112 to Route 28 (Darnestown Road); then northwest along Route 28 to Route 118 (Darnestown-Germantown Road); then north along Route 118 to Route 117 (Clopper Road); then northwest along Route 117 to Little Seneca Creek; then northeast along Little Seneca Creek to Black Hill Regional Park; then along the eastern boundary of Black Hill Regional Park to the Park's southernmost intersection with I-270; then northwest along I-270 to Little Seneca Creek; then north along Little Seneca Creek to West Old Baltimore Road; then east along West Old Baltimore Road to Route 355 (Frederick Road); then south along Route 355 to Brink Road; then southeast on Brink Road to the Town of Laytonsville; then along the northern boundary of the Town of Laytonsville to Route 420 (Sundown Road); then east along Route 420 to Route 650 (Damascus Road); then southeast along Route 650 to Route 97 (Georgia Avenue); then south along Route 97 to Brighton Dam Road; then northeast along Brighton Dam Road to Route 650 (New Hampshire Avenue); then south along Route 650 to Route 108; then east along Route 108 to the Potomac Electric Power Company transmission line property; then southeast along the east side of the Potomac Electric Power Company right-of-way to Batson Road; then following along the southern boundary of the Washington Suburban Sanitary Commission property to Kruhm Road; then southeast along Kruhm Road to the Potomac Electric Power Company right-of-way; then southeast along the east side of the Potomac Electric Power Company right-of-way to Route 198; then east along Route 198 to the Prince George's County/Montgomery County boundary line; then southwest along the Montgomery County/Prince George's County boundary line to the Montgomery County/District of Columbia boundary line; then along the Montgomery County/District of Columbia boundary line to the beginning point.

  *Vehicle:* Any motor vehicle, as defined in the Transportation Article of the Annotated Code of Maryland, trains, aircraft and vessels. (1981 L.M.C., ch. 42, § 1; 1983 L.M.C., ch. 50, § 1; CY 1991 L.M.C., ch. 21, § 1; 1993 L.M.C., ch. 50, § 1; 1997 L.M.C., ch. 3, § 1; 1997 L.M.C., ch. 14, §1; 1997 L.M.C., ch. 16; 2001 L.M.C., ch. 11, § 1; 2007 L.M.C., ch. 21, § 1; 2018 L.M.C., ch. 34, § 1; 2021 L.M.C., ch. 7, §1.)

**Sec. 57-2. Firearm Safety Committee.**

(a) There is a Firearm Safety Committee with 7 voting members appointed by the County Executive and confirmed by the County Council. The voting members should be trained and experienced in the safe and sportsmanlike use of weapons. The Executive must designate one voting member to serve as Chair. The Police Range Officer must serve as a non-voting member of the Committee.

(b) The Committee issues indoor and outdoor target, trap, skeet, and shooting range approval certificates. The Committee may specify the type of gun and ammunition that may be used on the range. An approval certificate is valid for 3 years. Before issuing a certificate, the Committee must find that:

(1) the discharge of guns on the range will not jeopardize life or property; and

(2) the applicant for the certificate is the owner, lessee, or person lawfully in possession of the land where the range is located.

(c) The Committee must inspect any firing range operated by the Police Department every 3 years.

(d) The Committee must create a standard safety checklist to assure that all firing ranges are evaluated using the same criteria.

(e) The Committee must keep a copy of each certificate.(1981 L.M.C., ch. 42, § 1; FY 1991 L.M.C., ch. 9, § 1; CY 1991 L.M.C., ch. 21, § 1; 2005 L.M.C., ch. 24, § 1.)
**Cross reference-**Boards and commissions generally, § 2-141 et seq.

### Sec. 57-3. Change in urban area boundary.

On February 1 each year, the County Executive, after consulting with the Firearm Safety Committee, may recommend to the County Council any appropriate change in the boundary of the urban area based on new development or reported incidents of weapons discharged near developed areas. In addition, the County Executive, without consultation, may recommend any amendment to the boundary of the urban area at any other time.  (CY 1991 L.M.C., ch. 21, § 1; 2001 L.M.C., ch. 11, § 1; 2005 L.M.C., ch. 24, § 1; 2018 L.M.C., ch. 34, § 1.)
**Editor's note**—Section 57-3, formerly § 57-2A, was renumbered pursuant to 2001 L.M.C., ch. 11, § 1.

### Sec. 57-4. Discharge of guns in the urban area.

(a) *Prohibition.*  Except as provided in subsection (b), a person, other than a peace officer or employee of the Maryland Department of Natural Resources performing official duties, must not discharge a gun within the urban area.

(b)     *Exceptions.*   Except as provided in Sections 57-7 and 57-11, a person may discharge a gun:

   (1)    on any indoor or outdoor target, trap, skeet, or shooting range that the Firearms Safety Committee has inspected and approved in writing;

   (2)    in a private basement or cellar target range;

   (3)    when necessary to protect life or property;

   (4)    to kill a dangerous animal;

   (5)    for discharge of blank cartridges in musical and theatrical performances, parades, or sporting events;

   (6)    for salutes by firing squads at military funerals;

   (7)    if approved by the Chief of Police, under a deer damage control permit issued by the Maryland Department of Natural Resources;

   (8)    for the purpose of deer hunting on private property that is at least 50 acres in size if:

      (A)    the person discharges the gun from an elevated position;

      (B)    the person does not load the gun until the person is located in the elevated position;

      (C)    the person unloads the gun before descending from the elevated position;

      (D)    the projectile has a downward trajectory;

      (E)    the property owner complies with any public notice requirements in applicable regulations; and

      (F)    the property owner gives written notice to the Chief of Police at least 15 days before any gun is discharged on the property which:

         1.    identifies the day or days on which deer hunting will occur;

         2.    identifies the time that deer hunting will begin and end each day;

         3.    lists the name of each individual who will participate in deer hunting; and

    4. includes a copy of the record plat or tax assessment record for the property; or

 (9) on property owned by the Maryland-National Capital Park and Planning Commission as a part of a deer management program conducted or sanctioned by the Commission that complies with safety requirements approved by the Chief of Police.

(c) *50-acre threshold.*

 (1) Subject to the requirements of paragraph (2), up to 5 owners of contiguous parcels of property may aggregate their property to meet the 50-acre threshold in subsection (b)(8).

 (2) If property owners aggregate their parcels to achieve the 50-acre threshold in subsection (b)(8), a person may discharge a gun for the purpose of deer hunting on the aggregated property if the person obtains written permission from each property owner, which must include a copy of the record plat or tax assessment record for each parcel in the aggregated property.

(d) A person who discharges a gun under the authority granted in subsection (b)(7), (b)(8), or (b)(9) is subject to the restrictions imposed by Section 57-5(a) on the discharge of a gun outside the urban area.

(e) *Regulations.* The County Executive must adopt regulations under method (2) which:

 (1) establish procedures and criteria that the Chief of Police must use to decide whether it is safe to discharge a gun under the circumstances specified in subsection (b)(7); and

 (2) to implement subsection (b)(8):

  (A) require signs to be posted along the perimeter of each applicable property at least 15 days before any gun is discharged on the property;

  (B) specify the size, wording, and location of each sign; and

  (C) identify a method to determine the number of signs that must be posted. (1981 L.M.C., ch. 42, § 1; CY 1991 L.M.C., ch. 21, § 1; 1997 L.M.C., ch. 14, §1; 2001 L.M.C., ch. 11, § 1; 2005 L.M.C., ch. 24, § 1; 2007 L.M.C., ch. 21, § 1.)

**Editor's note**—Section 57-4, formerly § 57-3, was renumbered and amended pursuant to 2001 L.M.C., ch. 11, § 1.

### Sec. 57-5. Discharge of guns outside the urban area.

(a) *Prohibition.* Except as provided in subsection (c)(1) through (c)(6), outside the urban area, a person, other than a peace officer or employee of the Maryland Department of Natural Resources performing official duties, must not:

   (1) discharge a gun:

       (A) onto, across, or within 50 yards of a public road;

       (B) onto or across property located within 50 yards of a public road;

       (C) into or within the safety zone (150 yards of a building or camp designed for human occupancy) without the owner or occupant's written consent; or

       (C) from, onto, or across public or private property without the owner or occupant's written consent;

   (2) discharge a full metal jacketed bullet of any caliber from a gun; or

   (3) except as provided in subsection (b), discharge any fixed ammunition of a caliber higher than .25 caliber from a rifle or pistol.

(b) *Exception - High Caliber Ammunition.* A person may discharge fixed ammunition of a caliber higher than .25 from a rifle or pistol at:

       (A) legal game or varmints on the ground; or

       (B) a target on or near the ground that will not deflect a bullet.

(c) *Other Exceptions.* Except as provided in Sections 57-7 and 57-11, a person may discharge a gun:

   (1) on any indoor or outdoor target, trap, skeet, or shooting range that the Firearm Safety Committee has inspected and approved in writing;

   (2) in a private basement or cellar target range;

   (3) when necessary to protect life or property;

   (4) to kill a dangerous animal;

 (5) for discharge of blank cartridges in musical and theatrical performances, parades, or sporting events;

 (6) for salutes by firing squads at military funerals; or

 (7) under a deer damage control permit issued by the Maryland Department of Natural Resources. (1981 L.M.C., ch. 42, § 1; CY 1991 L.M.C., ch. 21, § 1; 1997 L.M.C., ch. 14, §1; 2001 L.M.C., ch. 11, § 1; 2005 L.M.C., ch. 24, § 1; 2007 L.M.C., ch. 21, § 1.)

**Editor's note**—Section 57-5, formerly § 57-4, was renumbered and amended pursuant to 2001 L.M.C., ch. 11, § 1.

### Sec. 57-6. Discharge of bows.

(a) *Prohibition.* A person must not discharge a bow in the County:

 (1) from, onto, or across a public road;

 (2) in violation of the archery hunting safety zone established in Md. Code, Natural Resources, §10-410, as amended, surrounding a building or camp designed for human occupancy without the owner or occupant's written consent; or

 (3) from, onto, or across public or private property without the owner or occupant's written consent;

(b) *Exception.* Subsection (a) does not apply to target archery practiced in compliance with safety guidelines established in regulations adopted under method (2).

(c) A bow hunter must report the failure to recover a wounded deer to the County Police at the end of an unsuccessful search for the animal.  (CY 1991 L.M.C., ch. 21, § 1; 2001 L.M.C., ch. 11, § 1; 2007 L.M.C., ch. 21, § 1; 2014 L.M.C., ch. 27, § 1; 2017 L.M.C., ch. 26, §1.)

**Editor's note**—Section 57-6, formerly § 57-4A, was renumbered pursuant to 2001 L.M.C., ch. 11, § 1.

### Sec. 57-7. Access to guns by minors.

(a) A person must not give, sell, rent, lend, or otherwise transfer any rifle or shotgun or any ammunition or major component for these guns in the County to a minor. This subsection does not apply when the transferor is at least 18 years old and is

   the parent, guardian, or instructor of the minor, or in connection with a regularly conducted or supervised program of marksmanship or marksmanship training.

(b)   An owner, employee, or agent of a gun shop must not allow a minor to, and a minor must not, enter the gun shop unless the minor is accompanied by a parent or other legal guardian at all times when the minor is in the gun shop.

(c)   A person must not give, sell, rent, lend, or otherwise transfer to a minor:

  (1)  a ghost gun or major component of a ghost gun;

  (2)  an undetectable gun or major component of an undetectable gun; or

  (3)  a computer code or program to make a gun through a 3D printing process.

(d)   A person must not purchase, sell, transfer, possess, or <u>transport</u> a ghost gun, including a gun created through a 3D printing process, in the presence of a minor.

(e)   A person must not store or leave a ghost gun, an undetectable gun, or a major component of a ghost gun or an undetectable gun, in a location that the person knows or should know is accessible to a minor.

(f)   This section must be construed as broadly as possible within the limits of State law to protect minors.   (1981 L.M.C., ch. 42, § 1; 1997 L.M.C., ch. 14, § 1; 2001 L.M.C., ch. 11, § 1; 2021 L.M.C., ch. 7, §1.)

  **Editor's note**—Section 57-7, formerly § 57-5, was renumbered pursuant to 2001 L.M.C., ch. 11, § 1.

### Sec. 57-8. Child safety handgun devices and handguns.

(a)   *Findings.*   The unintentional discharge of handguns often causes accidental death or injury to children.   Additional safeguards are needed to protect children from injury or death from the unintentional discharge of loaded and unlocked handguns.   Requiring a firearm dealer who transfers a handgun to provide a child safety handgun device when a handgun is transferred can prevent unintentional injuries and fatalities to children
.

(b)   *Child safety handgun device.*

  (1)  A firearm dealer who sells, leases, or otherwise transfers a handgun in the County must provide to the recipient of the handgun a child safety handgun device for the handgun at the time of the transfer.   The dealer may charge for the child safety handgun device.

  (2) A person who purchases or otherwise receives a handgun from a firearm dealer (or any transferor who would be a firearm dealer if the transfer occurred in the State) after October 8, 1997 must obtain a child safety handgun device for the handgun:

    (A) at the time of a transfer in the County; or

    (B) before entering the County with the handgun if the transfer occurred outside the County and the transferee resides in the County.

(c) *Notices*.

  (1) A firearm dealer who sells, leases, or otherwise transfers a handgun must post conspicuously in the dealer's place of business a notice of:

    (A) the requirement in subsection (b) for a child safety handgun device; and

    (B) the prohibition in State law of storing or leaving a loaded firearm in a location where an unsupervised child can gain access to the firearm.

  (2) If the firearm dealer transferring a handgun does not maintain a place of business in a commercial establishment, the dealer must provide the notices required by paragraph (1) in writing when transferring the handgun.

(d) *Enforcement.* The Department of Health and Human Services and any other department designated by the County Executive enforces this section.

(f) *Regulations.* The Executive may adopt regulations under method (2) to implement this Section. (1997 L.M.C., ch. 16; 2001 L.M.C., ch. 11, § 1.)

**Editor's note**—Section 57-8, formerly § 57-5A, was renumbered pursuant to 2001 L.M.C., ch. 11, § 1.

### Sec. 57-9. Unlawful ownership or possession of firearms.

A person must not possess, exercise control over, use, carry, transport, or keep a rifle, shotgun, or pistol, if the person:

(a) is an unlawful user of , addicted to, or is under treatment for an addiction to, marijuana or any depressant or stimulant drug or narcotic drug (as defined in Maryland Criminal Law Code Annotated, sections 1-101, 5-101, 5-401, 5-404, and 5-604); or

(b)     has been convicted in any court of a crime of violence, trafficking in narcotics, a criminal violation of any of the provisions of Maryland Public Safety Code Annotated, sections 5-101 to 5-138, 5-142, or any federal firearms control law; or

(c)     is a fugitive from justice; or

(d)     has been confined to any hospital or institution for treatment of a mental disorder or for mental illness unless a licensed physician has by affidavit stated that the physician is familiar with the person's history of mental illness and that in the physician's opinion the person is not disabled by such illness in a manner which should prevent the person from possessing a rifle or a shotgun; or

(e)     has been confined to any hospital or institution for treatment of alcoholism unless a licensed physician has by affidavit stated that the physician is familiar with the person's history of alcoholism and that, in the physician's opinion, the person is no longer suffering from a disability in such a manner which should prevent the person from possessing a rifle or shotgun. (1981 L.M.C., ch. 42, § 1; 2001 L.M.C., ch. 11, § 1; 2004 L.M.C., ch. 22, §1.)

**Editor's note**—Section 57-9 is cited and quoted at Furda v. State, 421 Md. 332, 26 A.3d 918 (2011) where the Court of Appeals reversed the decision of the Court of Special Appeals; see also companion case at 194 Md. App. 1, 1 A.3d 528 (2010), also citing Section 57-9.

Section 57-9, formerly § 57-6, was renumbered pursuant to 2001 L.M.C., ch. 11, § 1.

### Sec. 57-10. Keeping guns on person or in vehicles.

It shall be unlawful for any person to have upon his person, concealed or exposed, or in a motor vehicle where it is readily available for use, any gun designed to use explosive ammunition unless:

(a)     *Lawful mission.* Such person is then engaged upon a lawful mission for which it is necessary to carry a gun upon his person; or

(b)     *Special guard, special police, etc.* Such person is employed as a special guard, special police officer or special detective and has been lawfully deputized by the sheriff for the county, or has been appointed a constable in the county, or has been licensed under the laws of the state, should such a law be enacted, to carry such gun and then is on or in the immediate vicinity of the premises of any employer whose occupation lawfully requires the employment of a person carrying a gun while in the discharge of the duties of such employment; or

(c)     *Military service.* Such person is then lawfully engaged in military service or as a duly authorized peace officer; or

(d) *Hunting, target practice, etc.* Such person is engaged in lawful hunting, drill, training or target practice on property of which he is the owner or lessee or on property with the prior permission of the owner or lessee thereof; or

(e) *Going to or returning from hunting, target practice, etc.* Such person is engaged in going to or from lawful hunting, drill training or target practice, or in delivering such gun to or carrying it from a gunsmith or repairman, or is engaged in any other lawful transfer of possession; provided, that such person shall be on or traveling upon a public highway or property of which he is the owner or lessee or on property with the prior permission of the owner or lessee thereof; provided further, that such gun shall not be loaded with explosive ammunition. (1981 L.M.C., ch. 42, § 1; 2001 L.M.C., ch. 11, § 1.)

**Editor's note**—Section 57-10, formerly § 57-7, was renumbered pursuant to 2001 L.M.C., ch. 11, § 1.

### Sec. 57-11. Firearms in or near places of public assembly.

(a) In or within 100 yards of a place of public assembly, a person must not:

(1) sell, transfer, possess, or transport a ghost gun, undetectable gun, handgun, rifle, or shotgun, or ammunition or major component for these firearms; or

(2) sell, transfer, possess, or transport a firearm created through a 3D printing process.

(b) This section does not:

(1) prohibit the teaching of firearms safety or other educational or sporting use in the areas described in subsection (a);

(2) apply to a law enforcement officer, or a security guard licensed to carry the firearm;

(3) apply to the possession of a firearm or ammunition, other than a ghost gun or an undetectable gun, in the person's own home;

(4) apply to the possession of one firearm, and ammunition for the firearm, at a business by either the owner who has a permit to carry the firearm, or one authorized employee of the business who has a permit to carry the firearm; or

(5) apply to separate ammunition or an unloaded firearm:

    (A)    transported in an enclosed case or in a locked firearms rack on a motor vehicle, unless the firearm is a ghost gun or an undetectable gun; or

    (B)    being surrendered in connection with a gun turn-in or similar program approved by a law enforcement agency.

(c)    This section does not prohibit a gun show at a multipurpose exhibition facility if:

    (1)    the facility's intended and actual primary use is firearms sports (hunting or target, trap, or skeet shooting) or education (firearms training); or

    (2)    no person who owns or operates the facility or promotes or sponsors the gun show received financial or in-kind support from the County (as defined in Section 57-13(a)) during the preceding 5 years, or after December 1, 2001, whichever is shorter; and

        (A)    no other public activity is allowed at the place of public assembly during the gun show; and

        (B)    if a minor may attend the gun show:

            (i)    the promoter or sponsor of the gun show provides to the Chief of Police, at least 30 days before the show:

                (a)    photographic identification, fingerprints, and any other information the Police Chief requires to conduct a background check of each individual who is or works for any promoter or sponsor of the show and will attend the show; and

                (b)    evidence that the applicant will provide adequate professional security personnel and any other safety measure required by the Police Chief, and will comply with this Chapter; and

            (ii)    the Police Chief does not prohibit the gun show before the gun show is scheduled to begin because:

                (a)    the promoter or sponsor has not met the requirements of clause (i); or

                (b)    the Police Chief has determined that an individual described in clause (i)(a) is not a responsible individual.

(d) Notwithstanding subsection (a), a gun shop owned and operated by a firearms dealer licensed under Maryland or federal law on January 1, 1997, may conduct regular, continuous operations after that date in the same permanent location under the same ownership if the gun shop:

(1) does not expand its inventory (the number of guns or rounds of ammunition displayed or stored at the gun shop at one time) or square footage by more than 10 percent, or expand the type of guns (handgun, rifle, or shotgun) or ammunition offered for sale since January 1, 1997;

(2) has secure locks on all doors and windows;

(3) physically secures all ammunition and each firearm in the gun shop (such as in a locked box or case, in a locked rack, or with a trigger lock);

(4) has adequate security lighting;

(5) has a functioning alarm system connected to a central station that notifies the police; and

(6) has liability insurance coverage of at least $1,000,000. (1997 L.M.C., ch. 14, §§1, 2; 1998 L.M.C., ch. 2, §§1, 2; 2001 L.M.C., ch. 11, § 1; 2021 L.M.C., ch. 7, §1.)

**Editor's note**—Section 57-11, formerly § 57-7A, was renumbered and amended pursuant to 2001 L.M.C., ch. 11, § 1.

### Sec. 57-12. Sale of fixed ammunition.

(a) *Legislative intent.* The purpose of this section is to provide support to state and local law enforcement officials in their efforts against crime and violence by placing controls on the flow of dangerous ammunition, in addition to those provided by federal law, and to encourage compliance with the state police department's program of voluntary firearm registration. It is not the purpose of this section to place any undue or unnecessary restrictions or burdens on law-abiding citizens with respect to the acquisition, possession, or use of firearms appropriate to the purpose of hunting, trapshooting, target shooting, personal protection, or any other lawful activity, or to discourage or eliminate the private ownership or use of firearms by law-abiding citizens for lawful purposes. It is not the purpose of this section to create, nor does it permit the creation of, any separate system of county registration of firearms or ammunition, or the levying of any county fee in connection with any registration of firearms or ammunition. It is specifically not the intent of this section to serve as a revenue generating measure.

(b) *Registration of ammunition dealers.* Any ammunition dealer (as defined in 18 United States Code, section 921 et seq.) who conducts business in Montgomery

   County is required to register with the Montgomery County department of police by maintaining on file with that department, at all times, a valid, current copy of his federal ammunition dealer's license.

(c)  *Conditions for sale.* No ammunition dealer may sell fixed ammunition to any other person, unless:

  (1)  The sale is made in person;

  (2)  The purchaser exhibits, at the time of sale, a valid registration certificate or, in the case of a nonresident, proof that the firearm is lawfully possessed in the jurisdiction where the purchaser resides;

  (3)  The fixed ammunition to be sold is of the same caliber or gauge as the firearm described in the registration certificate, or other proof in the case of a nonresident; and

  (4)  The purchaser signs a receipt for the ammunition which shall be maintained by the licensed dealer for a period of one (1) year from the date of sale.

(d)  *Exceptions.* The provisions of this section shall not apply to the sale of fixed ammunition:

  (1)  Which is suitable for use only in rifles or shotguns generally available in commerce, or to the sale of component parts of these types of ammunition;

  (2)  To any person licensed to possess fixed ammunition under an act of Congress and the law of the jurisdiction where the person resides or conducts business; or

  (3)  To any law enforcement officer of federal, state, local or any other governmental entity, if the officer has in his possession a statement from the head of his agency stating that the fixed ammunition is to be used in the officer's official duties.

(e)  *Penalties.* Any ammunition dealer who sells fixed ammunition in violation of the provisions of this section shall be guilty of a class C violation, pursuant to section 1-19 of the Montgomery County Code, punishable only by a civil penalty in the amount of fifteen dollars ($15.00).

(f)  *Exception for incorporated municipalities.* This section shall not be effective in any incorporated municipality which by law has authority to enact a law on the same subject. If any such incorporated municipality adopts this section and requests the county to enforce the adopted provisions thereof within its corporate limits, the county may thereafter administer and enforce the same within the

incorporated municipality. The county executive is authorized to enter into agreements with incorporated municipalities to enforce and administer the provisions so adopted and to collect the administrative costs of implementation from such municipalities. (1983 L.M.C., ch. 50, § 2.)

**Editor's note**--The above section was held to be invalid by the Court of Appeals in Montgomery County, Maryland, et al. v. Atlantic Gunds, Inc., et al., 302 Md. 540, 489 A.2d 1114 (1985).

### Sec. 57-13. Use of public funds.

(a) The County must not give financial or in-kind support to any organization that allows the display and sale of guns at a facility owned or controlled by the organization. Financial or in-kind support means any thing of value that is not generally available to similar organizations in the County, such as a grant, special tax treatment, bond authority, free or discounted services, or a capital improvement constructed by the County.

(b) An organization referred to in subsection (a) that receives direct financial support from the County must repay the support if the organization allows the display and sale of guns at the organization's facility after receiving the County support. The repayment must include the actual, original value of the support, plus reasonable interest calculated by a method specified by the Director of Finance. (2001 L.M.C., ch. 11, § 1.)

**Editor's note**—2001 L.M.C., ch. 11, § 2, states:
(a) Section 57-13 of the County Code, as amended by Section 1 of this Act, applies to:
    (1) support that an organization receives from the County after December 1, 2001; and
    (2) the display of a gun for sale at the facility after December 1, 2001.
(b) Section 57-13 expires on December 1, 2011.
Section 57-13 is cited but not interpreted in Frank Krasner Enterprises, Ltd. v. Montgomery County, 401 F.3d 230 (4th Cir. 2005) because appellants lacked standing.

### Sec. 57-14. Exemptions from Chapter.

Nothing in this Chapter applies to the purchase, ownership, or possession of a bona fide antique gun that is incapable of use as a gun. Except as provided in Sections 57-7 and 57-11, nothing in this Chapter prohibits the owner or tenant of any land from carrying or discharging a gun on that land for the purpose of killing predatory animals which prey on livestock. (1981 L.M.C., ch. 42, § 1; 1997 L.M.C., ch. 14, §1; 2001 L.M.C., ch. 11, § 1; 2007 L.M.C., ch. 21, § 1.)

**Editor's note**—Section 57-14, formerly § 57-8, was renumbered, amended, and retitled pursuant to 2001 L.M.C., ch. 11, § 1.

**Sec. 57-15. Penalty.**

Any violation of this Chapter or a condition of an approval certificate issued under this Chapter is a Class A violation to which the maximum penalties for a Class A violation apply. Any violation of Section 57-8 is a Class A civil violation. (Mont. Co. Code 1965, § 109-9; 1983 L.M.C., ch. 22, § 1; CY 1991 L.M.C., ch. 21, § 1; 1997 L.M.C., ch. 16; 2001 L.M.C., ch. 11, § 1.)

**Editor's note**—Section 57-15, formerly § 57-9, was renumbered and amended pursuant to 2001 L.M.C., ch. 11, § 1.

**Sec. 57-16. Reporting requirement.**

(a) The County Police Department must submit a report annually to the County Executive and the County Council regarding the availability and use of ghost guns and undetectable guns in the County.

(b) The report must include the number of ghost guns and undetectable guns recovered by the Department during the prior year.

(c) Each report must be available to the public on the Police Department's website. (2021 L.M.C., ch. 7, §1.)