IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MARYLAND SHALL ISSUE, INC., *et al.*, | ) |
| | ) |
| *Plaintiffs*, | ) |
| | ) |
| v. | ) Case No. 8:21-cv-01736-TDC **(L)** |
| | ) Case No. 8:22-cv-01967-DLB |
| MONTGOMERY COUNTY, MD., | ) |
| | ) |
| *Defendant*. | ) |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S SUBMISSION
OF SUPPLEMENTAL AUTHORITIES**

Plaintiffs respectfully submit this response to defendant's Notice of Supplemental Authorities, filed March 28, 2023. Defendant principally relies on the 11th Circuit's decision in *NRA v. Bondi*, --- F.4th ----, 2023 WL 2484818 (11th Cir. March 9, 2023), noting that the court in that case relied on statutes from the Reconstruction era in sustaining the constitutionality of a Florida ban on persons under the age of 21 purchasing firearms. That reliance on *Bondi* is misplaced. *Bondi* recognized that the Court in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S.Ct. 2111 (2022), had declined to decide whether 1791 and 1868 was more pertinent because "it read the historical record to yield" to yield the same result "with respect to public carry." 2023 WL 2484813 at *5. The *Bondi* court believed, however, that the historical record differed with respect to the rights of 18-20-year-olds. Id. This case, of course, concerns the same right at issue in *Bruen*, *viz.,* the right to public carry. Thus, as in *Bruen*, this Court need not and should not decide the question. Indeed, other courts have declined to do so in public carry cases for the same reason. See *Siegel v. Reynolds,* 2023 WL 1103676 at *11 n.13 (D.N.J. 2023), *Koons v. Platkin*, 2023 WL 128882 at *12 n.13 (D.N.J. 2023).

Second, on the same day *Bondi* issued, the Eleventh Circuit *sua sponte* issued a separate order stating: "A judge of this Court withholds issuance of the mandate in this appeal." A copy of

that order is attached as Exhibit A. It is, of course, well-established that a "any appellate court, acts formally and officially only through its mandate." *Bailey v. Henslee,* 309 F.2d 840, 844 (8th Cir. 1962). The *sua sponte* order withholding the mandate thus has significance. One possibility is that the decision *Bondi* is under active consideration for rehearing en banc. Or perhaps the *Bondi* panel is awaiting to see if Florida repeals the statute at issue, a possibility noted in concurring opinion of Judge Wilson. See 2023 WL 2484818 at *18. In fact, that repeal legislation is proceeding apace in the Florida legislature. https://www.flsenate.gov/Session/Bill/2023/1543. If the Florida statute is repealed, the decision in *Bondi* will undoubtedly be vacated as moot, thereby depriving it of precedential effect.

Third, *Bondi*'s analysis of this issue is superficial and unpersuasive. *Bondi's* reliance on 1868 is direct conflict with the opposite conclusion reached by the Fourth Circuit in *Hirschfeld v. BATF*, 5 F.4th 407, 417 (4th Cir.), *vacated as moot*, 14 F.4th 322 (4th Cir. 2021), *cert. denied,* 142 S.Ct. 1447 (2022), on the identical issue, *viz*., the Second Amendment rights of 18-20-year-olds. There, the Fourth Circuit held that "[w]hen evaluating the original understanding of the Second Amendment, 1791—the year of ratification—is '"the critical year for determining the amendment's historical meaning."' Quoting *Moore v. Madigan*, 702 F.3d 933, 935 (7th Cir. 2012). While *Hirschfeld* concerned a federal statute, the case on which it relied, *Moore,* concerned a state law (Illinois) banning public carry, the very issue at issue in this case.

*Bondi* gives lip service (at *5) to *Bruen*'s holding that "we have made clear that individual rights enumerated in the Bill of Rights and made applicable against the States through the Fourteenth Amendment have the same scope as against the Federal Government." 142 S.Ct. at 2137. But *Bondi* then engages in a legal fiction, *viz*., that States would not have bound themselves with the adoption of the 14th Amendment "to an understanding of the Bill of Rights . . . that they did not share when they ratified the Fourteenth Amendment." Id. That approach ignores reality,

which is that the incorporation doctrine did not even arise until long after adoption of the 14th Amendment. See Plaintiffs' Response to Everytown's Amicus Br. at 7. The "understanding" of the States in 1868 is thus irrelevant. *Bondi* never acknowledges that the scope of **every other** incorporated right is assessed by reference to 1791. Id. at 7-8. "The constitutional right to bear arms in public for self-defense is not "a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees." *Bruen*, 142 S.Ct. at 2156.

The district court's analysis in *Frey v. Nigrelli*, 2023 WL 2473375 (S.D.N.Y. March 13, 2023), *appeal pending*, No. 23-365 (2d Cir., docketed March 16, 2023), which defendants also cite (but do not discuss), is even more superficial. There, the district court merely ruled that "that there is an open question regarding how much importance to attribute to historical evidence from the Fourteenth Amendment's ratification period, and not whether that evidence deserves any weight." 2023 WL 2473375 at *13. The court then simply leaped to the conclusion that there was "no issue" with considering statutes dating to "the late 19th century." Id. But, of course, there is "an issue."

After all, the *Bruen* Court disclaimed reliance on "post-Civil War discussions of the right to keep and bear arms," noting that because such matters "'took place 75 years after the ratification of the Second Amendment, they do not provide as much insight into its original meaning as earlier sources.'" 142 S.Ct. at 2137 (citation omitted). Indeed, the Court repeatedly rejected New York's reliance on "late 19th century" laws. See *Bruen*, 142 S.Ct. at 2153 (rejecting as outliers "two late-19th-century cases in Texas"); id (rejecting an 1887 West Virginia "public-carry statute"); id at 2153-54 & n.22 (rejecting "late-19th century" regulations "in the Western Territories"); id. at 2156 (rejecting a 1881 Kansas law and the regulations adopted by several Kansas municipalities in the "late-19th-century"); id at 2148 (rejecting "mid-19th century" surety laws as not relevantly similar); id at 2154 n.28 (categorically rejecting New York's reliance on early 20th century laws because "[a]s with their late-19th-century evidence, the 20th-century evidence presented by

respondents and their amici does not provide insight into the meaning of the Second Amendment when it contradicts earlier evidence."). The *Bruen* Court thus concluded that "a short review of the public discourse surrounding Reconstruction is useful in demonstrating how public carry for self-defense remained a central component of the protection that the Fourteenth Amendment secured for all citizens." *Bruen*, 142 S.Ct. at 2150.

These holdings are specific to the public carry issue presented in this case and cannot simply be ignored. In all cases, the test is whether the County has carried its burden of demonstrating a "well-established, representative analogue" that is "longstanding," "relevantly similar," imposed a "comparable burden" and was "comparably justified" on the right of self-defense under the Court's "how and why" metrics. The County must carry that burden for **each** of the specific areas in which carry is banned by the County ordinances at issue here. *Bruen*, 142 S.Ct. at 2132-33. The analysis required by that test applies regardless of the period. The Court should not lose sight of the central holding of *Bruen*, which is that there is "overwhelming evidence of an otherwise enduring American tradition permitting public carry." Id. at 2154. The Montgomery County ordinance at issue here is the very antithesis of that tradition.

## CONCLUSION

A preliminary injunction should be granted without delay.

Respectfully submitted,

*/s/ Mark W. Pennak*

MARK W. PENNAK
MARYLAND SHALL ISSUE, INC.
9613 Harford Rd
Ste C #1015
Baltimore, MD 21234-21502
mpennak@marylandshallissue.org
Phone: (301) 873-3671
District Court Bar No. 21033